IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LAKSHMANAN PONNAYAN ACHARI, et al.,

Plaintiffs,

v.

SIGNAL INTERNATIONAL, LLC, et al.,

Defendants.

Civ. No. 1:13-CV-00222-LG-JMR

Oral Argument Requested

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS SIGNAL INTERNATIONAL, LLC'S AND
SIGNAL INTERNATIONAL, INC.'S MOTION TO TRANSFER AND TO DISMISS**

**MCDUFF & BYRD**
767 North Congress Street
Jackson, MS 39202
Telephone: (601) 969-0802

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    STATEMENT OF FACTS .............................................................................5

      A.     Signal Violated Federal and Mississippi Laws When They Trafficked
            Plaintiffs Into Mississippi. .................................................................5

      B.     The Eastern District of Louisiana Denied Class Certification, and
            Plaintiffs Then Filed Individual Actions in the Southern District of
            Mississippi ........................................................................................8

III.   ARGUMENT ...............................................................................................9

      A.     Transfer is not Warranted Under the First to File Rule. ........................9

            1.     A Transfer Would Be Inappropriate Because There Is a Question
                   As To Whether The Eastern District Of Louisiana Has Jurisdiction
                   Over Four Of The Nine Defendants.........................................11

            2.     There is No Substantial Overlap of Parties..................................16

            3.     There is No Substantial Overlap of Issues..................................19

            4.     The Mississippi Court Has a Strong Interest in Resolving the
                   Dispute. .................................................................................21

      B.     The Court Must Deny Signal's Motion to Dismiss Pursuant To Rule
            12(b)(6) For Failure To State A Claim. ................................................22

             1.     Signal's Argument that the Common Law Claims Are Governed
                   By Indian Law, Rather Than Mississippi Law, Is Not A Basis For a
                   Motion To Dismiss. ...............................................................22

                  a.     Plaintiffs Have Alleged Facts Indicating That Mississippi
                       Law Applies to Their Common Law Claims. .............................22

                  b.     Even if Indian Law Applies to Plaintiffs' Common Law
                       Claims, That Alone Is Not Sufficient to Grant a Motion to
                     Dismiss........................................................................24

             2.     Plaintiffs Adequately Pled Claims Under § 1981. ......................26

CONCLUSION............................................................................................26

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aerotel, Ltd. v. Sprint Corp.*,
   100 F. Supp. 2d 189 (S.D.N.Y. 2000) .................................................................... 14

*AFA Dispensing Grp., B.V.*,
   740 F. Supp. 2d 465 (S.D.N.Y. 2010) .................................................................... 12

*Amalgamated Gadget, L.P. v. Healthsouth Corp.*,
   No. 04-cv-198, 2004 WL 1283949 (N.D. Tex. June 9, 2004)..................................... 12

*Angotti v. Rexam, Inc.*,
   No. 05-cv-5264, 2006 WL 335284 (N.D. Cal. Feb. 14, 2006)................................... 20

*Atl. Sounding Co. v. Steward*, No. 5:08-cv-307 (DCB) (JMR),
   2009 WL 1375699 (S.D. Miss. May 15, 2009) ........................................................ 21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 23

*Billups Petroleum Co. v. Hardin's Bakeries Corp.*, 217 Miss. 34 (1953) ..................... 15

*Boardman v. United Servs. Auto. Ass'n.*,
   470 So. 2d 1024 (Miss. 1985) ........................................................................... 23, 25

*Buckalew v. Celanese, Ltd.*,
   No. 05-cv-315, 2005 WL 2266619 (S.D. Tex. Sept. 16, 2005)..................... 10, 19, 21

*Buffalo Wild Wings, Inc. v. BWR McAllen, Inc.*,
   No. 10-cv-1265, 2010 WL 2640122 (S.D. Tex. June 30, 2010) ............................... 12

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 559 (5th Cir. 1999) ........................................................................ 10, 12, 19

*Club Vista Fin. Servs., LLC v. Kaslon Edelman Borman & Brand*,
   No. 10-cv-0412, 2010 WL 2231926 (D. Ariz. June 2, 2010)................................... 19

*Coastal Servs. Grp. LLC v. BP Co. N. Am., Inc.*,
   No. 1:11-cv-425, 2013 WL 961600 (S.D. Miss. Mar. 12, 2013) ........................... 22, 24, 25, 26

*Columbia Pictures Industries, Inc. v. Schneider*,
   435 F. Supp. 742 (S.D.N.Y. 1977) ................................................................... 12, 13

*Congress Credit Corp. v. AJC Int'l, Inc.*,
   42 F.3d 686 (1st Cir. 1994)................................................................................... 19

*David v. Signal Int'l Inc.*, No. 08-cv-1220, 2012 U.S. Dist. Lexis 114247 (Jan. 3, 2012) ................................................................................................................ 8, 16, 20

*Dubee v. P.F. Chang's China Bistro*,
  No. 10-cv-01937, 2010 WL 3323808 (N.D. Cal. Aug. 23, 2010) ............................................ 16

*EEOC v. Univ. of Pa.*,
  850 F.2d 969 (3d Cir. 1988) .................................................................................................... 12

*Ellis v. Trustmark Builders, Inc.*,
  625 F.3d 222 (5th Cir. 2010) ................................................................................................... 23

*FirsTier Bank, N.A. v. G-2 Farms*,
  No. 95-cv-3118, 1996 WL 539217 (D. Neb. Mar. 11, 1996) .................................................. 12

*GlaxoSmithKline Consumer Healthcare v. Merix Pharm. Corp.*,
  No., 05-cv-898, 2005 WL 1116318 (D.N.J. May 10, 2005) .................................................... 19

*Granny's Alliance Holdings, Inc. v. Farrow Const. Specialties, Inc.*,
  No. 11-cv-1652012, WL 1836272 (S.D. Miss. May 21, 2012) ........................................... 10, 16

*Gulf Coast Pharm., Inc. v. Priority Pharm., Inc.*,
  No. 09-cv-276, 2009 WL 4928140 (S.D. Miss. Dec. 18, 2009) ........................................... 9, 10

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) ................................................................................................... 22

*Hertel v. Bank of America N.A.*,
  No. 11-cv-757, 2012 WL 4051220 (W.D. Mich. Sept. 13, 2012) ........................................... 20

*Hosking v. New World Mortg., Inc.*,
  602 F. Supp. 2d 441 (E.D.N.Y. 2009) ..................................................................................... 18

*In re Air Crash Disaster Near New Orleans*,
  821 F.2d 1147 (5th Cir. 1987) ................................................................................................. 15

*Jefferson Ward Stores, Inc. v. Doody Co.*,
  560 F. Supp. 35 (E.D. Pa. 1983) .............................................................................................. 12

*Jones v. Xerox Commercial Solutions, LLC*, No. 13-cv-0650, 2013 WL 3245957
  (S.D. Tex. June 26, 2013) ........................................................................................................ 18

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) .......................................................................................................... 10, 12

*Liaw Su Teng v. Skaarup Shipping Corp.*,
  743 F.2d 1140 (5th Cir. 1984) ................................................................................................. 15

- iii -

*Multi-Shot v. B&T Rentals, Inc.*,
No. 09-cv-3283, 2010 WL 376373 (S.D. Tex. Jan. 26, 2010) ........................................ 17, 19

*Northrop Grumman Ship Sys. v. Ministry of Def.*,
575 F.3d 491 (5th Cir. 2009) ................................................................. 25

*Orton v. Johnny's Lunch Franchise, LLC*,
668 F.2d 843 (6th Cir. 2012) ................................................................. 18

*Rolls-Royce Corp. v. Heros*, Inc.,
576 F. Supp. 2d 765 (N.D. Tex. 2008) ......................................................... 14

*Ross v. U.S. Bank Nat. Ass'n*,
542 F. Supp. 2d 1014 (N.D. Cal. 2008) ........................................................ 16

*Sanofi-Aventis Deutschland GmbH v. NovoNordisk, Inc.*,
614 F. Supp. 2d 772 (E.D. Tex. 2009) ......................................................... 11

*Smith v. Bayer Corp.*,
131 S. Ct. 2368 (2011) ....................................................................... 16

*Snow v. WRS Grp., Inc.*,
73 Fed. App'x 2 (5th Cir. 2003) ............................................................... 23

*Street v. Smith*,
456 F. Supp. 2d 761 (S.D. Miss. 2006) ........................................................ 10

*Sunbelt Corp. v. Noble, Denton & Assocs.*,
*Inc.*, 5 F.3d 28 (3d Cir. 1993) .............................................................. 15

*Sutter Corp. v. P&P Indus., Inc.*,
125 F.3d 914 (5th Cir. 2007) ................................................................. 10

*Tape & Techs., Inc. v. Davlyn Mfg. Co., Inc.*,
No. 04-cv-1150, 2005 WL 1072169 (W.D. Tex. May 6, 2005) ................................. 12

*Thyssen Steel Co. v. M/V Kavo Yerakas*,
911 F. Supp. 263 (S.D. Tex. 1996) ........................................................... 25

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011) ............................................................. 22, 23

*Weeks Marine, Inc. v. Stokes*,
No. 11–CV–112, 2012 WL 315990 (S.D. Miss. Feb. 1, 2012) ................................. 21

*Wright v. RBC Capital Mkts. Corp.*, No. 09-cv-3601, 2010 WL 2599010 (E.D.
Cal. June 24, 2010) ......................................................................... 17

**STATUTES**

42 U.S.C. § 1981 ...................................................................................................... passim

42 U.S.C. § 1985 ........................................................................................... 2, 8, 11

Racketeer Influenced and Corrupt Organizations Act ............................................. 2, 8, 11, 14, 20

Victims of Trafficking and Violence Protection Reauthorization Act ............................ 2, 8, 9, 20

**OTHER AUTHORITIES**

5B Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 2004) ......................... 22

Restatement (Second) Of Conflict Of Laws ............................................................... 23

**RULES**

Fed. R. Civ. P. § 12(a)(2) ............................................................................................. 3

Fed. R. Civ. P. § 12(a)(6) ............................................................................................. 9

Fed. R. Civ. P. § 12(b)(6) ........................................................................................... 22

Fed. R. Civ. P. § 44.1 ................................................................................................. 25

## I.   PRELIMINARY STATEMENT

Having opposed Plaintiffs' right to participate in a putative class action lawsuit against them in the Eastern District of Louisiana, Signal International, LLC and Signal International, Inc. (collectively, "Signal") now object to Plaintiffs' rightful attempt to assert their claims individually.  Relying on arguments that Signal itself opposed and that the Louisiana court rejected, Signal seeks to send this case back to the very forum to which it denied Plaintiffs access.  But such a transfer would endanger Plaintiffs' claims against nearly half of the defendants in this action, who previously contested the Louisiana court's jurisdiction.  Moreover, neither the parties nor the issues overlap between these two actions.  Transfer is inappropriate, and Signal's motion should be denied.

This action arises from the manipulation and mistreatment of numerous individuals who were trafficked into Mississippi to work in abhorrent conditions at the Pascagoula facility of defendants Signal International, LLC and Signal International, Inc.—corporations with extensive operations in Mississippi.  Plaintiffs in the above-captioned action are all former employees at Signal's Pascagoula, Mississippi facility, and have commenced this lawsuit against the Signal defendants, as well as co-defendants Michael Pol, Global Resources, Inc., Sachin Dewan, Dewan Consultants Pvt. Ltd., Malvern C. Burnett, the Law Offices of Malvern C. Burnett, and Gulf Coast Immigration Center, LLC (together, the "Agents"), to seek redress of Defendants' unlawful and fraudulent behavior.

Plaintiffs in this action are all skilled laborers from India, who Defendants viewed as a cheap source of labor for Signal's Pascagoula's facility.  In order to persuade Plaintiffs to leave their jobs in India and the United Arab Emirates and work for Signal in Mississippi, Defendants falsely promised to assist Plaintiffs in applying for and obtaining permanent residency in the United States, defrauded Plaintiffs out of tens of thousands of dollars in "recruitment fees," and

then trafficked Plaintiffs from India to Mississippi.  Once Plaintiffs arrived in Pascagoula, Defendants forced them to live in a crowded and unsanitary man camp and subjected them to discriminatory living and working conditions, all while continuing to assure Plaintiffs that they would receive green cards if they remained at Signal.  In reliance on those promises, and fearful of the financial ruin they would suffer if they returned to India before paying off the enormous debts they incurred to fund their "recruitment fees," Plaintiffs had little choice but to endure the deplorable conditions they faced in Pascagoula.  Based on Defendants' actions, Plaintiffs brought the present suit against their traffickers, asserting two claims under federal law (violations of the Victims of Trafficking and Violence Protection Reauthorization Act ("TVPRA") and the Civil Rights Act of 1866), and three claims under Mississippi state law (fraudulent misrepresentation, negligent misrepresentation, and breach of contract).

Other Signal employees previously filed a putative class action lawsuit suit against the company for its misconduct.  In 2008, certain former Signal employees (the "*David* plaintiffs") brought suit against Signal International, LLC in the Eastern District of Louisiana, asserting fourteen claims under federal and state law, including putative class action claims on behalf of Signal's former Indian employees, including Plaintiffs, for violations of the TVPRA, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Civil Rights Act of 1866, and the Ku Klux Klan Act of 1871.  Signal opposed the *David* plaintiffs' motion for class certification, arguing that individual issues requiring individualized proof would predominate. The Eastern District of Louisiana denied class certification, and the *David* plaintiffs opted not to appeal that decision.  Plaintiffs in this action have now filed their individual claims in the Southern District of Mississippi, the most appropriate venue given the location of Plaintiffs' employment.

Ironically, after Signal opposed class certification in Louisiana by arguing that the putative class members' individual claims were so distinct that they could not be litigated together, Signal now seeks to transfer the individual claims filed properly in this Court *back* to Louisiana on the basis that common proof will predominate the actions.  Signal also seeks dismissal of Plaintiffs' Mississippi state law claims and portions of their claims under the Civil Rights Act of 1866.  Signal's motions fail for multiple reasons, and must be denied.[1]

While Signal summarily concludes that this action should be transferred to the Eastern District of Louisiana because it shares "identical theories of liability" with *David v. Signal International, LLC*, Case No. 08-cv-1220 (E.D. La.), Def's Br. (Doc. No. 12) at 1, the criteria for application of the first to file rule—namely substantial overlap of parties and issues—are absent here.[2]

First, while Signal asks the Court to transfer claims against all nine Defendants to Louisiana, a serious question exists as to whether the Louisiana court can exercise personal jurisdiction over four of the nine Defendants.  Transfer of the entire action carries the risk that claims against Pol, Global Resources, Inc., Dewan, and Dewan Consultants Pvt. Ltd. will be dismissed, forcing Plaintiffs to file, yet again, claims against those defendants in a new action.

---

[1]     Defendant Signal International, Inc. ("Signal Inc.") filed its motion to transfer and dismiss on July 12, 2013, a full 43 days after being served with the Complaint.  *See* Proof of Service (July 15, 2013) (Doc. No. 16); Memorandum of Signal Int'l [Inc.] at 1 (July 12, 2013) (Doc. No. 14) (claiming to "adopt[] *in extenso*" the memorandum of law filed the previous day by Signal LLC").  Signal Inc. never moved for, and was never granted, an extension of time to respond.  Therefore, Signal Inc.'s motion is not timely and should be disregarded.  *See* Fed. R. Civ. Proc. 12(a)(2) (providing 21 days to answer).  Moreover, Signal Inc.'s failure to respond even within the extension of time granted by the Court to Signal International, LLC ("Signal LLC")—pursuant to a motion that Signal Inc. did not join—further underscores Signal Inc.'s utter disregard for these proceedings.  *See* Ex Parte Motion for Extension of Time (June 17, 2013) (Doc. No. 4); Text Order Only (June 19, 2013) (granting Signal LLC an additional 21 days, until July 11, 2013 to answer).  At best, Signal Inc.'s reliance on extensions granted to Signal LLC belies its assertion that allegations that Signal Inc. and Signal LLC are "alter egos" is "ludicrous." Memorandum of Signal Int'l [Inc.] at 1.

[2]     All references to "Def's Br." are references to Memorandum of Signal Int'l [LLC], Pursuant to First-Filed Rule, to Transfer, and to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (July 11, 2013) (Doc. No. 12).

Such a result would thwart the interests of justice and judicial economy that the first-filed rule seeks to promote.  Moreover, severance of the claims against Signal—whose liability is inextricably intertwined with that of the other Defendants— is not only impracticable, but would ultimately require the same issues to be litigated in two forums, raising the possibility of inconsistent judgments.

Second, the Plaintiffs in this action have no overlap—much less a substantial one—with the plaintiffs in *David*.  Plaintiffs are not now—nor have they ever been—parties to the non-Fair Labor Standards Act ("FLSA") claims in *David*.  That *some* of the Plaintiffs in this action opted into the FLSA claims pending in Louisiana that are not even certified is irrelevant, as those claims stem from Signal's failure to pay its workers federally-mandated wages.  The FLSA claims share almost none of the legal and factual issues inherent in the claims for fraud, discrimination, and human trafficking that are alleged in this action.   The lack of overlap in plaintiffs distinguishes this case from *EEOC v. Signal Int'l LLC*, 11-cv-00179 (S.D. Miss.).  There, both the EEOC and the *David* plaintiffs sought relief on behalf of all of Signal's Indian employees.  Moreover, all three of the plaintiff-intervenors in *EEOC* were also named plaintiffs in *David*.  Plaintiffs here seek relief only for themselves, and there is no overlap with the named plaintiffs in *David* who—through the filing of their Third Amended Complaint—no longer seek class relief for any of their non-FLSA claims.

Third, there is no substantial overlap of issues.  As Signal itself has argued and the court in *David* made clear, individual issues requiring individualized proof will predominate in both the Louisiana action and in this action.  Plaintiffs filed their claims in Mississippi because it was the locus of their injury and Defendants' actions.  It strains credulity to insist—as Signal does— that members of a putative class for which certification has been denied are thereafter required to

file their individual suits in the same venue, regardless of that venue's relationship to the parties and issues at play.  That individual plaintiffs would choose to file suit in the venue with the closest connection to the facts underlying their claims is the natural result of the *David* court's denial of class certification.

Signal's motions to dismiss the Mississippi state law claims and portions of the claims under the Civil Rights Act of 1866 should also be denied.  Although Signal argues that Indian law, not Mississippi law, applies to Plaintiffs' common law claims, that argument provides no basis to dismiss because: (1) Plaintiffs have alleged sufficient facts to support their assertion that Mississippi law applies to their common law claims; and (2) in any event, whether Indian or Mississippi law applies is a choice of law issue, not an issue of whether Plaintiffs have pled plausible claims.  Furthermore, the only basis for Signal's motion to dismiss a portion of Plaintiffs' § 1981 claims is that § 1981 does not apply to extraterritorial actions.  The Complaint adequately alleges, however, that the acts giving rise to § 1981 liability occurred within the United States.  In any event, the question of to what extent § 1981 applies will require the Court to evaluate facts, rendering Signal's argument inappropriate on a motion to dismiss.

## II.      STATEMENT OF FACTS

### A.      Signal Violated Federal and Mississippi Laws When They Trafficked Plaintiffs Into Mississippi.[3]

Signal is a Gulf Coast-based marine and fabrication company that, between late 2005 and early 2007, recruited Indian workers, including Plaintiffs, to work as welders and pipefitters at Signal's Pascagoula, Mississippi facility.  Compl. (Doc. No. 1) ¶¶ 3, 31-63.[4]  To assist with the recruitment, Signal retained Michael Pol, a resident of Mississippi; Pol's recruiting company

---

3       Defendants' scheme is described in greater detail in Plaintiffs' Complaint.

4       All references to "Compl." are references to Plaintiffs' Complaint, filed May 21, 2013 (Doc. No. 1)

Global Resources, Inc. ("Global"), a Mississippi corporation conducting operations in Mississippi; Malvern C. Burnett, an attorney with offices in Mississippi; the Law Offices of Malvern C. Burnett, A.P.C. ("Burnett Law Offices"), a corporation that maintains offices in Mississippi; Gulf Coast Immigration Law Center, LLC ("Gulf Coast Immigration"), Burnett's company that maintains offices in Mississippi; and Sachin Dewan, a labor recruiter in India. *Id.* ¶¶ 4, 64-78. Signal also executed a power of attorney authorizing Sachin Dewan and Dewan's company, Dewan Consultants Pvt. Ltd., ("Dewan Consultants") to recruit for Signal abroad. *Id.* ¶¶ 4, 72. Each of Signal's co-defendants was an agent of Signal. *Id.* ¶ 72.

Before they arrived in Mississippi, Plaintiffs were promised employment with Signal and assistance from Defendants in obtaining permanent residency in the United States. In exchange for those promises, Plaintiffs paid Defendants amounts ranging from the equivalent of approximately $10,000 to $25,000. *Id.* ¶ 6. In order to satisfy their "recruitment fees," Plaintiffs took on immense burdens, often selling family assets and incurring massive debt at usurious interest rates. *Id.* ¶ 8.

However, none of the Defendants took a single step to help Plaintiffs acquire green cards. Defendants only provided Plaintiffs with H-2B visas that permitted them to remain in the United States temporarily. *Id.* ¶¶ 22-23, 83. The H-2B visas prevented Plaintiffs from legally working for any United States employer besides Signal. *Id.* ¶¶ 233, 328, 369, 389.

Before Plaintiffs arrived at Signal, Signal's corporate employees knew that Plaintiffs had been promised assistance obtaining green cards. Signal's corporate employees learned about these promises no later than the first day that the first group of Indian workers arrived in Mississippi. *Id.* ¶¶ 472, 485. Yet Signal had no intention of honoring these promises and

- 6 -

refused to help Plaintiffs gain permanent residency or otherwise refund the massive "recruiting fees" that Plaintiffs paid in exchange for permanent residency. *Id.* ¶¶ 9, 22.

Instead, once Plaintiffs arrived in Pascagoula and began working for Signal, Defendants deceived Plaintiffs and compelled them to remain at the Mississippi man camp. Signal employees, Burnett, and Dewan repeatedly led meetings and conversations at the man camp where they falsely promised to help Plaintiffs acquire green cards if they continued to work at Signal and did not complain; they also threatened to have Plaintiffs deported if they left Signal. *Id.* ¶¶ 15, 18, 134, 137, 139-40, 338, 444. No Defendant ever took any action to help Plaintiffs obtain permanent residency in the United States. *Id.* ¶¶ 22-23.

At the same time as Defendants deceived Plaintiffs into believing that they would receive green cards, Signal required Plaintiffs to live in segregated, barbaric, and prison-like man camps in Pascagoula. *Id.* ¶¶ 12, 23. Signal forced Plaintiffs to live in trailers with approximately 24 men and only one or two toilets. *Id.* ¶¶ 101-02. Plaintiffs slept in bunk beds so close together that Plaintiffs had difficulty moving between the beds. *Id.* ¶ 101. The bottom bunks were so close to the top bunks—and the top bunks so close to the ceilings—that Plaintiffs could barely sit upright. *Id.* ¶ 101. At times, rats ran across Plaintiffs' bodies. *Id.* ¶ 103. Signal regularly forced Plaintiffs to choose between eating rotten food or starving. *Id.* ¶ 106. "Security guards" roamed the grounds, barred Plaintiffs from leaving the man camp, and randomly searched Plaintiffs and their possessions. *Id.* ¶¶ 12, 112, 115. Nonetheless, Plaintiffs remained at the Pascagoula man camp and endured these conditions, trying to repay their debts and awaiting the green cards that Defendants had promised to help them obtain. *Id.* ¶¶ 6-8, 17-20, 160-64.

**B.     The Eastern District of Louisiana Denied Class Certification, and Plaintiffs Then Filed Individual Actions in the Southern District of Mississippi.**

In 2008, the *David* plaintiffs brought an action in the Eastern District of Louisiana against Signal International LLC, Pol, Global, Burnett, Burnett Law Offices, Gulf Coast Immigration, Dewan, Dewan Consultants, and five additional defendants alleging fourteen causes of action, including:  putative collective and/or class action claims under the TVPRA, RICO, the Civil Rights Act of 1866 (42 U.S.C. § 1981), the Ku Klux Klan Act of 1871 (42 U.S.C. § 1985), and the FLSA.  Complaint ¶¶ 276-387, *David v. Signal LLC*, 08-cv-012200 (Mar. 7, 2008) (attached as Ex. A).[5]  The *David* plaintiffs also asserted individual claims for fraudulent misrepresentation, negligent misrepresentation, breach of contract, retaliation under § 1981 and § 1985, false imprisonment, assault, battery, and infliction of emotional distress.  *Id.* ¶¶ 388-428.

Signal opposed the *David* plaintiffs' motion to certify the class, arguing that "individual issues predominate in this litigation" and that each former Signal employee "has his own circumstances and experiences that make him a unique, individual island."  Memorandum of Signal Int'l in Opposition to Plaintiffs' Motion for Class Certification at 8, 10, *David v. Signal Int'l*, Case No. 08-cv-1220 (E.D. La. Feb 1, 2011) (attached as Ex. B).  The court agreed with Signal and denied class certification, reasoning that each former employee's claims depended heavily on questions of reliance and coercion that needed to be decided "individually[,] based upon individualized proof."  *David v. Signal Int'l Inc.*, No. 08-cv-1220, 2012 U.S. Dist. Lexis 114247, at *77 (Jan. 3, 2012); *see also id* at *80-81, 124.  The named plaintiffs did not appeal the denial of class certification, but instead filed a new complaint seeking relief only for themselves as to all non-FLSA claims.  *See* Third Amended Complaint*, David v. Signal Int'l*

---

[5]     All references to "Ex." are references to the exhibits to Plaintiffs' Response In Opposition To Defendants Signal International, LLC's And  Signal International, Inc.'s Motions to Transfer and to Dismiss, submitted herewith.

*Inc.*, No. 08-cv-1220 (E.D. La. Sept. 21, 2012)  (hereinafter "*David* TAC.") (attached as Ex. C).[6] As a consequence, over 500 Indian workers who were former Signal employees were left without the ability to pursue their claims in the Louisiana action.  *See David* TAC at ¶ 1.

Having been denied membership in the putative class in *David*, Plaintiffs in this action filed suit in the Southern District of Mississippi.  This District includes the Pascagoula facility where Plaintiffs lived, worked, and suffered their injuries, and is located in the state in which a majority of the Defendants reside and/or conduct their business, and where the actions that gave rise to Plaintiffs' claims occurred.  Plaintiffs allege five causes of action: violations of two federal laws (the TVPRA and the Civil Rights Act of 1866) and three Mississippi state law claims (fraudulent misrepresentation, negligent misrepresentation, and breach of contract).  Compl. (Doc. No. 1)  ¶¶ 28-29, 435-97.

After insisting that the former Signal workers' claims were so distinct that they could not be litigated together, Signal has moved to transfer these properly filed, individual claims to the Eastern District of Louisiana under the first to file rule, and has moved to dismiss certain claims pursuant to Federal Rule of Civil Procedure 12(a)(6).  For the following reasons, these motions must be denied.

## III.    ARGUMENT

### A.    Transfer is not Warranted Under the First to File Rule.

The first to file rule permits a trial court to decline to exercise jurisdiction over an action when it involves the same parties and issues as a previously-filed action.  *Gulf Coast Pharm., Inc. v. Priority Pharm., Inc.*, No. 09-cv-276, 2009 WL 4928140, at *2 (S.D. Miss. Dec. 18, 2009) (Guirola, J.).  While the parties and issues need not be exactly the same, in the Fifth Circuit, the

---

[6]    The FLSA claims still pending in *David* relate solely to a legal question surrounding the interpretation of the FLSA, and are thus not grounds for transfer under the first to file rule.  *See infra* Part III.A.2.

operative question is whether they "substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 559, 603 (5th Cir. 1999); *see also Granny's Alliance Holdings, Inc. v. Farrow Const. Specialties, Inc.*, No. 11-cv-165, 2012 WL 1836272, at *9 (S.D. Miss. May 21, 2012) ("Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.") (internal quotations omitted); *Buckalew v. Celanese, Ltd.*, No. 05-cv-315, 2005 WL 2266619, at *2 (S.D. Tex. Sept. 16, 2005) ("[T]he cases should be more than merely related to support a motion for transfer when venue is otherwise appropriate. To hold otherwise would frustrate the well-established rule that the plaintiff's choice of forum is generally entitled to great deference.").

The first to file rule, however, "is not a rigid or inflexible rule to be mechanically applied." *Gulf Coast Pharm.*, 2009 WL 4928140, at *2. Courts may make exceptions to the first-filed rule "when justice or expediency requires." *Id.* Indeed, the decision of whether to apply the rule involves determinations concerning "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (*quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).

Signal's attempt to paint the present action as a case fitting squarely within the first to file rule is misleading. Def's Br. (Doc. No. 12) at 3. It is a far cry from the usual case meriting application of the rule—one with identical parties involving the same legal and factual questions. *See, e.g.*, *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 2007) (second-filed action to confirm a contract arbitration award against defendants involved the same issues as defendants' previously filed breach of contract action); *Street v. Smith*, 456 F. Supp. 2d 761, 767 (S.D. Miss. 2006) (second-filed action alleged non-payment of fees by defendants, but

defendants had previously filed suit seeking declaratory judgment on the same question). Indeed, the present case involves only eight of the thirteen defendants named in *David*—four of whom would dispute personal jurisdiction in Louisiana, creating a risk that claims against them will be dismissed, thereby prejudicing Plaintiffs.  *See infra* Part III.A.1.  This case includes none of the plaintiffs named in *David*, nor does it assert claims on behalf of workers who were recruited by the additional *David* defendants not named in this action, or workers who were recruited to and worked at Signal's Orange, Texas facility.  *See infra* Part III.A.2.  The present case also does not allege the complex RICO claims, claims under the Ku Klux Klan Act, or the additional common law claims alleged in *David*.  *See infra* Part III.A.3.  Finally, as argued by Signal in opposition to class certification in *David* and acknowledged by the Louisiana court*,* each Plaintiff's case features predominately individualized issues that will not be addressed by the *David* action.  *See id.*  In short, not only would transfer of this case be contrary to the first to file rule, but it would also thwart equitable principles and the interests of justice.

1.    A Transfer Would Be Inappropriate Because There Is a Question As To Whether The Eastern District Of Louisiana Has Jurisdiction Over Four Of The Nine Defendants.

Signal argues that the Court should transfer claims against all nine Defendants to Louisiana under the first to file rule, Def's Br. (Doc. No. 12) at 4, but fails to address the possibility that transfer would result in dismissal of claims against certain Defendants due to the potential lack of personal jurisdiction over those Defendants in Louisiana.  Courts have routinely held that transfer under the first to file rule should not be granted where transfer would jeopardize the plaintiff's ability to pursue claims against defendants, especially where—as here—the overlap between the cases at issue is far from complete and other equitable factors weigh against transfer.  *See, e.g.*, *Sanofi-Aventis Deutschland GmbH v. NovoNordisk, Inc.*, 614 F. Supp. 2d 772, 780-82 (E.D. Tex. 2009) (rejecting transfer, despite identity of parties and

issues, where it was "very possible the [transferee court] could find that jurisdiction does not exist"); *Amalgamated Gadget, L.P. v. Healthsouth Corp.*, No. 04-cv-198, 2004 WL 1283949, at *2 (N.D. Tex. June 9, 2004) (refusing to transfer where the possibility that personal jurisdiction did not exist would "so disadvantage plaintiff that the ends of justice would not be served"); *FirsTier Bank, N.A. v. G-2 Farms*, No. 95-cv-3118, 1996 WL 539217, at *3 (D. Neb. Mar. 11, 1996) ("[A]s it is unclear whether California even has jurisdiction over this dispute, defendants' contention that the first-filed rule requires me to stay the proceedings in this court is tenuous at best.").[7]  Such a result would not only be contrary to the first to file rule, but would also be contrary to the equitable principles that serve as "[t]he letter and spirit of the first-filed rule."  *See EEOC v. Univ. of Pa.*, 850 F.2d 969, 977-79 (3d Cir. 1988) (cited in Def's Br. (Doc. No. 12) at 5) (affirming that application of the first to file rule was inappropriate—even where the parties and issues were identical—when its application would undermine plaintiff's ability to vindicate the law).

In *Cadle,* the Fifth Circuit explained that jurisdictional disputes implicate issues of judicial economy that are "central to the first to file rule," citing *Columbia Pictures Industries, Inc. v. Schneider*, 435 F. Supp. 742 (S.D.N.Y. 1977), as an example of how the jurisdiction of first-filed courts is relevant to the transfer analysis.  *Cadle*, 174 F. 3d at 605.  In *Columbia*, the

---

[7]      *See also AFA Dispensing Grp., B.V.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) (refusing to dismiss in favor of first-filed suit where "serious questions" existed whether plaintiffs were subject to personal jurisdiction of first-filed forum); *Buffalo Wild Wings, Inc. v. BWR McAllen, Inc.*, No. 10-cv-1265, 2010 WL 2640122, at *2 (S.D. Tex. June 30, 2010) (rejecting application of the first to file rule, where defendants could not be joined in the first-filed court due to lack of personal jurisdiction); *Tape & Techs., Inc. v. Davlyn Mfg. Co., Inc.*, No. 04-cv-1150, 2005 WL 1072169, at *4 (W.D. Tex. May 6, 2005) (holding that where the first filed court may not have personal jurisdiction over defendants, "it would not serve the . . .  the ends of justice to dismiss in the hopes that jurisdiction in Pennsylvania might be warranted."); *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 37 (E.D. Pa. 1983) (refusing to transfer under the first to file rule where "jurisdiction in this court is clear and has not been contested, and . . . the issue of jurisdiction has not been resolved in [first-filed court]"); *accord Kerotest Mfg. Co.*, 342 U.S. at 186 (noting that if defendant in the second-filed action could not have been joined to the first-filed action due to lack of personal jurisdiction, the trial court should have permitted both actions to proceed simultaneously).

Southern District of New York declined to exercise its priority as the first-filed court, finding

that the possibility of dismissal of the plaintiff's claims due to lack of jurisdiction weighed

heavily against enjoining prosecution of the second-filed action:

> There is no question that the federal district court in California has personal
> jurisdiction over all necessary parties to this litigation.  There is a substantial
> question . . . whether such jurisdiction exists under the New York long arm statute
> against these defendants, all of whom reside in California.  The possibility of an
> erroneous determination of personal jurisdiction in New York followed by
> lengthy proceedings thereafter over which we were ultimately found to lack
> jurisdiction, and the desirability of avoiding decisions unnecessary to ultimate
> resolution of the merits by a federal court strongly suggest that California is a
> more appropriate forum.

*Columbia*, 435 F. Supp. at 748.

Here, a serious dispute exists as to whether a Louisiana court can exercise personal

jurisdiction over four Defendants.  Pol, Global, Dewan, and Dewan Consultants have already

argued in *David* that they do not have sufficient contacts with Louisiana to satisfy Louisiana's

long-arm statute.  *See* Memorandum in Support of Motion to Dismiss by Defendants Michael Pol

and Global Resources at 5-7, *David v. Signal Int'l LLC*, No. 08-cv-1220 (E.D. La. May 19, 2008)

(hereinafter "Pol Memorandum") (attached as Ex. D); Memorandum in Support of Motion to

Dismiss by Defendants Dewan and Dewan Consultants Pvt. Ltd at 10, *David v. Signal Int'l LLC*,

Case No. 08-cv-1220 at 5, 7 (E.D. La. August 19, 2008) (hereinafter "Dewan Memorandum")

(attached as Ex. E).  They would almost certainly move to dismiss the present claims against

them on the same grounds if this Court transfers the action to Louisiana.

In *David*, Pol and Global argued that the *David* plaintiffs "cannot show that the Global

Defendants purposefully directed any activities to Louisiana, nor can they connect Louisiana to

any event upon which their claims are based."  Pol Memorandum at 5.   They also asserted that

Pol, a Mississippi resident, and Global, a Mississippi corporation with its principal place of

business in Mississippi "[do] not provide services to Louisiana residents, [do] not advertise or

market in Louisiana, and maintain[] no bank accounts in Louisiana." *Id.* at 7.  Similarly, Dewan

and Dewan Consultants argued that "it is abundantly clear that [neither party] . . . purposely

availed themselves of the privilege of conducting activities in Louisiana such that they could

reasonably believe that they would be haled into court in Louisiana."  Dewan Memorandum at

10.  Nor, they argued, did Dewan, a resident of India, or Dewan Consultants, an Indian business

entity, "advertise[] . . . in Louisiana[,] provide services to individuals or entities in Louisiana on

a regular basis, . . . or maintain any bank accounts in Louisiana." *Id.* at 12-13.

      In denying these defendants' motions to dismiss, the *David* court held that it could

exercise personal jurisdiction over Pol, Global, Dewan, and Dewan Consultants, but only based

on the defendants' alleged participation in the RICO enterprise.  *See* Order and Reasons at 10-11,

19, *David v. Signal Int'l, LLC*, No. 08-cv-01220 (E.D. La. Dec. 05, 2008) (attached as Ex. F).

RICO confers nationwide jurisdiction over nonresident defendants where a plaintiff can establish

personal jurisdiction over at least one defendant.  *Id.* at 10 (citing *Rolls-Royce Corp. v. Heros*,

*Inc.*, 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008)).  In this action, however, Plaintiffs have not

pled RICO claims against any Defendant.  Thus, the basis upon which the *David* court exercised

personal jurisdiction over Pol, Global, Dewan, and Dewan Consultants would not apply in this

case.

      Were the Louisiana court to dismiss claims against these four Defendants for lack of

jurisdiction, Plaintiffs may be left without recourse against them in Louisiana, and would be

forced to re-file in Mississippi and litigate their claims against these Defendants separately.

*Accord Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 198 (S.D.N.Y. 2000) ("If I were to

transfer this case to Kansas only to find the Kansas court lacks jurisdiction . . . , [plaintiff] would,

in effect, have no remedy other than bringing another action in this or some other forum.  Surely

such a result is not in the interests of justice.").

    Severance and transfer of the claims against Signal would also not serve the interests of

justice, as Plaintiffs' claims against Signal and its Agents (Signal's co-defendants) are

inextricably intertwined.  *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33-34

(3d Cir. 1993) (refusing to sever claims where all of the defendants' alleged actions were

"central to the ultimate determination" of liability, and severance "would not be consistent with a

sound exercise of discretion"); *accord Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140,

1148 (5th Cir. 1984) (overruled in part on other grounds by *In re Air Crash Disaster Near New

Orleans*, 821 F.2d 1147 (5th Cir. 1987)) (finding severance inappropriate where "the defendant

over whom jurisdiction is retained is so involved in the controversy to be transferred that partial

transfer would require the same issues to the litigated in two places.").  Signal retained Pol,

Global, Burnett, Burnett Law Offices, and Gulf Coast Immigration to assist it in recruiting and

obtaining temporary work visas for Plaintiffs.  Compl. (Doc. No. 1) ¶¶ 75-78.  Signal also

executed a power of attorney with Dewan Consultants authorizing Dewan, as its director, to

recruit Plaintiffs and sign legal documents on its behalf.  *Id.*  Representations made by the

Agents and imputed to Signal are thus crucially important to Plaintiffs' claims against Signal.

*Billups Petroleum Co. v. Hardin's Bakeries Corp.*, 217 Miss. 24,  34 (1953) ("It is well settled

that the principal is liable for the frauds and misrepresentations of his agent within the scope of

the authority or employment of the agent, even though he had no knowledge thereof and has

received no benefit therefrom."); *see generally* Compl. (Doc. No. 1) at ¶¶ 79-96, 139-66

(detailing the Agents' actions and representations on behalf of Signal).

In sum, transfer is inappropriate as it would frustrate Plaintiffs' efforts to seek justice for the ills caused by Defendants in Mississippi.

2.     There is No Substantial Overlap of Parties.

While the parties in the two lawsuits need not be identical for the first to file rule to apply, there must nonetheless be a "substantial overlap." *Granny's Alliance*, 2012 WL 1836272, at *9. Here, not a single Plaintiff in this action is a party to the *David* action other than with respect to the FLSA claims.

Signal incorrectly asserts that a substantial overlap exists in this case because Plaintiffs were members of the proposed class in *David*. Def's Br. (Doc. No. 12) at 5. Signal is simply wrong—Plaintiffs are not now, nor have they ever been, parties as to the non-FLSA claims in *David*. *See Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (finding no overlap in plaintiffs where class certification was denied in the first-filed case, noting that "plaintiffs are currently limited to the named individuals in that case, and none of them is in the present action"); *cf. Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (holding that an unnamed putative class member is not a party to litigation where the class has not been certified, much less when class certification has been denied). Indeed, the *David* court denied class certification in January 2012, requiring all putative class members to bring suit individually. *David*, 2012 U.S. Dist. Lexis 114247, at *129.[8] That is exactly what Plaintiffs have done. And indeed, as noted by Signal, the operative complaint in *David* no longer brings claims on behalf of the "absent class." *See* Def's Br. (Doc. No. 12) at 8, 10; *David* TAC ¶¶ 273-422; *see also Dubee v. P.F. Chang's China Bistro*, No. 10-cv-01937, 2010 WL 3323808, at *2  (N.D. Cal. Aug. 23,

---

[8]     The Louisiana court's denial of class certification renders specious Signal's claim that "[i]n a represented sense, the present plaintiffs have been litigating their claims against Signal for years."  Def's Br. (Doc. No. 12) at 5.

2010) (noting that "substantial similarity between parties . . . should be based on the current parties" and distinguishing *Wright v. RBC Capital Mkts. Corp.*, No. 09-cv-3601, 2010 WL 2599010 (E.D. Cal. June 24, 2010), which applied the first to file rule where the first-filed case was still pled as a class action).

Contrary to Signal's assertion, Def's Br. (Doc. No. 12) at 5, this Court's order granting transfer in *EEOC v. Signal Int'l LLC*, 11-cv-00179 (S.D. Miss.) was grounded on vastly different factual circumstances.  In that case, both the EEOC and the *David* plaintiffs sought relief for Signal's unlawful discrimination on behalf of a class of over 500 "similarly situated Indian nationals."  Order Granting Motion to Transfer at 2-3 & n.3, *EEOC v. Signal Int'l LLC*, 11-cv-00179 (S.D. Miss. Feb. 29, 2012) (citing to the *David* plaintiffs' Second Amended Complaint) (hereinafter "*EEOC* Order") (attached as Ex. G).   Plaintiffs in this case, however, bring individual claims, and the *David* plaintiffs no longer seek class relief as to their non-FLSA claims.  *See David* TAC ¶¶ 273-422.   Furthermore, all three of the plaintiff-intervenors in *EEOC* —two of whom were also the EEOC's charging parties—were also named plaintiffs in *David*. *Id.* at 7-8 (noting that "the individual intervenor plaintiffs in this action chose to file the *David* action in Louisiana, and continue to litigate there").  There is no such overlap here.[9]

Signal's reliance on Plaintiffs' pending FLSA claims in the Eastern District of Louisiana is similarly misguided.  Def's Br. (Doc. No. 12) at 5.  The first to file rule does not require transfer where plaintiffs bring actions whose "claims and evidence are significantly different." *See Multi-Shot v. B&T Rentals, Inc.*, No. 09-cv-3283, 2010 WL 376373, at *5 (S.D. Tex. Jan. 26,

---

[9]     An additional distinguishing factor is that *EEOC* involved a discrete category of discrimination claims against only *one* defendant, over whom there was no jurisdictional dispute in the transferee court.  *Compare EEOC* Order at 2 *with supra* Part III.A.1.

2010) (declining to apply the first to file rule where two identical parties alleged factually distinct claims against each other in different courts).

Here, Plaintiffs' claims concern their right to be free from compulsory labor and discrimination and seek redress for Defendants' misrepresentations regarding their intent to sponsor Plaintiffs' green cards.  *See* Compl. (Doc. No. 1) ¶¶ 1-23.  The FLSA claims in *David*, however, relate solely to Signal's failure to pay minimum wage and overtime as required by federal law.  *See David* TAC ¶¶ 375-78.[10]  And as Signal acknowledges, the main issue in the FLSA action concerns a question of law as to whether FLSA claims cover the "recruitment fees" collected by Defendants.  Memorandum in Support of Motion for Partial Stay of Proceedings, *David v. Signal International, LLC.*, No. 2:08-cv-01220 (E.D. La. Oct. 28, 2008) (attached as Ex. H).  Indeed, according to Signal, a ruling on this matter "will determine the outcome of the FLSA claims."  *Id.*  This legal question has no relation to any of the claims brought in the present case.  *See* Compl. (Doc. No. 1) ¶¶ 435-97 (summarizing Plaintiffs' allegations for each cause of action); *Jones v. Xerox Commercial Solutions, LLC*, No. 13-cv-0650, 2013 WL 3245957, at *3-4 (S.D. Tex. June 26, 2013) (declining to transfer, in part because FLSA claims are distinct from breach of contract claims); *see also Gardner v. GC Services, LP*, No. 10-cv-997, 2010 WL 2721271, at *5-6 (S.D. Cal. July 6, 2010) (declining to transfer under the first to file rule where elements of the FLSA and state labor law claims did not overlap).

---

[10]     The elements of FLSA claims concern (1) plaintiff's status as "employee"; (2) the hours they worked; and (3) the wages they earned; and the lack of exceptions to the federal statute.  *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.2d 843, 846 (6th Cir. 2012) (describing elements of minimum wage claim); *Hosking v. New World Mortg., Inc.,* 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009) (describing elements of overtime claim).  These too have at best a de minimus relationship to the issues in the present case.

3.      There is No Substantial Overlap of Issues

The first to file rule also requires that there be a substantial overlap in issues raised by the cases. *Cadle*, 174 F.3d at 603.  These issues "must have such an identity that a determination in one action leaves little or nothing to be determined in the other."  *Multi-Shot LLC*, 2010 WL 376373, at *5 (quoting *Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686, 689 (1st Cir. 1994)).

Where, as here, the factual bases for plaintiff's claims are sufficiently distinct, application of the first to file rule is inappropriate.  *See Buckalew v. Celanese, Ltd.,* No. 05-cv-315, 2005 WL 2266619, at *3 (S.D. Tex. Sept. 16, 2005) (finding no substantial overlap where "most of the questions will be fact questions that will be left to a jury to determine").[11]  Here, Signal itself has conceded that individualized issues requiring individualized proof will predominate Plaintiffs' trafficking and common law claims.  These include, but are not limited to representations made to each Plaintiff, each Plaintiff's reliance, the agreements entered into by each Plaintiff, and each Plaintiff's damages.  *See generally* Compl. (Doc. No. 1) ¶¶ 177-343 (alleging each Plaintiff's particular circumstances).[12]

Having previously argued the contrary, Signal now contends that the issues in this case and *David* are identical.  Oddly, to support this contention, Signal relies on the Louisiana court's summary of the *David* plaintiffs' argument in favor of class certification—that liability under the

---

[11]      *See  also Club Vista Fin. Servs., LLC v. Kaslon Edelman Borman & Brand*, No. 10-cv-0412, 2010 WL 2231926, at *7 (D. Ariz. June 2, 2010) (declining to apply first to file rule where plaintiffs alleged claims arising from different real estate transactions in different states); *GlaxoSmithKline Consumer Healthcare v. Merix Pharm. Corp.*, No. 05-cv-898, 2005 WL 1116318, at *10 (D.N.J. May 10, 2005) (refusing the apply the first to file rule where the parties' allegations of false advertising concerned "different products with different factual issues").

[12]      In addition, while Plaintiffs were all recruited in late 2006 and early 2007 and worked at Signal's Mississippi facility, four of the twelve plaintiffs in *David* were recruited long before 2006, and their claims involve four defendants not named in the instant action.  See *David* TAC ¶¶ 19-30, 42-65, 74-125.  In addition, three of the *David* plaintiffs worked at Signal's Texas facility.  See *David* TAC ¶¶ 19-30.  The Louisiana court's inquiries regarding these litigants will necessarily involve different factual issues surrounding Signal's recruitment efforts before 2006 and its treatment of workers at its Texas facility, issues not relevant to the current action.

- 19 -

TVPRA can be proven without reference to individual plaintiffs' experiences, because "no one plaintiff's perspective, subjective position, or consent is legally relevant." Def's Br. (Doc. No. 12) at 7. Signal contends that the court's remarks "prove the common proof criterion." *Id.* But the court rejected that very argument later in its opinion: "Individual issues with respect coercion and consent will predominate Plaintiffs' § 1589 forced labor claims. . . . Plaintiffs cannot avoid the burden of proof that each individual plaintiff faces, *i.e.*, that it was conduct on the part of either Signal, Pol, or Dewan that was coercive." *David*, 2012 U.S. Dist. Lexis 114247, at *79; *see also id.* at *80-81, 123-24 (finding that individualized issues would also predominate Plaintiffs' trafficking at discrimination claims); *see also Angotti v. Rexam, Inc.*, No. 05-cv-5264, 2006 WL 335284, at *5 (N.D. Cal. Feb. 14, 2006) (finding that where class certification was denied due to the "varying legal and factual issues" relevant to the individual parties, the interest of judicial efficiency did not require transfer). Indeed Signal itself advanced this argument in opposition to class certification: "The reason[ ] why individual issues predominate in this litigation . . . [is that] trafficking claims are fundamentally about the consent to labor or the absence of such consent." Memorandum of Signal Int'l in Opposition to Plaintiffs' Motion for Class Certification at 8, 10, *David v. Signal Int'l LLC*, No. 08-cv-1220, (E.D. La. Feb 1, 2011) (attached as Ex. B).

Furthermore, as noted by Signal, the *David* action includes several additional claims, including RICO, false imprisonment, assault and battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. Def's Br. (Doc. No. 12) at 8. The existence of these additional distinct claims in *David* further weighs against a finding of "substantial overlap." *See Hertel v. Bank of America N.A.*, No. 11-cv-757, 2012 WL 4051220, at

*3 (W.D. Mich. Sept. 13, 2012) (refusing to apply the first to file rule where one case involved

additional claims and different plaintiffs); *Buckalew*, 2005 WL 2266619, at *3 (same).[13]

       4.      <u>The Mississippi Court Has a Strong Interest in Resolving the Dispute.</u>

A final equitable factor weighing against transfer is the Mississippi court's interest in

resolving this dispute.  Here, Plaintiffs were all employed by Signal's Pascagoula facility, and

nearly all of the domestic events giving rise to this lawsuit occurred in Mississippi.  *See, e.g.*,

Compl. (Doc. No. 1) ¶¶ 97-100, 139, 143-48, 153-66.  Witnesses and evidence are located in

Mississippi.  *See id.* ¶¶ 30, 64-66.  Many of the claims are common law claims brought under

Mississippi state law.  *Id.* ¶¶ 464, 477, 490.  Transfer under these circumstances would be

inappropriate.  *See Buckalew*, 2005 WL 2266619,  at *3 (holding that a court's interest in

resolving a localized dispute weighs against transfer where the dispute suit has little connection

to the jurisdiction of the first-filed suit); *see also Atl. Sounding Co. v. Steward*, No. 5:08-cv-307

(DCB) (JMR), 2009 WL 1375699, at  *2 (S.D. Miss. May 15, 2009) (holding that the first to file

rule, is "a policy governed by equitable considerations" that yields to "the same general

considerations applicable to a transfer analysis under § 1404(a)," including the local interest in

adjudicating a dispute); *Weeks Marine, Inc. v. Stokes*, No. 11–CV–112, 2012 WL 315990, at *4

(S.D. Miss. Feb. 1, 2012) (same).

---

[13]    Signal's assertion that an SPLC press release demonstrates that "the *lawyers for the plaintiffs* acknowledge
that the present action and *David* substantially overlap" is plainly incorrect.  Def.'s Br. at 10-11.  While trivial,
Signal's repeated misrepresentation of the factual circumstances surrounding the *Achari* and *David* actions renders
suspect its pervasive conflation of the two cases.  *See also supra* Part III.A.2.  Signal's overwrought assertion that
Plaintiffs' choice of venue "makes a mockery of the first filed rule's objectives" is, at best, a misrepresentation of
the current situation.  Def.'s Br. (Doc. No. 12) at 13.  As a natural result of the *David* court's denial of class
certification, these individual Plaintiffs chose to file suit in the venue with the closest connection to the facts
underlying their claims.

**B.    The Court Must Deny Signal's Motion to Dismiss Pursuant To Rule 12(b)(6) For Failure To State A Claim.**

      1.    <u>Signal's Argument that the Common Law Claims Are Governed By Indian Law, Rather Than Mississippi Law, Is Not A Basis For a Motion To Dismiss.</u>

Signal has argued (but not adequately presented) a choice of law argument that Indian law should apply to Plaintiffs' common law claims of fraudulent misrepresentation, negligent misrepresentation, and breach of contract, because the conduct underlying those claims allegedly occurred in India.  But that flimsy choice of law argument is not a basis to dismiss the common law claims because:  (1) regardless of Signal's conclusory assertions, the Complaint alleges facts indicating that Mississippi law applies to these claims; and (2) even if correct, Signal's argument has no bearing on whether the common law claims are sufficient as a matter of law.

      *a.    Plaintiffs Have Alleged Facts Indicating That Mississippi Law Applies to Their Common Law Claims.*

Based on the allegations in the Complaint—which is all that the Court is allowed to consider on a motion to dismiss—Mississippi law, and not Indian law, applies to Plaintiffs' common law claims.  The Court must "construe facts [in the Complaint] in the light most favorable to [Plaintiffs], as a motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  "'The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.'" *Coastal Servs. Grp. LLC v. BP Co. N. Am., Inc.*, No. 1:11-cv-425, 2013 WL 961600, at *2 (S.D. Miss. Mar. 12, 2013) (quoting 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1356 (3d ed. 2004)).  Therefore, Signal can only prevail on its motion to dismiss if it demonstrates that the Complaint does not plead "'enough

facts to state a claim to relief that is plausible on its face'" under the applicable law. *Turner*, 663 F.3d at 775 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As a federal court with supplemental jurisdiction over Plaintiffs' common law claims, this Court must apply Mississippi's approach to choice of law analysis. *Snow v. WRS Grp., Inc.*, 73 Fed. App'x 2, 5-6 (5th Cir. 2003). Mississippi courts consider slightly different choice of law factors for tort and breach of contract claims, but Mississippi generally applies the substantive law of the jurisdiction with the strongest relationship to the issue being decided. *Boardman v. United Servs. Auto. Ass'n.*, 470 So. 2d 1024, 1030-31 (Miss. 1985).[14]

Plaintiffs' have pled that their fraudulent and negligent misrepresentation claims against Signal share several strong connections with Mississippi. For instance:

- Signal, from Mississippi, directed its Agents to falsely promise Plaintiffs green cards in order to recruit Plaintiffs to work in Pascagoula, Mississippi, where Signal operates a major facility. Compl. (Doc. No. 1) ¶¶ 3-6, 64.

- Signal knew that Plaintiffs expected that Signal would assist them with obtaining green cards. Despite having no intention of honoring these promises, Signal repeatedly assured and misrepresented to Plaintiffs that they would receive green cards if they continued to work at Signal. *Id.* ¶¶ 139-40, 163, 472, 485.

- In reliance on Signal's corporate employees' promises, Plaintiffs continued to live and work at the Pascagoula facility. They endured deplorable conditions while

---

[14] In tort cases, Mississippi's choice of law analysis allows for many factors to be considered, including: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" Other factors include "'(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.'" *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 226 (5th Cir. 2010) (quoting Restatement (Second) Of Conflict Of Laws§ 145) (brackets in *Ellis*).

Relevant factors in contract cases include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Boardman*, 470 So. 2d at 1032 (quoting Restatement (Second) Of Conflict Of Laws § 188) (brackets added).

Signal took no steps to help Plaintiffs obtain the green cards that it had promised them.  *Id*. ¶¶ 17-20, 22-23, 160-64.

Plaintiffs have also pled that their breach of contract claims share substantial connections with Mississippi.  In addition to the factors listed above:

- Signal's Agents entered into written agreements with Plaintiffs on behalf of Signal, promising that Signal would assist Plaintiffs with obtaining green cards while Plaintiffs lived and worked at Signal's Mississippi facility.  *Id*. ¶¶ 6, 84.

- In Mississippi, Signal entered oral contracts with Plaintiffs when Signal employees promised Plaintiffs that they would receive green cards if they worked at and did not complain about Signal.  *Id*. ¶¶ 139-40, 160-64.

Plaintiffs have pled facts demonstrating that their common law claims have strong, substantial relationships with Mississippi.  Therefore, Plaintiffs have plausibly pled that Mississippi law applies to these claims.

        b.      *Even if Indian Law Applies to Plaintiffs' Common Law Claims, That Alone Is Not Sufficient to Grant a Motion to Dismiss.*

Even if the allegations in the Complaint did suggest that Indian law applies to Plaintiffs' common law claims (and to be clear, they do not) that would not provide a basis to dismiss Plaintiffs' claims.

Signal does not argue that Plaintiffs' claims are implausible under Indian law.  Instead, Signal suggests that "it can be argued" that Plaintiffs cannot prevail on their common law claims because Plaintiffs could have "pretend[ed] they were deceived to remain in the United States." Def's Br. (Doc. No. 12) at 18.  Yet Signal concedes that a finding as to whether Plaintiffs were truly deceived is a "question of fact," which is not appropriate to resolve on a motion to dismiss. *Id*.; *Coastal Servs. Grp.*, 2013 WL 961600, at *2.  Nor are Signal's hypothetical assertions about what claims "can be" made under Indian law tantamount to an argument that Plaintiffs' allegations are deficient as a matter of Indian law.  Def's Br. (Doc. No. 12) at 18.

- 24 -

At best, it is ambiguous which jurisdiction's laws apply to Plaintiffs' common law claims. Yet because Mississippi courts must apply the law of the jurisdiction with "the most substantial contacts with the parties and the subject matter of the action," any choice of law analysis would require this Court to weigh disputed facts regarding the parties' relative contacts with Mississippi and India. *Boardman*, 470 So. 2d at 1030-31.[15] Factual disputes are inappropriate to resolve on a motion to dismiss. *Coastal Servs. Grp.*, 2013 WL 961600, at *2.

Finally, even if Indian law applies to Plaintiffs' common law claims, Plaintiffs had no obligation to specify this in the Complaint. Federal Rule of Civil Procedure 44.1 contemplates that parties "who intend[] to raise an issue about a foreign country's law" may "give notice by a pleading *or other writing*." Fed. R. Civ. P. 44.1 (emphasis added). "When the applicability of foreign law is not obvious, notice is sufficient if it allows the opposing party time to research the foreign rules." *Northrop Grumman Ship Sys. v. Ministry of Def.*, 575 F.3d 491, 497 (5th Cir. 2009).[16] Signal has argued in its motion to dismiss that Indian law might apply to Plaintiffs' claims. Moreover, should it be necessary, Plaintiffs are prepared to submit Indian law affidavits, if at a later stage of litigation Defendants in fact submit evidence as to the applicability of Indian law and make an argument that there is no claim under Indian law. Therefore, even if this Court later determines that Indian law applies, and Plaintiffs then indicate that they intend to bring claims under Indian law, Signal will have had more than enough time to research Indian law.

---

[15]   *See supra* Part III.B.1.a for a more in depth explanation of Mississippi's choice of law analysis.

[16]   In *Northrup Grumman*, the Fifth Circuit also observed that Rule 44.1 "is intended to 'avoid unfair surprise,'" not to 'set any definite limit on the party's time for giving the notice of an issue of foreign law . . . .'" *Northrup Grumman* at 496-97 (quoting Fed. R. Civ. P. 44.1 Advisory Committee's Notes). In particular, Rule 44.1 does not set "a strict time bar to parties attempting to raise a choice of law question.'" *Northrup Grumman*, 575 F.3d at 497 (quoting *Thyssen Steel Co. v. M/V Kavo Yerakas*, 911 F. Supp. 263, 266 (S.D. Tex. 1996)). Since Signal has already argued that Indian law applies to Plaintiffs' claims, Signal can hardly claim to be unfairly surprised if this Court later elects to apply Indian law.

2.    <u>Plaintiffs Adequately Pled Claims Under § 1981.</u>

Although Signal argues that Plaintiffs § 1981 claims concerning extraterritorial events should be dismissed, the Complaint adequately pleads § 1981 claims based on Signal's discriminatory conduct toward Plaintiffs within the United States.  Signal has not suggested otherwise.  Def's Br. (Doc. No. 12) at 25-26.

Signal also does not dispute that § 1981 permits Plaintiffs to recover all damages based on Signal's discrimination within the United States.  *Id.* at 24-25.  Although Signal insists that all Plaintiffs' claims concerning "recruitment fees" occurred abroad, when viewing the facts in the light most favorable to Plaintiffs, the Complaint plausibly alleges that Signal's discrimination occurred within the United States through, among other actions:  (1) Signal, in Mississippi, permitting its Agents to charge Indian workers including Plaintiffs , but not Signal's other workers, massive "recruitment fees"; (2) Signal employees falsely assuring and persuading Plaintiffs in Mississippi that they would receive green cards in exchange for the massive "recruitment fees" that Plaintiffs paid; and (3) Signal refusing in Mississippi to return these "recruitment fees" to Plaintiffs.  Compl. (Doc. No. 1) ¶¶ 22, 139-40, 146-48, 160-64, 471, 483.

Signal has at most shown a factual dispute regarding whether Signal's discrimination through the "recruitment fees" occurred within the United States.  Def's Br. (Doc. No. 12) at 24-25.  Again, it is without question that factual disputes are inappropriate to resolve on a motion to dismiss.  *Coastal Servs. Grp. LLC*, 2013 WL 961600, at *2.  Accordingly, the Court must deny Signal's premature attempt to limit the damages of Plaintiffs' § 1981 claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Signal Inc.'s and Signal LLC's Motions to Transfer and Motion to Dismiss in their entirety.

Dated: July 29, 2013                     Respectfully submitted,

                                         LATHAM & WATKINS LLP

                                         By: */s/ H. Gregory Baker*

                                         Miles N. Ruthberg, *pro hac vice*
                                         Benton J. Campbell, *pro hac vice*
                                         Christopher Harris, *pro hac vice*
                                         H. Gregory Baker, *pro hac vice*
                                         Jennifer Greenberg, *pro hac vice*
                                         Daniel D. Adams, *pro hac vice*
                                         Elizabeth C. Rowland, *pro hac vice* to be filed
                                         Aaron M. Safane, *pro hac vice* to be filed
                                         885 Third Avenue
                                         New York, New York 10022
                                         Tel:  (212) 906-1200
                                         Fax: (212) 751-4864
                                         E-mail: miles.ruthberg@lw.com
                                         E-mail: benton.campbell@lw.com
                                         E-mail: christopher.harris@lw.com
                                         E-mail: gregory.baker@lw.com
                                         E-mail: jennifer.greenberg@lw.com
                                         E-mail: daniel.adams@lw.com
                                         E-mail: elizabeth.rowland@lw.com
                                         E-mail: aaron.safane@lw.com

                                         MCDUFF & BYRD
                                         Robert B. McDuff, MS Bar No. 2532
                                         Sibyl C. Byrd, MS Bar No. 100601
                                         Jacob W. Howard, MS Bar No. 103256
                                         767 North Congress Street
                                         Jackson, Mississippi 39202
                                         Tel: (601) 969-0802
                                         Fax: (601) 969-0804
                                         E-mail: rbm@mcdufflaw.com
                                         E-mail: scb@mcdufflaw.com
                                         E-mail: jake@mcdufflaw.com

                                         *Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 29, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of an electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ ECF participants.

*/s/ H. Gregory Baker* _____

H. Gregory Baker, *pro hac vice*