UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| LAKSHMANAN PONNAYAN ACHARI ET AL, | : |
| | : CIVIL ACTION |
| Plaintiffs, | : NO:  13-6218 I(5) |
| | : CONSOLIDATED WITH 13-6219 |
| v. | : DISTRICT JUDGE |
| SIGNAL INTERNATIONAL, LLC ET AL., | SUSIE MORGAN |
| | : |
| Defendants. | MAGISTRATE JUDGE |
| | : DANIEL E. KNOWLES, III |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION LAW CENTER'S MOTION TO DISMISS**

Eben P. Colby, *pro hac vice to be filed*
Peter Simshauser, *pro hac vice to be filed*
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
Telephone: (617) 573-4800
Facsimile: (617) 573-4822
eben.colby@skadden.com
peter.simshauser@skadden.com

A. Gregory Grimsal
Steven W. Copley
GORDON ARATA MCCOLLAM
    DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121
ggrimsal@gordonarata.com
scopley@gordonarata.com

Counsel for Plaintiffs

Dated: November 7, 2013

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT ....................................................................................................... 6

I.      Plaintiffs Have Stated Federal Statutory Claims for Forced Labor And Trafficking In Persons ......................................................................................................... 6

      A.      Burnett Obtained Plaintiffs' Labor Through The Imposition Of Serious Financial Harm ...................................................................................... 8

      B.      Burnett Obtained Plaintiffs' Labor Through Abuses Of Legal Process ................. 9

      C.      Burnett Participated In The Unlawful Trafficking Of Plaintiffs .......................... 10

      D.      Burnett Financially Benefitted From The Trafficking Scheme ........................... 12

II.     Plaintiffs Have Stated Mississippi State Common Law Claims ...................................... 13

III.    The Statute Of Limitations On Plaintiffs' Claims Are Tolled ........................................... 14

      A.      This Court Tolled The Statute Of Limitations For Plaintiffs' Claims ................. 15

      B.      Plaintiffs' Claims Have Been Tolled Under 28 U.S.C. § 1367(D) ...................... 17

      C.      Plaintiffs' State Law Claims Would Also Be Tolled Under Mississippi Law .................................................................................................. 18

CONCLUSION ................................................................................................... 22

i

## TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Aguirre v. Best Care Agency, Inc.*,
    No. 10-cv-5914, 2013 WL 4446925 (E.D.N.Y. Aug. 16, 2013)........................9

*American Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) .................................................................................18, 19

*Antigo v. Lombardi*,
    No. 11-cv-408, 2012 WL 4468503 (S.D. Miss. Sept. 25, 2012)...........9, 11, 12

*Bell v. Showa Denko K.K.*,
    899 S.W.2d 749 (Tex. App. 1995)...................................................18, 19, 22

*Boardman v. United Servs. Auto. Ass'n*,
    470 So.2d 1024 (Miss. 1985).........................................................................14

*Camayo v. John Peroulis & Sons Sheep, Inc.*,
    No. 10-cv-772, 2012 WL 4359086 (D. Col. Sept. 24, 2012)...........................12

*Castellanos-Contreras v. Decatur Hotels, LLC*,
    622 F.3d 393 (5th Cir. 2010) .........................................................................10

*Clark Sand Co. v. Kelley*,
    60 So.3d 149 (Miss. 2011)..............................................................................20

*Crawford v. Morris Transp.*,
    990 So.2d 162 (Miss. 2008)............................................................................20

*Dow Chemical Corp. v. Blanco*,
    67 A.3d 392 (Del. 2013) .................................................................................22

*Ellis v. Trustmark Builders, Inc.*,
    625 F.3d 222 (5th Cir. 2010) .........................................................................14

*Hall v. GE Plastic Pac. PTE Ltd., et al*,
    327 F.3d 391 (5th Cir. 2003) .........................................................................16

*Hawkins v. Scottish Union & Nat'l Ins. Co.*,
    110 Miss. 23 (1915).......................................................................................20

*Hotard v. State Farm Fire & Cas. Co.*,
    286 F.3d 814 (5th Cir. 2002) .........................................................................16

*Huss v. Gayden,*
    991 So.2d 162 (Miss. 2008) ............................................................................16

*Hyatt Corp. v. Occidental Fire & Casualty Co.,*
    801 S.W.2d 382 (Mo. App. 1990) ..................................................................22

*In re Coastal Plains, Inc.,*
    179 F.3d 197 (5th Cir. 1999) ..........................................................................17

*In re Linerboard Antitrust Litig.,*
    223 F.R.D. 335 (E.D. Pa. 2004) ....................................................................22

*In re Norplant Contraceptive Products Liab. Litig.,*
    173 F.R.D. 185 (E.D. Tex. 1997) ..................................................................22

*Jinks v. Richland County,*
    538 U.S. 456 (2003) .................................................................................17, 18

*Lee v. Grand Rapids Bd. of Ed.,*
    384 N.W.2d 165 (Mich. App. 1986) ..............................................................22

*Lightfoot v. Lowndes County Sheriff's Dep't,*
    No. 94-CV-330, 1996 WL 408063 (N.D. Miss. June 12, 1996) .....................16

*Marshall v. Kansas City Southern Railways Co.,*
    7 So.3d 210 (Miss. 2009).........................................................................20, 21

*Mine Workers v. Gibbs,*
    383 U.S. 715 (1966) ......................................................................................17

*Newby v. Enron Corp.,*
    542 F.3d 463 (5th Cir. 2008) ........................................................................19

*Nunag-Tanedo v. East Baton Rouge Parish School Bd.,*
    790 F. Supp. 2d 1134 (C.D. Cal. 2011) ......................................................9, 10

*Panwar v. Access Therapies,*
    No. 12-cv-619, 2013 WL 5486783 (S.D. Ind. Sept. 30, 2013) ..........................9

*Quinn v. Louisiana Citizens Property Ins. Corp.,*
    118 So.3d 1011 (La. 2012) ......................................................................18, 19

*Ramos v. Hoyle,*
    No. 08-21809, 2008 WL 5381821 S.D. Fla. Dec. 19, 2008) .....................11, 12

*Ramos-Madrigal v. Mendiola Forestry Serv., LLC,*
    799 F. Supp. 2d 958 (W.D. Ark. 2011)..........................................................12

*Sarris v. Smith*,
    782 So.2d 721 (Miss. 2001) ............................................................................................16

*Staub v. Eastman Kodak Co.*,
    726 A.2d 955 (N.J. Super. Ct. App. Div. 1999) .................................................................22

*Stevens v. Novartis Pharma. Corp.*,
    247 P.3d 244 (Mont. Dec. 30, 2010) .................................................................................22

*Torkie-Tork v. Wyeth*,
    739 F. Supp. 2d 887 (E.D. Va. 2010) ...............................................................................22

*United States v. Rivera*,
    No. 09-619, 2012 WL 2339318 (E.D.N.Y. June 19, 2012) ...............................................13

*Vaccariello v. Smith & Nephew Richards, Inc.*,
    763 N.E.2d 160 (Ohio 2002) ............................................................................................22

*Zavala v. Wal Mart Stores Inc.*,
    691 F.3d 527 (3d Cir. 2012) ..............................................................................................11

**STATUTES AND OTHER AUTHORITIES**         **PAGE(S)**

18 U.S.C. § 1584 ................................................................................................................11

18 U.S.C. § 1589 ..............................................................................................6, 7, 8, 9, 10, 11, 12

18 U.S.C. § 1590 ..........................................................................................................6, 8, 10, 11

18 U.S.C. § 1595 ................................................................................................................12

28 U.S.C. § 1367 ............................................................................................................2, 17, 18

## PRELIMINARY STATEMENT

Defendant and attorney Malvern C. Burnett, along with his alter egos The Law Offices of Malvern C. Burnett, A.P.C. and Gulf Coast Immigration Law Center, L.L.C. (collectively "Burnett"), make an untimely motion to dismiss[1] Plaintiffs' Complaint, not because the Complaint fails to state claims for relief, but because Burnett disputes the facts alleged and whether Plaintiffs can prove those facts.  For example, he argues that his conduct was "consistent with what would happen in the ordinary course of events in representing non-immigrant workers recruited for work in the United States."  (Mem. In Supp. Of Mot. To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) Of Malvern C. Burnett, The Law Offices Of Malvern C. Burnett, A.P.C., And Gulf Coast Immigration Law Center, L.L.C. (Br.) at 6, *Chakkiyattil v. Signal Int'l, LLC*, No. 13-cv-318 (S.D. Miss.), (ECF No. 24).)  He contends that the "totality of facts support a fulfillment of Burnett's obligations to the Plaintiffs" as an immigration attorney.  *Id*. at 7.   Yet whether Burnett was engaged in obtaining Plaintiffs' forced labor in violation of the Trafficking Victims Protection Act, making fraudulent misrepresentations to recruit Plaintiffs and breaching his contractual promises to Plaintiffs -- conduct alleged with specificity in the Complaint -- or, instead, was only doing the normal work of an immigration attorney, is a question of fact to be decided at trial.  It is not an appropriate basis on which to dismiss this or any complaint, whose factual allegations must be accepted as true for purposes of a motion to dismiss.

Burnett also argues that because some conduct underlying Plaintiffs' claims occurred in India, where Plaintiffs were recruited, this "dictates that any supposed cause of action would have to be under Indian law. . . ."  (*Id*. at 2, 3-4.)  Burnett, however, is wrong on

---

[1]       Burnett and his alter egos were served with summons in this case on August 28, 2013.  Any motion to dismiss was due 21 days later, on September 25, 2013.  See Fed. R. Civ. P. 12(a)(1)(A)(i).  Thus, Burnett's October 2, 2013, Motion to Dismiss is untimely.

both the law and the facts.  The locus of certain conduct in no way "dictates" the results of a

choice of law analysis -- an analysis that Burnett does not even bother to undertake.  It is a multi-

factor analysis which demonstrates the applicability of Mississippi law to the present claim.

Moreover, it is simply inaccurate to portray Plaintiffs' state law claims for fraudulent and

negligent misrepresentation and breach of contract as emanating solely from a foreign

jurisdiction.  Indeed, there are sufficient allegations of unlawful activity in Mississippi too.

        Finally, Burnett seeks to have the state common law claims dismissed on statute

of limitations grounds.  (*Id.* at 8-13.)  However, the statute of limitations was tolled by Order of

this Court for the period in which the class action was pending in *David v. Signal Int'l, LLC*, No.

08-cv-01220 (E.D. La.).  Burnett not only conveniently neglects to mention this Order in his

motion or supporting brief, he also omits the fact that Burnett *consented* to the issuance of this

Order.  Burnett should be estopped from arguing otherwise now.  Furthermore, tolling during the

pending *David* class action is compelled by 28 U.S.C. § 1367(d).  That provision tolls the statute

of limitations of a pendant state law claim while it is pending in federal court.  The state law

claims asserted by Plaintiffs here were previously asserted in *David* as pendant claims.  Finally,

Burnett's argument that tolling would be anathema to the laws of Mississippi is incorrect, as

Mississippi would also recognize tolling under the present circumstances.  Despite a dearth of

case law specifically addressing whether Mississippi courts toll the statute of limitations based

on a pending class action in another jurisdiction, the courts of Mississippi would most likely

adopt tolling.  Given the remedial policies and the liberal interpretation of Mississippi's saving

statute, the similar parties and claims in this suit and *David*, and the near universal acceptance by

other courts of the value of class action tolling, this Court should consider the statute of

limitations tolled for the state law claims (to the extent a limitations defense can even be decided on a motion to dismiss).

## STATEMENT OF FACTS

Plaintiffs are 28 men from India trafficked unlawfully into Pascagoula, Mississippi by Burnett and co-Defendants.  (Compl. (ECF. No. 1) ¶ 1.)  From 2003 through 2005, Defendant recruiters Sachin Dewan (and his firm Dewan Consultants Pvt. Ltd.) and Global Resources, Inc., in coordination with Burnett, placed advertisements in newspapers in India, the United Arab Emirates and Kuwait seeking welders, fitters and marine fabrication workers. ( *Id*. ¶¶ 57-59.)  Through in-person meetings and telephone calls, Dewan, Global Resources, and Burnett promised the prospective workers, including Plaintiffs, that if they passed trade tests and paid fees totaling $9,800 to $15,000, J & M Associates, Inc. of Mississippi ("J & M Associates"), and later Signal International, LLC and/or Signal International, Inc. (collectively, "Signal"), would sponsor them for green cards allowing permanent immigration to the United States within two years of their arrival.  (*Id*. ¶¶ 60, 61, 64.)  Relying on these representations, Plaintiffs signed contracts with Dewan, Global Resources, and Burnett and undertook significant economic, social, familial and personal sacrifices, including the payment of enormous fees, the assumption of significant interest-bearing debt, and the loss of real and personal property and work opportunities.  (*Id*. ¶¶ 68-69.)  The fees were paid in three equal installments with separate payments made directly to Burnett, Dewan and Global Resources.  (*Id*. ¶¶ 61, 75.)  Burnett's activities, which took place both abroad and in Mississippi, were integral to this scheme to obtain and coerce labor from Plaintiffs.

Specifically, the Complaint alleges that Burnett was an agent of Signal who, together with Dewan and Global Resources, recruited Indian workers and brought them to the

3

United States to work for Signal.  (*Id*. ¶¶ 45-46, 80.)  As part of the recruitment scheme, Burnett misrepresented to Plaintiffs that, in exchange for payments to him and the other recruiters, Plaintiffs would receive employment and U.S. green cards.  (*Id*. ¶¶ 60-65.)  Those misrepresentations, made originally to recruit workers on behalf of J & M Associates for employment opportunities in the United States, continued and were repeated even when Defendant Signal sought only temporary workers.  (*Id*. ¶¶ 79-84.)  Even though Signal sought temporary workers through H-2B visas, Burnett continued the green card charade, telling Plaintiffs that they would initially receive an H-2B visa, but that this would be converted to a green card in the United States  (*Id*. ¶ 87.)  He knew this not to be true, and made the misrepresentations to induce additional installment payments by Plaintiffs and to induce them to travel to the United States to become indentured labor for Signal.  (*Id*. ¶¶ 88-89.)  Plaintiffs were often charged significant additional sums of money for the H-2B visa, which was prepared by Burnett, even though sponsoring H-2B visas is the responsibility of the employer and Plaintiffs had already paid thousands of dollars in the recruitment process.  (*Id*. ¶¶ 84-85, 99.)

Before securing the H-2B visas, Plaintiffs were interviewed by U.S. consulate officials in India.  (*Id*. ¶ 105.)  Burnett traveled to India and met with Plaintiffs prior to their required interviews.  (*Id*. ¶ 107.)  Burnett told Plaintiffs not to disclose the enormous recruitment fees they paid and their green card intentions during the consulate interview, but that they would nonetheless receive a green card following the H-2B visa.  (*Id*. ¶¶ 110-11, 229, 251, 264, 542.)  At the consulate interviews, consulate officials took Plaintiffs' passports for visa processing.  (*Id*. ¶ 112.)  The passports were returned not to Plaintiffs but to the recruiters or Burnett.  (*Id*. ¶¶ 214, 252, 322, 340, 356, 374, 396, 504, 543.)  They withheld the passports until a few hours before Plaintiffs' flights to the United States so as to collect the final installment payments (including

one directly to Burnett), to demand the return of any agreements or documents received by Plaintiffs in the recruitment process, and to insist that Plaintiffs hurriedly sign additional documents written in English.  (*Id*. ¶¶ 109, 114-125, 216, 230, 254, 289, 299, 375, 396, 407, 443, 461, 495, 521, 543.)

Burnett's dealings with Plaintiffs continued when Plaintiffs arrived in Mississippi. Burnett visited the camp set up by Signal to house the workers in Pascagoula, Mississippi and falsely told Plaintiffs that Signal would provide each worker with a green card so that Plaintiffs would rely on that representation to continue working for Signal.  (*Id*. ¶¶ 176, 181.)  Burnett even contracted to assist Plaintiffs in filing green card applications -- even though he knew that H-2B visa holders generally cannot apply for a green card -- in exchange for additional fees and breached that contract when he refused to file green card applications on their behalf.  (*Id*. 88, 178-80, 268.)  After one worker stopped payment on a check to Burnett, he suggested threatening Plaintiffs with "immediate deportation" to prevent other stopped payments.  (*Id*. ¶ 180.)

Burnett also assisted Signal's efforts to prevent the Indian workers at the camp, including Plaintiffs, from complaining about the inhumane conditions at the camp (e.g., bunks in cramped trailers for which they were charged, insufficient toilet and showering facilities, unhealthy food, etc.) and the discriminatory treatment of Signal.  At a meeting with Burnett and the workers in March 2007, Signal warned the workers that "Signal had powerful lawyers," reasonably inferred to be a reference to Burnett, and "would fight back against any 'organizing' efforts," including not extending the workers' H-2B visas.  (*Id*. ¶ 194.)  Such threats had tremendous coercive power because Plaintiffs needed to be employed in order to pay off the

debts incurred to provide the enormous recruitment fees demanded by Burnett and the other recruiters.  (*Id.* ¶ 201.)

The day after Burnett's visit to the camp, Signal terminated five of the "camp leaders," who had been complaining about the camp's conditions and the workers' mistreatment, to set an example.  (*Id.* ¶ 195.)  Early on March 9, 2007, when the day and night shift workers were still at the camp, Signal locked the gate to the camp, blocked the exits and swept through the trailers with photos of the workers targeted for termination.  (*Id.* ¶ 196.)  By 6:00 a.m. the workers were found and taken by guards to a room where they were told they were fired and were being deported to India.  (*Id.* ¶ 197.)  One worker, distraught about what the loss of work meant for him and his family, slashed his wrists.  (*Id.*)  Several Plaintiffs saw Signal personnel carry the worker, covered in blood, from the room.  (*Id.*)  Other Plaintiffs could see the remaining four workers' continued detention and feared they too would be detained.  (*Id.*)

As a result of Burnett's wrongful acts, Plaintiffs have brought the following claims for relief: (1) Forced labor (18 U.S.C.§ 1589) and Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor (18 U.S.C. § 1590); (2) Fraudulent misrepresentation; (3) Negligent misrepresentation; and (4) Breach of contract.

## ARGUMENT

### I.  PLAINTIFFS HAVE STATED FEDERAL STATUTORY CLAIMS FOR FORCED LABOR AND TRAFFICKING IN PERSONS

In Count I of the Complaint, Plaintiffs bring two related claims aimed at combatting human trafficking, specifically a claim for Forced Labor under 18 U.S.C. § 1589 and a claim for Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor under 18 U.S.C. § 1590.  Burnett contends that "there are no facts pled" to state a "plausible" claim for relief, under either provision, but rather only allegations that are "consistent

6

with . . . the ordinary course of events in representing non-immigrant workers" as an attorney.

(Br. at 4, 6.)  In so arguing, Burnett chooses to ignore almost all of the factual allegations, which

Plaintiffs summarized above, and instead disputes the fact that, in addition to acting as an

immigration attorney, Burnett also acted in violation of the federal trafficking statutes.  Whether

Burnett acted *only* as an innocent provider of immigration services or as an attorney who *also*

obtained the forced labor of Plaintiffs by means of serious harm, or threats thereof, and abuse of

the legal process is a question for the jury.  At this stage, however, Plaintiffs are required to

allege facts that provide Burnett with notice of a plausible claim, which, as the following

discussion demonstrates, Plaintiffs did in tremendous detail.[2]

Any evaluation of pleading begins with an understanding of the legal claim

asserted.  Here, Plaintiffs bring one claim for Forced Labor under Section 1589, which states in

relevant part:

> (a)  Whoever knowingly provides or obtains the labor or services of a person by
> any one of, or by any combination of, the following means --
> (1)  by means of force, threats of force, physical restraint, or threats of physical
> restraint to that person or another person; . . .
> (2)  by means of serious harm or threats of serious harm to that person or another
> person;
> (3)  by means of the abuse or threatened abuse of law or legal process; or
> (4)  by means of any scheme, plan, or pattern intended to cause the person to
> believe that, if that person did not perform such labor or services, that person or
> another person would suffer serious harm or physical restraint,

18 U.S.C. § 1589(a).

The term "serious harm" as used in Section 1589 is defined as "any harm, whether

physical or nonphysical, including psychological, ***financial***, or reputational harm, that is

---

[2]      Burnett's motion to dismiss is one of five nearly identical motions filed in five separate actions originally
initiated in the Eastern District of Texas and the Southern District of Mississippi.  Burnett's duplicative copy-and-
paste approach to all five motions fails to directly address the specific and unique allegations made by Plaintiffs in
this action.

sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2) (emphasis added).

Plaintiffs also bring a claim under Section 1590 for "trafficking with respect to peonage, slavery, involuntary servitude, or forced labor."  This section provides a cause of action against "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter."

**A.**   **Burnett Obtained Plaintiffs' Labor
     Through The Imposition Of Serious Financial Harm**

Burnett was a direct participant in and beneficiary of the alleged scheme to obtain the labor of Plaintiffs by means of "serious harm."  (Compl. ¶¶ 553, 557.)  The statute explicitly includes financial harm as "serious harm."  Plaintiffs emptied savings, sold possessions and/or needed to incur substantial debts in order to pay the recruitment fees.  (*Id*. ¶¶ 217, 231, 236, 266, 288, 319, 351, 385, 397, 403, 428, 497.)  Often, the money was borrowed from "blade men" -- loan sharks -- which carried with it the threat of physical harm if those debts were not repaid. (*Id*. ¶¶ 305, 314, 337-38, 367, 415.)  These fees and debts were significant enough "to compel a reasonable person" of Plaintiffs' background and circumstances "to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C.  § 1589(c)(2). Roughly a third of the recruitment fees were paid *directly* to Burnett. (*Id*. ¶¶ 207, 223-24, 235-37, 258-61, 272, 304, 316, 337, 349, 380, 423-26, 436, 453, 472, 514.)

Burnett, Global Resources and Dewan led Plaintiffs to believe that the payments to them were for obtaining steady employment and a green card, when in reality Plaintiffs would obtain only temporary work that Plaintiffs had to perform -- no matter the deplorable and discriminatory conditions -- in order to pay off the debts incurred in reasonable expectation of

8

permanent resident status.  Exploiting the financial ruin that would result by not working for

Signal states a claim for "forced labor" under Section 1589.  *See Nunag-Tanedo v. East Baton*

*Rouge Parish School Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (plaintiffs took out

substantial loans to pay recruitment fees that were non-refundable if they did not work); *Panwar*

*v. Access Therapies*, No. 12-cv-619, 2013 WL 5486783, at *8 (S.D. Ind. Sept. 30, 2013) (holding

that allegations of "threat of being in debt" stated a claim for serious harm that was used by

defendants to keep plaintiff employed).

      **B.**    **Burnett Obtained Plaintiffs' Labor Through Abuses Of Legal Process**

      Burnett also acted to obtain Plaintiffs' labor through multiple abuses of legal

process.  (Compl. ¶¶ 553, 559.)  Burnett traveled to the Pascagoula camp and repeated the false

statement that Signal would provide each worker with a green card so as to keep Plaintiffs

working for Signal.  (*Id*. ¶¶ 176, 242.)  Each Plaintiff's passport was kept by Defendants,

including Burnett in at least some instances, and not returned until Plaintiffs had paid the third

installment to Burnett and the other recruiters.[3]  Plaintiffs were also charged additional money to

pay for their H-2B visas, on top of the recruitment fees they already paid, in amounts well in

excess of any necessary fees for processing visa applications.  (*Id*. ¶¶ 84-85, 99.)  Each of these

allegations state a claim for abuse of legal process.  *See Aguirre v. Best Care Agency, Inc.*, No.

10-cv-5914, 2013 WL 4446925, at *12 (E.D.N.Y. Aug. 16, 2013) (alleged misrepresentations

regarding employer's sponsorship of green card supports an abuse of legal process claim); *Antigo*

*v. Lombardi*, No. 11-cv-408, 2012 WL 4468503, at *3 (S.D. Miss. Sept. 25, 2012) (allegations

---

[3]    *See Compl.* ¶¶ 109, 114-125, 214, 216, 230, 252, 254, 289, 299, 322, 340, 356, 374-75, 396, 407, 443, 461, 495, 504, 521, 543.

that defendants required H-2B workers to pay visa fees and withheld passports stated a plausible claim).

Burnett cites *Valdez-Baez* (correctly captioned *Castellanos-Contreras*) *v. Decatur Hotels, LLC*, 622 F.3d 393, 400 (5th Cir. 2010), as standing for the proposition that there is no prohibition against requiring non-immigrant workers to pay recruitment fees. (Br. at 3.) What the court actually held, in the FLSA context and not the TVPA context, is that non-immigrant workers may be responsible for a relatively low visa application processing fee. This case is inapposite because Plaintiffs have alleged that, in addition to the thousands of dollars in so-called recruitment fees, Burnett and co-Defendants charged Plaintiffs additional H-2B "visa fees" of between $1,000 and $3,000, amounts well in excess of any consulate visa processing fee. (Compl. ¶¶ 211, 250, 427, 516.) Furthermore, one can infer from the fact that Burnett and the recruiters told Plaintiffs not to disclose the fees they paid for their H-2B visas, that Plaintiffs paid more than a simple consulate visa processing fee. (*Id*. ¶¶ 213, 251, 429.) If Burnett wishes to dispute the facts alleged, he may do so at trial. A motion to dismiss is not the appropriate vehicle.

### C.   Burnett Participated In The Unlawful Trafficking Of Plaintiffs

Burnett is also alleged to have violated Section 1590, which provides a claim against any person who, *inter alia*, "recruits . . . or obtains by any means, any person for labor or services in violation of this chapter." (Compl. ¶ 561.) By stating a claim for a violation of Section 1589, which is part of "this chapter," courts have found that a claim under Section 1590 is also stated. *See Nunag-Tanedo*, 790 F. Supp. 2d at 1147 ("Plaintiffs have sufficiently alleged that Defendants are involved in a fraudulent scheme involving forced labor, and with the international nature of this matter, Plaintiffs have also sufficiently alleged that Defendants

10

recruited, transported, and provided Plaintiffs for that forced labor."); *cf. Antigo*, 2012 WL 4468503, at *3 (finding claim stated under both §§ 1589 and 1590).

Likewise, allegations of involuntary servitude in violation of 18 U.S.C. § 1584 provide an additional ground for stating a claim under Section 1590.  For example, the court in *Ramos v. Hoyle*, No. 08-21809, 2008 WL 5381821, at *5 (S.D. Fla. Dec. 19, 2008) held that plaintiffs' Section 1590 claim was supported by their allegations of involuntary servitude.  The allegations in *Ramos* were that defendants restricted plaintiffs' food, violated their agreement made before plaintiffs came to this country regarding work and wages, forced plaintiffs to live in confined quarters, kept passports and immigration papers, and threatened deportation.  Those allegations are strikingly similar to the allegations of Plaintiffs here.

Rather than address all of Plaintiffs' allegations, Burnett mistakenly asserts that Plaintiffs' claims "have as their linchpin the concept that threats of deportation satisfies the definition of involuntary servitude."  (Br. at 2.)  First, as reflected above, no honest reading of the Complaint suggests threats of deportation are the "linchpin" of Plaintiffs' TVPA claims.  Second, the case Burnett relies on, *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012), is easily distinguishable and provides Burnett no relief.

The *Zavala* case involved aliens in the United States illegally -- not non-immigrant workers recruited to the United States -- who alleged FLSA and RICO claims -- not TVPA claims -- against Wal Mart, which used their cleaning services through contractors who hired the aliens.  The court's holding that threats of deportation are insufficient to constitute involuntary servitude was, as the court noted, in the context of allegations that managers often kept them beyond the end of their shift to finish their work, at which point workers were free to leave.  Those plaintiffs were also free to switch jobs, which they did, freely moving to different

employers in different cities.  By contrast, Plaintiffs here were compelled to come to work every

day, essentially imprisoned in a man camp surrounded by barbed wire and monitored by guards,

present legally in the U.S. but on H-2B visas which permitted only work for Signal (which

provided Signal with much coercive leverage), living in deplorable conditions for which they

were required to pay, and in debt due to the enormous payments made to Burnett and the others,

so that return to India and loss of work was not a viable option.[4]  There can be no doubt that

these allegations, as in *Ramos*, satisfy the definition of involuntary servitude.

     **D.**     **Burnett Financially Benefitted From The Trafficking Scheme**

     Finally, an additional basis for a claim exists against anyone who "knowingly

benefits, financially . . . from participation in a venture" that obtained forced labor or who acted

"in reckless disregard of the fact that the venture" had obtained forced labor.  18 U.S.C.

§ 1589(b), 1595(a).

     As the above allegations set forth, Burnett participated in a scheme that obtained

the labor of Plaintiffs through false promises of permanent residency status and the need to pay

off the debts incurred for the opportunity to procure the promised green card.  Burnett financially

benefited from this scheme to the tune of one-third of the recruitment fees, amounting to a

payment of roughly $3,000 to $5,000 per worker to Burnett.  This satisfies the pleading

requirement for a claim under this provision of the statute.  *See Antigo v. Lombardi*, No. 11-cv-

408, 2012 WL 4468503, at *2 & n.1 (S.D. Miss. Sept. 25, 2012) (finding claim stated against

employer defendants who allegedly participated in a venture with recruiter defendants they

---

[4]     In the TVPA context, threatening non-immigrant workers holding H-2A or H-2B visas with serious immigration consequences, such as deportation, states a claim for threatened abuse of the legal process.  *See Camayo v. John Peroulis & Sons Sheep, Inc.*, No. 10-cv-772, 2012 WL 4359086, at *5 (D. Col. Sept. 24, 2012); *Ramos-Madrigal v. Mendiola Forestry Serv., LLC*, 799 F. Supp. 2d 958, 960 (W.D. Ark. 2011).  Plaintiffs have alleged that Burnett made such threats.  (Compl. ¶¶ 180, 194.)

should have known violated the TVPA); *United States v. Rivera*, No. 09-619, 2012 WL 2339318, at *5 (E.D.N.Y. June 19, 2012) (finding "ample basis" for jury's conviction of defendant for knowingly benefitting from a venture that he knew or recklessly disregarded was engaged in conduct violating the TVPA).

## II.     PLAINTIFFS HAVE STATED MISSISSIPPI STATE COMMON LAW CLAIMS

Burnett's motion to dismiss the common law claims of fraudulent and negligent misrepresentation and breach of contract consists primarily of a few sentences in which he argues that "Mississippi law could not apply" because the alleged conduct "occurred in India or the United Arab Emirates, not Mississippi."[5]  (Br. at 2, 4, 13.)  However, Burnett is wrong on the facts and wrong on the law, which may explain the argument's brevity and lack of legal support.

Burnett neglects the Complaint's allegations concerning his activities *in Mississippi* that form the basis for actionable claims under Mississippi law.  For example, Burnett visited Signal's worker camp and falsely told Plaintiffs that Signal would provide each worker with a green card, intending that Plaintiffs rely on that misrepresentation and continue working for Signal.  (Compl. ¶ 176.)  Burnett also agreed to assist some Plaintiffs in filing separate green card applications in exchange for additional fees, and then breached that contract by failing to provide the agreed upon immigration services.  (*Id.* ¶¶ 88, 178, 268.)

With respect to Burnett's activities outside Mississippi in conjunction with the recruitment of Plaintiffs, Burnett contends that the location of the recruitment is dispositive of

---

[5]     Beyond Burnett's faulty choice of law argument, he offers a single conclusory denial that the allegations state common law claims or are sufficient under Rule 9.  (Br. at 7.)  Burnett does not bother to explain how Plaintiffs' allegations are insufficient under either Rule 9 or 12, but instead disputes what the facts will show.  He argues that the "totality of the facts support a fulfillment of Burnett's [attorney-client] obligations to the Plaintiffs" rather than the breach and misrepresentations alleged.  Again, a motion to dismiss is not the vehicle for disputing the facts.

the choice of law that should be applied.  Burnett's failure to cite any authority for this proposition is unsurprising because, contrary to his contention, a choice of law analysis considers a variety of factors.  Under Mississippi choice of law principles for both tort and contract claims, courts apply the law of the jurisdiction with the "most significant relationship" to the events and parties.[6]  Here, Burnett, a Mississippi resident and attorney, traveled abroad to meet with Plaintiffs to assist in their recruitment to work and live in Mississippi for a Mississippi company.  It is in Mississippi that the benefit of Plaintiffs' bargain and the object of Plaintiffs' reliance -- obtaining steady employment and permanent residency -- failed to materialize in part through Burnett's actions.  When viewed in its proper totality and in recognition that this entire case is about the trafficking of Plaintiffs to and their forced labor in *Mississippi*, there is no question that Mississippi has the "most significant relationship" to the events, parties and issues before the Court.

## III.    THE STATUTE OF LIMITATIONS ON PLAINTIFFS' CLAIMS ARE TOLLED

Burnett also seeks dismissal because, he contends, the statute of limitations for Plaintiffs' state law claims has run.  Burnett's primary argument that Plaintiffs' state law claims are untimely is that the running of the statute of limitations was not tolled by the pending *David* class action.  (Br. at 10, 12.)  On the contrary, this Court, federal statute, Mississippi law -- and

---

[6]    For tort actions, Mississippi looks to Section 145 of the Restatement (Second) of Conflict of Laws, which considers: "'(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.'" *Ellis v. Trustmark Builders, Inc.*, 625 F.3d 222, 226 (5th Cir. 2010) (quoting Restatement § 145).

Similarly, for contract claims, Mississippi looks to Section 188 of Restatement (Second) of Conflict of Laws, which considers: "'(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.'" *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1032 (1985) (quoting Restatement § 188).

even the Burnett Defendants previously -- all recognize the propriety of tolling under the circumstances.

     **A.**     **This Court Tolled The Statute Of Limitations For Plaintiffs' Claims**

     Burnett argues the statute of limitations for Plaintiffs' claims for fraudulent and negligent misrepresentation and breach of contract ran by the end of December 2011.  (Br. at 11.)  Burnett further asserts that "the filing of the federal class action in *David* would have had no effect on the tolling of the statute of limitations" because Mississippi does not recognize the class action tolling doctrine.  (*Id*. at 13.)  Burnett's argument omits two very significant facts.

     First, Burnett ignores the standing Order of this Court in the *David* case entered by Judge Zainey on January 20, 2011: "[T]he statute of limitations for any claims absentee class members may bring for Fraud and Negligent Misrepresentation (Second Amended Complaint ("SAC"), 5th Claim for Relief) and Breach of Contract (SAC, 6th Claim for Relief) are tolled until the completion of 120 days from the Court's final ruling on class certification."  *Kurian David, et al. v. Signal Int'l, LLC, et al.*, 2:08-cv-01220-SM-DEK (E.D. La. Jan. 20, 2011), ECF No. 982.  In a subsequent Order in *David*, this Court recognized that the effect of Judge Zainey's Order was to toll, until May 3, 2012, the statute of limitations for these state law claims by putative members of the *David* class.  *Kurian David, et al. v. Signal Int'l, LLC, et al*., 2:08-cv-01220-SM-DEK (E.D. La. Aug. 28, 2013), ECF No. 1379 at 2 n.4.[7]  As a result of these Orders, the statute of limitations for Plaintiffs' state law claims were tolled from March 7, 2008, until

---

[7]    In its Tolling Order of August 28, 2013, this Court also considered the request of the *David* Plaintiffs for "additional tolling" on behalf of putative class members.  This Court originally granted that request and tolled the running of the limitations period for all federal and state claims for an additional period of time through August 28, 2013.  The Court found that class members' "potential claims have not been allowed to 'slumber' in a way that would mandate denial of their request for tolling." *Id*. at 4.  Plaintiffs submit that the Court's rationale applies equally regardless of whether the claims arise under federal or state law.  Therefore, Plaintiffs respectfully ask that the Court reconsider its subsequent Order on October 15, 2013, that revised the Tolling Order to apply only to federal law claims.

May 3, 2012.  Even if the statute of limitations began to accrue on February 19, 2007 -- the earliest date that Burnett argues one of the Plaintiffs knew or should have known the cause of action asserted -- the filing of Plaintiffs Complaint in this case on August 7, 2013, was well within the three-year statute of limitations period.[8]

Second, Burnett also neglects to inform the Court in his Motion that *he consented to tolling the statute of limitations for these very same claims*.  Judge Zainey's Order arose from a Consent Motion filed by the *David* plaintiffs.  The Consent Motion recites the consent to tolling supplied by each of the defendants, including "Ralph Alexis on behalf of the Burnett Defendants at 10:08 a.m. CST" on January 17, 2011.  (David 981 at 3)  Judge Zainey noted Burnett's consent in his Order.  Consequently, Burnett should be judicially estopped from arguing that Plaintiffs' claims were not tolled during the pendency of the David action.

"[A] party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument."  *Hall v. GE Plastic Pac. PTE Ltd., et al.,* 327 F.3d 391, 397 (5th Cir. 2003) (citing *Hotard v. State Farm Fire & Cas. Co.,* 286 So. 2d 814, 818 (5th Cir. 2002).  In the Fifth Circuit[9],

---

[8]    Burnett points to several (but not all) of Plaintiffs' dates of departure from Signal's Mississippi camp and assumes that those dates represent the "date the plaintiffs knew or should have known of the existence of the cause of action."  (Br. at 11.)  Yet the oppressive conditions at the camp do not indicate that each Plaintiff can be deemed to have discovered that the contracts for and representations regarding permanent residency and issuance of green cards had been breached and were fraudulent.  Indeed, it is not evident on the face of the Complaint when the statute of limitations should have begun to accrue for *each Plaintiff* under *each claim*.  Determining when Plaintiffs knew or should have known that Defendants' promises of residency and green cards were false is a fact-intensive question that is inappropriately decided at the motion to dismiss stage.  *See e.g., Lightfoot v. Lowndes County Sheriff's Dep't,* No. 94-CV-330, 1996 WL 408063, at *2 (N.D. Miss. June 12, 1996) ("While some of the plaintiffs' claims may appropriately be dismissed at a future date in this proceeding for failure to adhere to the statute of limitations, the court cannot say at this juncture that any of them must be presently dismissed."); *cf. Huss v. Gayden,* 991 So. 2d 162, 166 (Miss. 2008)  (explaining that application of the discovery rule is a fact-intensive process); *Sarris v. Smith,* 782 So. 2d 721, 725 (Miss. 2001) (same).

[9]    Where both the prior inconsistent statement and current action are both in federal court, the Fifth Circuit has applied Federal law to the question of judicial estoppel.  *Hall v. GE Plastic Pacific PTD Ltd.,* 327 F.3d 391, 395-96 (5th Cir. 2003) ("[T]he application of federal law concerning judicial estoppel is appropriate in this case because

*(cont'd)*

two elements must be shown to invoke judicial estoppel:  "the position of the party to be estopped is clearly inconsistent with its previous one," and the "party must have convinced the court to accept that previous position."  *Id.* at 396.  Both elements are clearly satisfied:  Judge Zainey entered an order based in part on Burnett's consent that plaintiffs' statute of limitations should be tolled, yet Burnett now asks this Court to ignore the very tolling that he consented to in 2011.  This Court should estop Burnett from taking this clearly inconsistent position and prevent Burnett from "playing fast and loose with the courts."  *Id.* (citing *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999).

### B.    <u>Plaintiffs' Claims Have Been Tolled Under 28 U.S.C. § 1367(D)</u>

This Court had jurisdiction over the *David* state law claims through its supplemental jurisdiction.  *David* Compl. ¶ 12 (citing 28 U.S.C. § 1367).  The federal Supplemental Jurisdiction provision at 28 U.S.C. § 1367(d) provides: "The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending . . . ."  The Supreme Court has held that state courts must apply this provision in subsequently filed litigation, even in the face of contrary state law.  *Jinks v. Richland County*, 538 U.S. 456, 459 (2003).  The Court explained that this provision exists "[t]o prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court."  *Id*.  The Court also concluded that the provision "eliminates a serious impediment to access to the federal courts on the part of plaintiffs pursuing federal- and state-law claims that 'derive from a common nucleus of operative fact.'"  *Id*. at 463 (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

_____

*(cont'd from previous page)*

both suits . . . ended up in federal court and it is the federal court that is subject to manipulation and in need of protection.")

Both the plain text and the rationale of Section 1367(d), as expressed in *Jinks*, apply with equal force here.  The Sixth Circuit in *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013), considered the question of whether 28 U.S.C. § 1367(d) operates to toll the statute of limitations for state law claims filed by plaintiffs who were class members in a previous case exercising pendant state law jurisdiction.  The Court concluded that § 1367(d) does indeed toll the limitations period for pendant state law claims of putative class members from a case in which class certification was denied.  *Id.* at 481. The Fifth Circuit would likely agree that the "efficiencies sought by *American Pipe* tolling would [not] be advanced if putative class members were forced to file individual state law actions to preserve any state law claims whose statutes of limitations might run during the course of class proceedings." *Id.* at 482.  Therefore, in addition to the tolling previously ordered by this Court, Section 1367(d) compels a tolling of the statute of limitations for Plaintiffs' state law claims during the period beginning with the filing of the *David* complaint through to the decision denying class certification.

C.   **Plaintiffs' State Law Claims Would Also Be Tolled Under Mississippi Law**

Burnett is correct that there "are no direct cases in Mississippi" applying the class action tolling  doctrine -- including the doctrine of cross-jurisdictional class action tolling that would have applicable when Burnett filed his motion in the Southern District of Mississippi originally.  That fact, however, does not mean that tolling would not be recognized under Mississippi law in the present situation.

First, it is important to note that because Burnett can find no Mississippi authority regarding cross-jurisdictional class action tolling, his argument is predicated on inapposite cases from other jurisdictions: *Quinn v. Louisiana Citizens Property Ins. Corp.*, 118 So.3d 1011 (La. 2012), a Louisiana case with facts vastly different than those in this case, as well as *Bell v.*

18

*Showa Denko K.K.*, 899 S.W.2d 749 (Tex. App. 1995) and *Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008).  None of these cases applied Mississippi law, nor did any of the cases involve facts similar to those present here: common plaintiffs, common claims and common defendants.

   *Quinn* involved the "vagaries" of Louisiana class action law.  Under Louisiana law, for example, a denial of class certification requires notice to be sent to class members, which triggers certain rights and obligations among the parties.  *Quinn*, 118 So. 3d at 1015-1019.  Thus, under Louisiana law, a putative class member in a federal class action in which certification was denied may be in a better position to press their individual claims than a putative state court class action member, who would be subject to Louisiana's unique class action notice and limitation provisions.  *Id*. at 1021.  These concerns are not present in Mississippi or in the circumstances of this case, and thus, *Quinn* does not assist this Court in determining what Mississippi would do or in weighing the equities of tolling in the present matter.

   *Bell* and *Newby* are also unavailing.  *Bell* involved a suit against a number of defendants who were not named in the class action plaintiffs sought to invoke.  The Court acknowledged that the "basic premise of the *American Pipe* ruling is that a statute of limitations can be tolled while class actions are pending, provided the defendant has notice of the type and potential number of claims against it." *Bell*, 899 S.W. 2d at 758.   Unlike in *Bell*, Burnett was on fair notice that Plaintiffs had a claim because Burnett was named in the original *David* complaint.  Similarly in *Newby*, the Fifth Circuit affirmed the "*Erie* guess" about Texas state law made by the Southern District of Texas.  *Newby*, 542 F.3d at 471-73.   The lower court had expressed doubt that tolling would apply in a "complex federal [] class action, grounded in federal securities law and involving a not easily discernible class of plaintiffs."  Opinion and Order at 19-20, No. 4:01-cv-03624, ECF No. 5235 (S.D. Tex. Nov. 29, 2006).  Here, the

universe of plaintiffs, defendants and claims has been knowable and remained unchanged since the filing of *David*.

Moreover, the one case Burnett cites from Mississippi strongly suggests that Mississippi would extend tolling under these circumstances.  Burnett cites *Clark Sand Co. v. Kelley*, 60 So.3d 149 (Miss. 2011) for the proposition that there is no tolling of the statute of limitations by the filing of a suit that is later dismissed without prejudice, and argues that the same would be true by the filing of a class action that is not certified.  A denial of class certification, however, is not at all similar to a dismissal of a claim.  The Mississippi Supreme Court in *Clark Sand* looked to Mississippi's saving statute, Miss. Code Ann. 15-1-69 (Rev. 2003).  The saving statute allows a plaintiff whose claim is dismissed for a "matter of form" one year to re-file his or her claim in an appropriate venue.  *Id*. at 153 n.3.  It is appropriate to look to the saving statute to ascertain how Mississippi would answer the tolling question, but Burnett misunderstands its application to this case.  In *Clark Sand*, the court found that a dismissal without prejudice was not a dismissal for "form" which would invoke the state's one-year savings statute.  A "matter of form" is "where the plaintiff has been defeated by some matter not affecting the merits . . . which [the plaintiff] can remedy or avoid by a new process."  *Marshall v. Kansas City Southern Railways Co*., 7 So.3d 210, 214 (Miss. 2009) (citing *Hawkins v. Scottish Union & Nat'l Ins. Co.*, 110 Miss. 23 (1915)).  A denial of class certification does not affect the merits and is a matter of form.

The Mississippi Supreme Court has characterized the Mississippi saving statute as "highly remedial," and declared it "ought to be liberally construed."  *Id*.; *see also Crawford v. Morris Transp.*, 990 So. 2d 162 (Miss. 2008) (explaining the true meaning of the savings statute is "where a plaintiff has been defeated by some matter not affecting the merits, some defect or

20

informality, which he can remedy or avoid by a new process" and concluding "the statute is highly remedial and should be liberally construed to accomplish its purpose.") (internal quotations and citations omitted).  Where a plaintiff finds himself "inadvertently . . . in a procedural quagmire and made a good-faith effort to preserve his claim . . . application of the savings statute . . . is appropriate and consistent with the purposes of the statute."  *Marshall*, 7 So.3d at 214-16.  This rationale of the saving statute applies with equal force under the present circumstances.

This is not a case where a plaintiff in a distant state, having otherwise failed to timely pursue her claim, is attempting to belatedly piggy-back onto a far-filed class action only tangentially related to her.  Instead, Burnett has been on notice since the filing of *David* that the specific plaintiffs in this case (who were part of an identifiable and limited proposed class) were bringing these specific claims against these specific Burnett Defendants.  None of this comes as a surprise to Burnett.  He fails to point to a single case in any jurisdiction where a court has refused to toll the statute of limitations where the identity of the plaintiffs, claims and defendants does not change between the denial of class certification and the filing of individual lawsuits.  Under Burnett's reading of the law, plaintiffs who are part of a putative class action must also file duplicative state law cases to preserve their rights in the event that the court fails to grant class certification.  This would burden the judicial system while creating incentives for defendants to simply run out the clock through the class certification process.  Clearly Mississippi law would not command such a judicially burdensome and prejudicial result.

There can be no question that Plaintiffs in this case have made good-faith efforts to preserve their claims.  Shortly after learning that the Eastern District of Louisiana in *David* denied the certification of a class that would have included their claims, Plaintiffs retained

21

counsel and filed their claims in the most appropriate venue.  Burnett should not be allowed to

turn a procedural decision on class certification into a complete bar to Plaintiffs' day in court.[10]

Under these circumstances, the "liberal" and "remedial" philosophy behind Mississippi's saving

statute strongly suggests that Mississippi law would toll Plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Burnett's Motion to Dismiss.

---

[10]      Indeed, numerous other courts have recognized that equity behind class action tolling and have tolled the statute of limitations for plaintiffs denied class certification even in another state.  Burnett provides no explanation for why Mississippi would act any differently.  *See, e.g., Dow Chemical Corp. v. Blanco*, 67 A.3d 392 (Del. 2013) (Delaware recognizes cross-jurisdictional class action tolling); *Stevens v. Novartis Pharma. Corp.*, 247 P.3d 244 (Mont. Dec.  30, 2010) (same in Montana); *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160 (Ohio 2002) (same in Ohio); *Staub v. Eastman Kodak Co.*, 726 A.2d 955 (same in New Jersey); *Hyatt Corp. v. Occidental Fire & Casualty Co.*, 801 S.W.2d 382 (Mo. App. 1990) (same in Missouri); *Lee v. Grand Rapids Bd. of Ed.*, 384 N.W.2d 165 (Mich. App. 1986) (same in Michigan); *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887 (E.D. Va. 2010) (predicting Virginia would allow cross-jurisdictional class action tolling); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004) (predicting that Colorado, Indiana, Kansas, South Carolina and Tennessee would recognize cross-jurisdictional class action tolling).  Even Texas federal courts have allowed for cross jurisdiction class action tolling under similar circumstances.  *See In re Norplant Contraceptive Products Liab. Litig.*, 173 F.R.D. 185 (E.D.  Tex. 1997) (distinguishing *Bell v. Showa Denko K.K.*).

Dated:  November 7, 2013        Respectfully submitted,
      Boston, Massachusetts


Of Counsel:                 s/ A. Gregory Grimsal

Eben Colby, *pro hac vice to be filed*   A. Gregory Grimsal, La. Bar No. 06332

Peter Simshauser, *pro hac vice to be filed*  Steven W. Copley, La. Bar No. 16869

SKADDEN, ARPS, SLATE,       GORDON ARATA MCCOLLAM

   MEAGHER & FLOM LLP         DUPLANTIS & EAGAN, LLC

One Beacon Street          201 St. Charles Avenue, 40th Floor

Boston, Massachusetts 02108    New Orleans, Louisiana 70170-4000

Telephone: (617) 573-4800      Telephone: (504) 582-1111

peter.simshauser@skadden.com   Facsimile: (504) 582-1121

eben.colby@skadden.com       ggrimsal@gordonarata.com

                         scopley@gordonarata.com

                         Counsel for Plaintiffs

23

## CERTIFICATE OF SERVICE

I, A. Gregory Grimsal, hereby certify that on November 7, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to counsel for the following: Signal International, LLC, Signal International, Inc., Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C. and the Gulf Coast Immigration Law Center, L.L.C., and I hereby certify that I have mailed by United States Postal Service the document to the following non-ECF participants:

Billy R. Wilks                          Global Resources, Inc.
9136 Heather Lane                       609 Hwy 90 East
Moss Point, MS 39562                    Gautier, MS 39553

J & M Associates, Inc. of Mississippi   J & M Marine & Industrial, LLC
9136 Heather Lane                       9136 Heather Lane
Moss Point, MS 39562                    Moss Point, MS 39562


Dated: November 7, 2013                 s/ A. Gregory Grimsal_____
                                        A. Gregory Grimsal

24