# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAKSHMANAN PONNAYAN ACHARI, et al.,<br>                              Plaintiffs,<br>     v.<br>SIGNAL INTERNATIONAL, LLC, et al.,<br>                              Defendants. | Case No.: 2:13-cv-06218 SM-DEK<br><br>**This document applies to Case No. 2:13-cv-06221 only.** |
| _**Related Cases:**_<br><br>GEORGE PAILY PAULOSE CHAKKIYATTIL, et al.,<br>                              Plaintiffs,<br>     v.<br>SIGNAL INTERNATIONAL, LLC, et al.,<br>                              Defendants. | Case No.: 2:13-cv-06219 SM-DEK<br><br><br>Case No.: 2:13-cv-06220 SM-DEK |
| SABU PUTHUKKUTTUMEL VEEDE<br>KRISHNAKUTTY, et al.,<br>                              Plaintiffs,<br>     v.<br>SIGNAL INTERNATIONAL, LLC, et al.,<br>                              Defendants. | Case No.: 2:13-cv-06221 SM-DEK |
| VARGHESE KURISINKAL DEVASSY, et al,,<br>                              Plaintiffs,<br>     v.<br>SIGNAL INTERNATIONAL, LLC, et al.,<br>                              Defendants. | **Oral Argument Requested** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION LAW CENTER'S MOTION TO DISMISS[1]

GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN LLC
201 St. Charles Avenue
40th Floor
New Orleans, Louisiana  70170-4000

**MANATT, PHELPS, & PHILLIPS LLP**
700 12th Street, NW
Washington, DC 20006
(202) 585-6500

---

[1] On October 30, 2013, Plaintiff electronically provided a copy of this Memorandum of Law to counsel of record for the Burnett Defendants.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................................... 2

III.  ARGUMENT ................................................................................................... 4

    A.    The Statute of Limitations Has been Tolled ........................................... 4

        1.    The Eastern District of Louisiana has Tolled the Applicable
             Statutes................................................................................................ 5

        2.    The Claims Have Been Tolled under *American Pipe, Crown, Cork*,
             and 28 U.S.C. § 1367(d). ................................................................... 7

    B.    Plaintiffs Have Adequately Pled Claims Against the Burnett Defendants .......... 10

        1.    Plaintiffs Have Pled Claims under the TVPRA ...................................... 11

        2.    The Burnett Defendants' Choice of Law Argument Is Not
             Applicable to a Motion to Dismiss ........................................................ 13

IV.   CONCLUSION ............................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

CASES

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974)............................................................................................5, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................10

*Boardman v. United Servs. Auto. Ass'n.*,
  470 So. 2d 1024 (Miss. 1985)................................................................................14

*Coastal Servs. Grp. LLC v. BP Co. N. Am., Inc.*,
  No. 1:11-cv-425, 2013 WL 961600 (S.D. Miss. Mar. 12, 2013)...........................10

*Crown, Cork & Seal Co., Inc. v. Parker*,
  462 U.S. 345 (1983)........................................................................................7, 8, 9

*Devassy et al. v. Signal et al.*,
  13-cv-00222-LG-JMR (S.D. Miss. Oct. 18, 2013) ECF No. 44..............................1

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002)......................................................................................................9

*Dow Chemical Corp. v. Blanco*,
  67 A.3d 392 (Del. 2013) ..........................................................................................5

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) .................................................................................10

*Hyatt Corp. v. Occidental Fire & Casualty Co.*,
  801 S.W. 2d 382 (Mo. App. 1990) ..........................................................................5

*In re Linerboard Antitrust Litig.*,
  223 F.R.D. 335 (E.D. Pa. 2004)...............................................................................5

*In re Norplant Contraceptive Products Liab. Litig.*,
  173 F.R.D. 185 (E.D. Tex. 1997)..............................................................................5

*In re Vertrue Inc. Mktg. & Sales Practices Litig.*,
  719 F.3d 474 (6th Cir. 2013) ...................................................................................9

*Jinks v. Richland Cnty.*,
  S.C., 538 U.S. 456 (2003).................................................................................7, 9, 10

*Kurian David, et al. v. Signal International, LLC, et al.*,
  2:08-cv-01220-SM-DEK (E.D. La. Aug. 28, 2013) ...................................... passim

*Kurian David, et al. v. Signal International, LLC, et al.*,
  2:08-cv-01220-SM-DEK (E.D. La. March 7, 2008)..................................................6

*Lee v. Grand Rapids Bd. of Ed.*,
  384 N.W. 2d 165 (Mich. App. 1986).........................................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Northrop Grumman Ship Sys. v. Ministry of Def.*,
  575 F.3d 491 (5th Cir. 2009) ................................................14

*Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*,
  790 F. Supp. 2d 1134 (C.D. Cal. 2011) ...............................12

*Parsons v. United States*,
  460 F.2d 228 (5th Cir. 1972) ..................................................8

*Saddler v. Quitman Cnty. Sch. Dist.*,
  CIV.A. 2:08CV181-P-A, 2009 WL 2497194 (N.D. Miss. Aug. 17, 2009) ...........................10

*Snow v. WRS Grp., Inc.*,
  73 Fed. App'x 2 (5th Cir. 2003) ...........................................14

*Staub v. Eastman Kodak Co.*,
  726 A.2d 955 ............................................................................5

*Stevens v. Novartis Pharma. Corp.*,
  247 P.3d 244 (Mont. Dec. 30, 2010)......................................5

*Thompson v. Erving's Hatcheries, Inc.*,
  186 So. 2d 756 (Miss. 1966).................................................15

*Torkie-Tork v. Wyeth*,
  739 F. Supp. 2d 887 (E.D. Va. 2010) ....................................5

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) .........................................10, 12

*United States v. Kozminski*,
  487 U.S. 931 (1988)...............................................................13

*Vaccariello v. Smith & Nephew Richards, Inc.*,
  763 N.E.2d 160 (Ohio 2002).................................................5

*Vaught v. Showa Denko K.K.*,
  107 F.3d 1137 (5th Cir. 1997) ...............................................9

## STATUTES

15 U.S.C. § 1589(b)(2) ...............................................................11

15 U.S.C. § 1589(c)(2)...............................................................11

15 U.S.C. § 1590..........................................................10, 11, 12

18 U.S.C. § 1589........................................................................10

28 U.S.C. § 1367......................................................................5, 8

28 U.S.C. § 1367(d) .......................................................... passim

Civil Code, Article 141 .............................................................13

## TABLE OF AUTHORITIES
### (continued)

<u>**Page**</u>

OTHER AUTHORITIES

5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1356 (3d ed. 2004) ...............10

RULES

Federal Rule of Civil Procedure 44.1 ....................................................................................13, 14

Rule 12(b)(6)...........................................................................................................................10, 15

Rule 23 ................................................................................................................................5, 7, 9, 15

## I.      PRELIMINARY STATEMENT

Defendants Malvern C. Burnett, The Law Offices of Malvern C. Burnett, and Gulf Coast Immigration Law Center LLC (collectively "Burnett") lured Plaintiffs, 13 skilled laborers from India, to Pascagoula, Mississippi by promising them permanent residence status in the United States and to place them in high-paying jobs. After paying exorbitant fees—sometimes by selling family farms or heirlooms—Plaintiffs arrived in Mississippi to find themselves virtual prisoners in a squalid, racially divided labor camp. While in Mississippi, Burnett and the other defendants continued to promise Plaintiffs that they would receive green cards if they stayed, and threatened them that they would be deported if they left or complained.

Plaintiffs were putative members in a class action filed against Burnett and others in the Eastern District of Louisiana in 2008. The court denied class certification in 2012 and subsequently issued an order tolling the statute of limitations for both the federal claims and the pendent state law claims. Plaintiffs continued to pursue their rights diligently by filing individual claims in the Southern District of Mississippi, the location of their injury. The Southern District of Mississippi, finding that "the issues are almost identical" to those in the initial class action and that "[t]he theories of recovery in all of the Mississippi cases are also presented in the *David* case" pending in the Eastern District of Louisiana, transferred this case to the Eastern District of Louisiana under the first-to-file rule. *Devassy et al. v. Signal et al.*, 13-cv-00222-LG-JMR (S.D. Miss. Oct. 18, 2013) ECF No. 44.

Burnett, who has been defending these claims for five years, now claims that the statute of limitations on Plaintiffs' state law clams expired while the *David* case was being litigated in the Eastern District of Louisiana. Burnett ignores the fact that the Eastern District of Louisiana has issued multiple orders tolling the statutes for both the federal and the state law claims. Moreover, even in the absence of the *David* court's orders, Plaintiffs' state-law claims were filed

as pendent claims and the underlying statutes of limitations were tolled pursuant to 28 U.S.C. § 1367(d).

Burnett also claims that Plaintiffs have not adequately stated a claim for relief on their federal claim and that their state law claims should be dismissed because foreign law applies to those claims. Because Plaintiffs have properly stated facts that would merit relief for their federal claim and that would make Mississippi law applicable to their state law claim, the motion should be dismissed. Moreover, even if foreign law were applicable to the pendent claims, that alone would not merit dismissal, as Plaintiffs could continue to bring the pendent claims under foreign substantive law.

## II.   STATEMENT OF FACTS

The following facts are stated in the complaint and must be assumed to be true for the purposes of this motion.

Burnett stated in person to Plaintiffs at seminars in India and the United Arab Emirates that, for the price of between $11,000 and $14,000, he would help transport them to the United States, place them in high-paying jobs, and provide them with permanent residence in the United States. (Compl. ¶¶ 3–4). Plaintiffs raised what was, for them, extraordinary sums of money to pay these recruitment fees, but received no jobs or response from Burnett or the other defendants until 2006. (Comp. ¶¶ 5–6). Burnett failed to refund any money when requested, even though he had already failed to fulfill his promises. (Comp. ¶¶ 47–48). In January, 2006, Burnett informed Plaintiffs that their "labor certifications" had been approved by the U.S. Department of Labor, and that another installment payment was therefore triggered. (Compl. ¶ 49). When Plaintiffs showed reluctance to participate, Burnett and other Defendants "threatened forfeiture of all money paid to that point." (*Id.*).

Burnett had never intended to help Plaintiffs apply for permanent residence, but was

instead working as part of a scheme by all Defendants to lure foreigners to the United States by promising them green cards and applying instead for temporary H-2B visas. (Compl. ¶ 57–58). As part of the ruse, when Plaintiffs were preparing for their consular interviews, Burnett personally coached Plaintiffs to tell consular personnel that they were not being sponsored for green cards. (Compl. ¶¶ 60; 249).

When Plaintiffs arrived in Mississippi, they were housed in deplorable conditions, fed rancid food, and given unsafe work assignments. (Compl. ¶¶ 70–86). Plaintiffs were forced to set up direct deposit accounts to which their employer had access, and when some workers tried to escape the camps, their employers denied them access to their accounts. (Compl. ¶¶ 86).

Burnett personally visited the camps and told Plaintiffs that they were going to be provided with green cards granting them permanent residence in the United States. (Compl. ¶ 109). Together with Signal and other Defendants, Burnett participated in a plan whereby the workers were kept at the camp by being threatened with deportation if they fled or filed a lawsuit. (Compl. ¶¶ 128–29).

Burnett received fees for legal services from Plaintiffs, establishing an attorney-client relationship for purposes of handling their immigration issues. (Compl. ¶ 134). This relationship was predicated on the promise to perform a specific service—apply for permanent residence based on employment with Signal. (Compl. ¶ 45). Burnett never had any intention of filing permanent residence applications on behalf of his clients. (Compl. ¶ 135–37). In fact, he was simultaneously representing Signal, to whom he truthfully disclosed that he was only applying for H-2B visas for Plaintiffs. (Compl. ¶ 137). Burnett referred to Plaintiffs, his clients, as "the idiots" in emails and suggested that their visas be "mysteriously" revoked or that they be threatened with "immediate deportation" for stopping payment on checks they were sending him

for legal services that he was not providing. (Compl. ¶ 141).

At all times, Burnett was acting pursuant to a scheme launched by Sachin Dewan and Dewan Consultants Pvt. Ltd., to lure Indian nationals to the United States with promises of permanent residence and high-paying jobs then exploit them as a cheap source of captive labor. (Compl. ¶¶ 42, 125, 133).

## III.   ARGUMENT

### A.   The Statute of Limitations Has been Tolled.

Burnett argues that Plaintiffs' pendent state claims are barred by the Mississippi statute of limitations.[2] For this proposition, Burnett relies on general pronouncements regarding the *Erie* doctrine and limitations on federal power. Burnett ignores the fact that this Court has already tolled the statutory period for all of Plaintiffs' claims, including the pendent state-law claims, until May 3, 2012, and that the current complaint was filed well within the three-year period from that date. *Kurian David, et al. v. Signal International, LLC, et al.*, 2:08-cv-01220-SM-DEK (E.D. La. Aug. 28, 2013), ECF no. 1379. Even were the court somehow inclined not to apply its own order, tolling still would be appropriate because the state claims are pendent claims whose statutory periods are properly tolled under 28 U.S.C. § 1367(d).

The Burnett Defendants' argument regarding "cross-jurisdictional tolling," which concerns the tolling of the statute of limitations of a federal class action based upon an earlier-filed state class action and vice versa, is simply inapplicable with regards to a federal class action with pendent state law claims. None of the cases that Burnett cites involves pendent state-law claims; instead, they are concerned with cases where state-court plaintiffs have attempted to rely on distant and only marginally related federal class actions to toll their local statutes of

---

[2] Although he argues elsewhere that foreign law, rather than Mississippi law, applies to the pendent claims, he does not claim that any statute of limitations would bar these claims under Indian or Emirati law, and has therefore waived such arguments should the Court later find that foreign law applies.

limitations.[3]

Under the Burnett Defendants' interpretation of the law, any putative class member in a federal class action that contains pendent state-law claims must burden the state courts with an individual suit during the pendency of the class action. The sole purpose of these lawsuits would be to preserve the state statute of limitations in case the federal court denies certification. Putative class members would have to file these local suits even when the federal court in the original action issues order after order tolling the statutory period. To preserve their rights under Burnett's interpretation of the law, hundreds of Plaintiffs would have been required to file suit in Texas and Mississippi even as they expected to become class members in Louisiana. Such a requirement "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974).

### 1.    The Eastern District of Louisiana has Tolled the Applicable Statutes.

Plaintiffs were potential class members in *Kurian David, et al. v. Signal International*, LLC, et al., 2:08-cv-01220-SM-DEK. *David*, like the current action, is a federal case with pendent state-law claims brought pursuant to 28 U.S.C. § 1367. The *David* court has previously ruled that "[t]he statutes of limitations for plaintiffs' claims were tolled for the putative class members from the filing of the class action complaint on March 7, 2008 until at least February 3,

---

[3] Even were cross-jurisdictional tolling at issue in this case, a sampling of the many jurisdictions that apply such tolling suggests that Mississippi too would toll the statute here. *See, e.g.*, *Dow Chemical Corp. v. Blanco*, 67 A.3d 392 (Del.  2013) (Delaware recognizes cross-jurisdictional class action tolling); *Stevens v. Novartis Pharma. Corp.*, 247 P.3d 244 (Mont. Dec.  30, 2010) (same in Montana); *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160 (Ohio 2002) (same in Ohio); *Staub v. Eastman Kodak Co.*, 726 A.2d 955 (same in New Jersey); *Hyatt Corp. v. Occidental Fire & Casualty Co.*, 801 S.W.  2d 382 (Mo. App. 1990) (same in Missouri); *Lee v. Grand Rapids Bd. of Ed.*, 384 N.W. 2d 165 (Mich. App. 1986) (same in Michigan); *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887 (E.D. Va. 2010) (predicting Virginia would allow cross-jurisdictional class action tolling); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004) (predicting that Colorado, Indiana, Kansas, South Carolina and Tennessee would recognize cross-jurisdictional class action tolling); *In re Norplant Contraceptive Products Liab. Litig.*, 173 F.R.D. 185 (E.D.  Tex. 1997) (allowing for cross jurisdiction class action tolling in Texas under similar circumstances).

2012," and that "[t]he putative class members' state law claims for fraud, negligent misrepresentation, and breach of contract were tolled an additional 120 days to May 3, 2012." *Kurian David, et al. v. Signal International, LLC, et al.*, 2:08-cv-01220-SM-DEK (E.D. La. Aug. 28, 2013), ECF no. 1417.[4]  The court subsequently tolled all of the statutes of limitations until August 28, 2013, though it later reconsidered that order and tolled only the federal claims through that date. *Id*.

Burnett does not address the orders issued by the *David* court, and makes no effort to incorporate any tolling into his analysis at all. Instead, he writes that "by March 8, of 2008 [Plaintiffs] knew or should have known of the cause of action asserted herein" and concludes that the statute of limitations had run by March 8 of 2011, nearly a year before the *David* court ruled on the class certification question. (Motion at 12).

In fact, incorporating the tolling period shows that this action is timely. The *David* case was filed on March 7, 2008, one day before the statute would have started to run under Burnett's analysis. *See* Complaint, *Kurian David, et al. v. Signal International, LLC, et al.*, 2:08-cv-01220-SM-DEK (E.D. La. March 7, 2008), ECF no. 1. Pursuant to Judge Zainey's order and this Court's subsequent modification, the statute of limitations for the state claims was tolled, at the very minimum, until May 3, 2012, and began running at that point. It would therefore expire on May 3, 2015. This complaint was filed on August 14, 2013, well within the three-year statute of limitations for those claims.

Burnett does not address the orders issued by Judge Zainey and this Court, but instead seeks to distract the Court from this fatal flaw by making general pronouncements about the scope of federal power. (Motion at 10). The equitable power of federal judges obviously is not

---

[4] Burnett consented to the tolling of the statutory period until 120 days after class certification. *See Kurian David, et al. v. Signal International, LLC, et al.,* 2:08-cv-01220-SM-DEK (E.D. La. Aug. 28, 2013), ECF no. 982.

unlimited, but it is not as proscribed as Burnett would like. Federal courts unquestionably have the power to toll the limitations periods of pendent state court claims. *See Jinks v. Richland Cnty.*, S.C., 538 U.S. 456 (2003) (federal courts have the power to toll statutory limitations periods of pendent state law claims originally filed in federal court). This court tolled the statutes on the state claims until May 3, 2012. Plaintiffs' claims were filed a mere fifteen months after this date, and are therefore timely.

**2.**     **The Claims Have Been Tolled under *American Pipe, Crown, Cork*, and 28 U.S.C. § 1367(d).**

Even were this court to find that the earlier orders of the Eastern District of Louisiana were ineffective, the pendent state law claims would be tolled pursuant to seminal Supreme Court precedent and federal statute. Nearly 40 years ago, the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974). The Court noted that tolling a statute of limitations when a defendant has been put on notice by the filing of a class action comports with the purpose of limitations periods, which are "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Id*. at 554. In fact, requiring potential class members to file their own individual suits or intervene before the class action is certified would "deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id*. at 553. Nine years later, the Court expanded the holding of *American Pipe* to allow for tolling in claims that are later filed as individual actions in addition to those brought by intervenors. *See Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). Noting that "[c]lass members who do not

file suit while the class action is pending cannot be accused of sleeping on their rights," the Court concluded that tolling a statute "creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification" *Id*. at 352–53. Out of a concern that an excessively broad interpretation of the decision could invite abuse, Justice Powell, while joining the majority, also wrote a concurrence in which he stated that tolling is only appropriate when the subsequent suit "raises claims that concern the same evidence, memories, and witnesses as the subject matter of the original class suit." *Id*. at 355 (Powell, J. concurring).There is no question that Plaintiffs' claims are timely under *American Pipe and Crown, Cork*, even absent the multiple orders tolling those statutes. Even reading Justice Powell's concurrence as defining the outer limit of *Crown, Cork* tolling, tolling is proper here because the case involves the same actions by the same defendants as the *David* matter.

Burnett argues that because the pendent claims are brought under state law, *American Pipe* does not apply to them. (Motion at 10–11). Burnett acknowledges that putting a plaintiff entirely out of court because he failed to burden another jurisdiction with a suit for the sole purpose of tolling a statute of limitations while a class action is pending elsewhere is "harsh," but suggests that the powers of the federal courts are so limited that no other option is available. (Motion at 9, *quoting Parsons v. United States*, 460 F.2d 228, 234 (5th Cir. 1972)).

Burnett fails to consider that Plaintiffs' state law claims are jurisdictional pursuant to 28 U.S.C. § 1367, and are therefore governed by the specific provisions of that statute rather than the general provisions regarding state law claims in federal court. *See* Complaint at ¶ 15. Although federal courts apply state statutes of limitations and tolling rules in diversity cases, the statute of limitations for state claims brought under pendent jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d). The

Supreme Court has confirmed that state courts must honor the statutory tolling required by federal law, even in the face of contrary state law. *See Jinks*, 538 U.S. 456.

The Sixth Circuit is the only circuit court to have precisely considered the question of whether 28 U.S.C. § 1367(d) operates to toll the statute of limitations for pendent state law claims filed by plaintiffs who would have been class members in a previous case in which class certification was denied that contained the same pendent claims. *See In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 481 (6th Cir. 2013). Unsurprisingly, after conducting a detailed analysis, the Sixth Circuit found that § 1367(d) tolled the state law statute and "all of the plaintiffs' state law claims except those requiring fraudulent concealment tolling were timely filed."[5]  *Id*. The *In re Vertrue* court considered and rejected the argument that potential class members do not have "claims" that can be tolled pursuant to § 1367(d), noting that "the Supreme Court has consistently referred to the 'claims' of unnamed plaintiffs in class action law suits." *Id*. *See Crown, Cork*, 462 U.S. at 351 ("a class member would be unable to press his claim separately); *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002) ("Otherwise, all class members would be forced to intervene to preserve their claims").

The Fifth Circuit would follow the logic set forth in *In re Vertrue*. The Fifth Circuit has held that there "is a strong federal policy favoring the tolling of limitations periods as to *all potential members of a Rule 23* class action." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1146 (5th Cir. 1997) (emphasis added). Although the *Vaught* court held that the federal policy was not strong enough to overcome a Texas law governing the tolling of class actions because that law reflected "a deliberate policy choice by its legislature" (*id*. at 1147), Mississippi state law has no class action provision, so it has no state interest in limiting the scope of *American Pipe* tolling. Although subsequent Supreme Court authority confirms that even a contrary provision in state

---

[5] Plaintiffs here do not rely on fraudulent concealment to render any of their claims timely.

law is not enough to overcome 28 U.S.C. § 1367(d) tolling, *see Jinks*, 538 U.S. 456, here there is

no state law provision for the court to even consider when weighing the impact of 28 U.S.C. §

1367(d). Pursuant to 28 U.S.C. § 1367(d), the three-year statute of limitations was tolled until

thirty days after class certification was denied, or until February 3, 2012. Since no time had run

on the statute at that point, the claims would be timely if filed before February 3, 2015.[6]

**B.      Plaintiffs Have Adequately Pled Claims Against the Burnett Defendants.**

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the formal sufficiency

of the statement of the claim for relief; the motion is not a procedure for resolving a contest

between the parties about the facts or the substantive merits of the plaintiff's case." *Coastal

Servs. Grp. LLC v. BP Co. N. Am., Inc*., No. 1:11-cv-425, 2013 WL 961600, at *2 (S.D. Miss.

Mar. 12, 2013) (quoting 5B Charles Alan Wright et al., *Federal Practice and Procedure* § 1356

(3d ed. 2004)). Although a court considering a motion to dismiss is "not bound to accept as true a

legal conclusion couched as a factual allegation," it must still "take all of the factual allegations

in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Post-*Iqbal* caselaw

confirms that courts considering such a motion must still "construe facts [in the Complaint] in

the light most favorable to [Plaintiffs], as a motion to dismiss under 12(b)(6) 'is viewed with

disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

Plaintiffs have pled claims against Burnett under the Trafficking Victims Protection

Reauthorization Act ("TVPRA") of 2003 (18 U.S.C. §§ 1589 and 1590), Fraudulent

Misrepresentation, Negligent Misrepresentation, and Breach of Contract. (Compl. ¶¶ 274–337).

---

[6] Section 1367(d) tolls the running of the statute, so statutory periods are calculated by considering the time remaining on the statute as of thirty days after dismissal. *See, e.g.*, *Saddler v. Quitman Cnty. Sch. Dist.*, CIV.A. 2:08CV181-P-A, 2009 WL 2497194 (N.D. Miss. Aug. 17, 2009) ("At the time Towner filed his counterclaim in the prior federal action, 309 days of the limitations period had yet to run. Counting 309 days from September 3, 2007 forward, the limitations period expired on July 7, 2008.").

Burnett selectively quotes from the Complaint and ignores well-pleaded factual allegations that must be taken as true at this stage in the litigation. Plaintiffs have adequately pled their claims.

1.   <u>**Plaintiffs Have Pled Claims under the TVPRA.**</u>

The TVPRA provides a cause of action against anyone who procures labor "by means of serious harm or threats of serious harm to that person or another person." 15 U.S.C. § 1589(b)(2). "Serious harm" is defined to mean "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  15 U.S.C. § 1589(c)(2). Section 1590 provides for a cause of action against "[w]hoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 15 U.S.C. § 1590.

Burnett alleges that the complaint contains no allegations that he "'provided or obtained' any labor of Plaintiffs." (Motion at 2). Plaintiffs have amply stated a claim, however, that Burnett issued "threats of serious harm" that compelled Plaintiffs to work and remain working for Signal.

Burnett promised Plaintiffs that if they paid him enormous sums of money, he would process applications for permanent residence in the United States and help them secure well-paying jobs here. (Compl. ¶ 45–48). Once Plaintiffs had paid their initial fees, Burnett informed them "that their 'labor certifications' had been approved by the U.S. Department of Labor, which triggered the second installment payment." (Compl. ¶ 49). As part of the scheme planned by Pol, Signal, Dewan, and Burnett, Burnett was one of the people who "needs to be with each and every candidate going into the consulates before their interview" to help deceive the United States government. (Compl. ¶ 60). Plaintiffs accrued enormous debts. These debts put Plaintiffs at risk

-11-

of serious financial harm if they backed out of the scheme because Burnett "refused to refund any fees for any reason." (Compl. ¶ 48). When Plaintiffs were reluctant to go forward, Burnett "threatened forfeiture of all money paid to that point." (Compl. ¶ 49).

Plaintiffs' TVPRA claims are simple: Burnett charged unreasonable fees as part of the recruitment scheme, and once these fees were paid he leveraged Plaintiffs' desperate financial condition to compel them to come work for Signal. Whether discovery will reveal that in fact Burnett merely "provided the necessary immigration services to allow Plaintiffs to legally enter the United States" is a factual question wholly inappropriate for consideration at the 12(b)(6) stage. (Motion at 12; *see also Turner*, 663 F.3d at 775).

The complaint further alleges that Burnett violated Section 1590, which creates a cause of action against anyone who "recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 15 U.S.C. § 1590.  The Complaint states that Burnett, along with Dewan, Pol, and Signal, was part of a scheme to recruit Plaintiffs through false promises that they would receive high-paying jobs and permanent residence in the United States. (Compl. ¶¶ 42–48). Burnett personally visited India to give a presentation on the scheme, and personally visited the labor camp in Mississippi once the workers were in the United States. (Compl.  ¶¶ 151, 108). Courts interpreting the TVPRA have held that plaintiffs state a claim under § 1589 and § 1590 when they claim that multiple parties participated in a scheme to coerce plaintiffs to travel to the United States and work, whether or not the defendant employed or merely recruited them. *Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd*., 790 F. Supp. 2d 1134, 1147 (C.D. Cal. 2011) ("Plaintiffs have sufficiently alleged that Defendants are involved in a fraudulent scheme involving forced labor, and with the international nature of this matter, Plaintiffs have also sufficiently alleged that Defendants recruited, transported, and

provided Plaintiffs for that forced labor. In particular, Plaintiffs clearly and repeatedly allege that Defendants recruited them to teach in Louisiana.").

This court has already noted that whether any particular plaintiff can succeed in proving that he was the victim of trafficking will turn upon the "causal connection between what the defendant did, what the victim did, *and why the victim did it*." David, 2012 U.S. Dist. LEXIS 114247, at *18 (emphasis in original). The question of "whether the physical or legal coercion or threats thereof could plausibly have compelled the victim to serve" is deeply factual in nature, and cannot be resolved by Burnett's casual denials of liability in a motion to dismiss. *United States v. Kozminski*, 487 U.S. 931, 952, (1988).

Burnett simply ignores the factual allegations that are pled against him personally. He recruited Plaintiffs in person in India by making false promises about work in Mississippi, charged enormous fees and then leveraged those fees against Plaintiffs to ensure that they would come to the United States and work, and participated in the scheme to threaten them with deportation if they complained or escaped. (Compl. ¶¶ 43–49, 126–130). Plaintiffs have pled a claim under the TVPRA.

### 2. The Burnett Defendants' Choice of Law Argument Is Not Applicable to a Motion to Dismiss.

Burnett does not dispute that Plaintiffs have adequately stated claims against him for fraudulent misrepresentation, negligent misrepresentation, and breach of contract. He claims only that because "all of the alleged conduct that is asserted as support of the state based causes of action occurred in India or the United Arab Emerites," any cause of action "would have to be under either Indian or Arabian law."[7] (Motion at 12). A motion to dismiss is not the proper procedural mechanism in which to make a choice-of-law argument.  Federal Rule of Civil

---

[7] The law of the United Arab Emirates is typically referred to as "Emirati law" or "U.A.E." law, not "Arabian" law. *See*, *e.g.*, U.A.E. Civil Code, Article 141 (covering breach of contract claims).

Procedure 44.1 states that parties "who intend[] to raise an issue about a foreign country's law" may "give notice by a pleading or other writing." Fed. R. Civ. P. 44.1 (emphasis added). The Fifth Circuit has held that "[w]hen the applicability of foreign law is not obvious, notice is sufficient if it allows the opposing party time to research the foreign rules." *Northrop Grumman Ship Sys. v. Ministry of Def.*, 575 F.3d 491, 497 (5th Cir. 2009). Should this court later conclude that Indian or Emirati law is applicable to the supplemental claims, Plaintiffs will comply with the federal rules and provide Burnett adequate notice to research applicable law.

In any event, Plaintiffs have adequately pled facts indicating that Mississippi state law applies. This court would apply Mississippi state choice-of-law rules, which Burnett does not even discuss, to any dispute over the choice of law in this matter. *See Snow v. WRS Grp., Inc.*, 73 Fed. App'x 2, 5-6 (5th Cir. 2003). Mississippi courts consider slightly different choice of law factors for tort and breach of contract claims, but Mississippi generally applies the substantive law of the jurisdiction with the strongest relationship to the issue being decided. *See Boardman v. United Servs. Auto. Ass'n.*, 470 So. 2d 1024, 1030-31 (Miss. 1985).

Mississippi has the strongest connection to this case because Mississippi is where Plaintiffs were lured to work, where they worked and suffered damages, and where Burnett misinformed them that he was working on their permanent residency applications.  The complaint states that Burnett "traveled to the man camp and, with Signal employee John Sanders present, told Plaintiffs and other Indian workers that Signal would provide each Indian worker, including Plaintiffs, with a green card." (Compl. ¶ 109). Burnett knew that this representation was false when he made it, and Plaintiffs relied on the representation and were damaged when it turned out to be false. (Compl. ¶¶ 131–143; 147–49). Burnett formed an attorney-client relationship with Plaintiffs by promising to process green card applications. (Compl. ¶ 135).

While all parties were in Mississippi and the attorney-client relationship remained in effect, Burnett failed to follow through on his promise, as had been his intent from the outset. (Compl. ¶ 131; *see also Thompson v. Erving's Hatcheries, Inc.*, 186 So. 2d 756, 757 (Miss. 1966) ("The law implies a promise on the part of attorneys, that they will execute the business entrusted to their professional management, with a reasonable degree of care, skill and despatch, and they are liable to an action, if guilty of a default in either of these duties, whereby their clients are injured.")).

Defendant's choice-of-law argument, therefore, in addition to being inappropriate to lodge in a motion to dismiss, is meritless. Plaintiffs have adequately pled the state law claims under Mississippi law.

## IV. <u>CONCLUSION</u>

The statutes of limitations in this matter were tolled by the Eastern District of Louisiana and did not begin to run until, at the earliest, May of 2012. Defendant's argument to the contrary asks this court to ignore prior rulings from within this district, and is unsupportable under either an *American Pipe* analysis or under Mississippi law. Under Defendants' view of the law, potential plaintiffs in a federal class action with pendent state law claims would need to file state court actions before class certification was decided, clogging the local courts and undermining the purposes of Rule 23. Defendant's Rule 12(b)(6) arguments are equally meritless: Plaintiffs have pled specific facts to support claims under the TVPRA and the pendent state law claims.

Plaintiffs therefore respectfully request that the Court deny the Burnett Defendants' motion.

Dated: November 13, 2013

Respectfully submitted,

*/s/ Stephen Raptis*
Robert Fabrikant, *pro hac vice* pending
Stephen T. Raptis, *pro hac vice* pending
Michael Bhargava, *pro hac vice* pending
Daniele J. Capasso, *pro hac vice* pending
Jeremy R. Lacks, *pro hac vice* pending
Andrew Case, *pro hac vice* pending
MANATT, PHELPS & PHILLIPS, LLP
700 12th Street, NW, Suite 1100
Washington, DC 20005
Telephone:  (202) 585-6500
Fax: (202) 585-6600
Email: rfabrikant@manatt.com
Email: sraptis@manatt.com
Email: mbhargava@manatt.com
Email: dcapasso@manatt.com
Email: jlacks@manatt.com
Email: acase@manatt.com

A. Gregory Grimsal
Steven W. Copley
GORDON ARATA MCCOLLAM
DUPLANTIS & EAGAN LLC
201 St. Charles Avenue
40th Floor
New Orleans, Louisiana  70170-4000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2013, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

*/s/ A. Gregory Grimsal_____*
A. Gregory Grimsal