## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.**<br>      **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **No. 08-1220** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>      **Defendants** | **SECTION "E"** |

**Related Cases:**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY<br>COMMISSION,**<br>      **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-557** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>      **Defendants** | **SECTION "E"** |

| | |
|---|---|
| **LAKSHMANAN PONNAYAN ACHARI, et al.,**<br>      **CIVIL ACTION**<br>      **Plaintiffs** | |
| **VERSUS** | **No. 13-6218**<br> **(c/w 13-6219, 13-6220,<br>13-6221, 14-732)** |
| **SIGNAL INTERNATIONAL, LLC, et al.,**<br>      **Defendants** | **SECTION "E"** |

**Applies To:** *Achari v. Signal* **(13-6218 c/w 13-6219, 13-6220, 13-6221)**

### ORDER  AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6)[1] and a Rule 12(c)

---

[1] R. Doc. 148. All documents cited in this order were filed in the master case, *Achari v. Signal* (13-6218).

Motion for Judgment on the Pleadings both filed by defendant Burnett,[2] as well as a Motion for Partial Dismissal under Rule 12(b)(6) filed by defendant Signal International, LLC ("Signal").[3] Plaintiffs oppose all of the motions.[4] Considering the briefs, the record, and the parties arguments at oral argument, the court rules as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are citizens of India who secured visas to work in the United States for Signal in the aftermath of Hurricane Katrina. Plaintiffs allege the Defendants recruited them to work as temporary workers at Signal's facilities in Pascagoula, Mississippi. Plaintiffs further allege Defendants forced them to pay recruitment fees, as well as immigration processing and travel expenses. Plaintiffs allege that throughout their recruitment, Defendants promised them permanent residency in the United States, however, Defendants never took any steps to assist Plaintiffs in applying for or obtaining green cards. As a result of Defendants' actions, Plaintiffs claim they were discriminated against and subjected to forced labor as welders, pipefitters, and marine fabrication workers for Signal. At Signal's facilities, Plaintiffs claim Signal forced the workers to live in deplorable conditions and used various tactics to compel the Plaintiffs to continuing working.

Plaintiffs originally were a part of a putative class action in *David v. Signal* (08-1220)(the "*David* case"). Plaintiffs are current members of the class of Indian workers on whose behalf the Equal Employment Opportunity Commission ("EEOC") brought suit in

---

[2]R. Doc. 228. The Court uses "Burnett" to collectively refer to the following defendants: Malvern C. Burnett, the Gulf Coast Immigration Law Center, LLC and the Law Offices of Malvern C. Burnett, APC.

[3]R. Doc. 150.

[4]R. Doc. 159, R. Doc. 160, R. Doc.161, R. Doc. 222, R. Doc. 223, and R. Doc. 238.

*EEOC v. Signal* (12-557)(the "*EEOC* case").[5] After the Court denied class certification in the *David* case, putative class members filed four separate actions in the Southern District of Mississippi.[6] On October 24, 2013, the four actions were consolidated and transferred to the Eastern District of Louisiana.[7] These four consolidated cases are collectively referred to herein as the *Achari* cases.

In of each the *Achari* cases, Plaintiffs allege Signal, Burnett, and Dewan[8] violated the Trafficking Victims Protection Act of 2003 ("TVPRA") and Signal violated the Civil Rights Act of 1866 (Section 1981).[9] Additionally, Plaintiffs in the *Krishnakutty* case include claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1962 *et seq*) and the Klu Klux Klan Act (42 U.S.C. § 1985) against Signal, Burnett, and Dewan.[10] Plaintiffs in the *Achari* cases also allege state law claims for fraudulent misrepresentation,

---

[5]The term "class" is used collectively to describe the aggrieved individuals who the EEOC represents and does not implicate Federal Rule of Civil Procedure 23.

[6]*Achari v. Signal* (13-6218) (47 former putative class members from the *David* case), *Chakkiyattil v. Signal* (13-6219) (28 former putative class members), *Krishnakutty v. Signal* (13-6220) (2 former putative class members), *Devassy v. Signal* (13-6221) (13 former putative class members).

[7]R. Doc. 47. A fifth case from the Southern District of Mississippi, *Singh v. Signal* (14-732) was transferred to the Eastern District of Louisiana on April 24, 2014 and consolidated with the *Achari* cases. R. Doc. 240. These motions were filed before the *Singh* case was transferred to this Court.

[8]The Court uses "Dewan" to collectively refer to the following defendants: Global Resources, Inc., Dewan Consultants, and Sachin Dewan.

[9]*See* R. Doc. 200 (the *Achari* complaint); R. Doc. 199 (the *Chakkiyattil* complaint); R. Doc. 201 (the *Krishnakutty* complaint); and R. Doc. 198 (the *Devassy* complaint). In addition to Signal, Burnett, and Dewan, plaintiffs in each case name other defendants. In the *Achari* case, plaintiffs also name Michael Pol as a defendant. In the *Chakkiyattil* case, plaintiffs name Billy Wilks, J&M Associates, Inc., and J&M Marine, Inc. as defendants. In the *Krishnakutty* case, plaintiffs name Indo-Amerisoft, LLC and Kurella Rao as defendants. In the *Devassy* case, plaintiffs name Kurella Rao, Indo-Amerisoft, LLC and Michael Pol as defendants.

[10]R. Doc. 201, pp. 46-58. The *Krishnakutty* plaintiffs also name Kurella Rao and Indo-Amerisoft as defendants in their claims under RICO and the Klu Klux Klan Act.

negligent misrepresentation, and breach of contract.[11] In addition, Plaintiffs in the *Krishnakutty* case seek relief for money had and received, and breach of fiduciary duty under Mississippi law.[12]

Signal and Burnett had filed motions to dismiss in the *Achari* cases before they were transferred from the Southern District of Mississippi and consolidated. Once the *Achari* cases were transferred, this Court ordered counsel for Signal and Burnett to re-file their motions to dismiss with a new submission date.[13] Both Signal and Burnett filed a Motion to Dismiss under Rule 12(b)(6).[14] The Plaintiffs in the *Achari* cases jointly filed oppositions to both motions.[15] Plaintiffs in the *Krishnakutty* case filed a separate opposition to Burnett's motion to specifically address the arguments made with respect to their claims.[16]

The Court thereafter ordered Plaintiffs in each case to file an amended complaint.[17] The Court also directed Signal and the Burnett Defendants to file supplemental memoranda clarifying their intention to reassert their motions to dismiss with respect to the amended

---

[11]Four complaints addressed in these motions (*Achari, Chakkiyattil, Krisnakutty,* and *Devassy*) bring state law claims under Mississippi law. The complaint in the recently transferred *Singh* case does not specify the law of which state its state law claims arise under.

[12]R. Doc. 201, pp. 65-70.

[13]R. Doc. 149.

[14]R. Doc. 148, R. Doc. 150.

[15]R. Doc. 159, R. Doc. 160.

[16]R. Doc. 161.

[17]R. Doc. 182. The Court instructed the plaintiffs to file amended and restated complaints specifically setting forth the defendants against which each cause of action is asserted, the specific damages sought under each cause of action, and the statute or other law on which the demand is based.

4

complaints.[18] Plaintiffs filed supplemental oppositions to Signal and Burnett's supplemental memoranda.[19] Burnett also filed a Rule 12(c) Motion for Judgment on the Pleadings,[20] which Plaintiffs opposed.[21] The Court will consider each motion in turn.

**STANDARD OF LAW**

The Rule 12(b)(6) motions to dismiss filed by Signal and Burnett and the Burnett's 12(c) Motion for Judgment on the Pleadings are all governed by the same legal standard. The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the Fifth Circuit explained in *Gonzales v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 128 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[18]R. Doc. 210.

[19]R. Doc. 222, R. Doc. 223.

[20]R. Doc. 228.

[21]R. Doc. 238.

5

> alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

The Court cannot look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the Plaintiffs' complaint, the Court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the Plaintiffs. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief." *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  A court may grant a motion for judgment on the pleadings when no genuine issues of material fact remain and the case can be decided as a matter of law.  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

## ANALYSIS

### A. Signal's Motion to Partially Dismiss for Failure to State a Claim[22]

Signal seeks dismissal of Plaintiffs' state law claims, claim for recruitment fees under 1981, and claim for recruitment fees under the Klu Klux Klan Act. With respect to Plaintiffs' state law claims, Signal argues those claims arise from the Plaintiffs' recruitment abroad to work in the United States, and under Mississippi law, Plaintiffs' claims are implausible.[23] Similarly, Signal argues Plaintiffs' claims for recruitment fees under Section 1981 and the

---

[22]R. Doc. 150.

[23]R. Doc. 150, p. 18.

Klu Klux Klan Act arise out of events occurring abroad and those statutes do not apply extraterritorially.[24]

### 1. State Law Claims

In each of the *Achari* cases, Plaintiffs claim that all Defendants promised to secure them permanent residency after their employment with Signal. Plaintiffs allege they paid exorbitant "recruitment fees" to the Defendants for processing immigration documents, yet Defendants failed to secure permanent residency for the Plaintiffs after their arrival in the United States. Plaintiffs also claim the Defendants misrepresented the nature of Plaintiff's employment and immigration opportunities in the United States. For the Defendants' alleged failure to fulfill their promises to secure permanent residency, Plaintiffs assert breach of contract claims under Mississippi law. For the Defendants' alleged false representations regarding Plaintiffs' opportunities for immigration and employment status, Plaintiffs assert fraudulent and negligent misrepresentation claims under Mississippi law. Signal argues the facts giving rise to Plaintiffs' state law claims involve Signal's alleged wrongdoing abroad. Signal believes the state law claims have a "foreign basis" because Plaintiffs' recruitment began in either India or the United Arab Emirates (UAE). Signal cites to Mississippi's choice-of-law rules to argue the state law claims are implausible because Mississippi law would not recognize claims arising from events occurring abroad. Additionally, the *Krishnakutty* Plaintiffs allege Defendants breached a fiduciary duty to Plaintiffs by failing to fulfill promises to obtain permanent residency or by misrepresenting Plaintiffs' ability to secure permanent residency. The basis of the *Krishnakutty* Plaintiffs'

---

[24]R. Doc. 150, p. 22.

claims for money had and received is identical.

The questions of which state's choice of law rules apply and which state's substantive law applies are questions of law for the Court.  These issues have not yet been decided and, as a result, Signal is not entitled to dismissal of the Plaintiffs' state law claims because it has not established that the facts as alleged, accepted as true, fail to state a claim to relief that is plausible on its face. The Court cannot reasonably infer the defendant is liable or not liable for the misconduct alleged unless it knows the applicable law.  Accordingly, Signal's motion to dismiss the Plaintiffs' state law claims is denied. Signal may refile its motion to dismiss the state law claims once these choice of law issues have been decided.[25]

### 2. Claims under Section 1981 and the Klu Klux Klan Act

Plaintiffs allege Signal unlawfully subjected the Plaintiffs to discriminatory terms and conditions of employment at Signal's facilities in Pascagoula, Mississippi based on race, ethnicity, religion and alienage. Plaintiffs assert Signal violated 42 U.S.C. § 1981, which prohibits discrimination in employment on the basis of race.[26] The *Krisnakutty* Plaintiffs include a claim under the Klu Klux Klan Act (42 U.S.C. § 1985), alleging Defendants conspired to deprive Plaintiffs of their Thirteenth Amendment rights to be free from forced labor and involuntary servitude. Signal moves to dismiss Plaintiffs' claims under Section

---

[25]Because this Court has federal question jurisdiction and is exercising supplemental jurisdiction over Plaintiffs' state law claims, the Court must apply the law in the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This includes the choice-of-law rules of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). When a case is transferred pursuant to 28 U.S.C. § 1404(a), courts apply the choice-of-law rules of the transferor state. *Ferens v. John Deere*, 494 U.S. 516, 525 (1990). However, whether the *Ferens* rule applies to cases transferred pursuant to the first-filed rule, such as this one, is unsettled. Accordingly, it is unclear which state's choice-of-law rules apply to this case, and it is unclear which state's substantive laws apply.

[26]Section 1981 refers to racial discrimination in the making an enforcement of contracts, but the statute has been read to provide a federal remedy against discrimination in employment on the basis of race. *See Adams v. McDougal*, 695 F.2d 104 (5th Cir. 1983).

1981 and the Klu Klux Klan Act insofar as those claims seek recovery of recruitment fees paid abroad. Signal asserts Plaintiffs' recruitment occurred abroad and neither Section 1981 nor the Klu Klux Klan Act apply extraterritorially.

Plaintiffs' amended complaints do not seek recovery of recruitment fees under Section 1981 or the Klu Klux Klan Act.[27] Plaintiffs' claims under Section 1981 are rooted in Signal's alleged discriminatory acts at Signal's facility in the United States. The *Krishnakutty* Plaintiffs' Klu Klux Klan Act claims relate to Signal's alleged conspiracy to deprive Plaintiffs' Thirteenth Amendment rights at Signal's Facilities in the United States. In contrast, in each of the Plaintiffs' claims under TVPA, the Plaintiffs explicitly pray for economic loss from recruitment fees paid to the Defendants.[28] Thus, because the Plaintiffs do not pray for recruitment fees under its Section 1981 or Klu Klux Klan Act claims, Signal's motion to dismiss those claims is moot.

---

[27]In the *Achari* case, Plaintiffs seek: "compensatory damages (including, without limitation, loss of wages, loss of opportunity, pain and suffering, mental and emotional distress, prejudgment interest, and additional economic loss from (1) medical expenses; (2) damages related to living and working conditions; and (3) mandatory housing and other fees paid to Signal), punitive damages, attorneys' fees in an amount to be proven at trial." *See* R. Doc. 200, p. 149. Plaintiffs in the *Krishnakutty* case seek: "lost and unpaid wages, lost opportunities, pain and suffering (including emotional distress and humiliation), out-of-pocket expenses, and other pecuniary losses including loss of property and/or business." *See* R. Doc. 201, p. 57. Plaintiffs in the *Chakkiyatil* case seek "[C]ompensatory damages [including] housing fees paid to Signal and other charges made by Signal, adverse terms and conditions of employment resulting from discrimination (including underpayment of wages), pain, suffering, medical costs and lost wages resulting from on-the-job physical injuries related to discriminatory working conditions, damages related to living and working conditions, and damages suffered due to mental and emotional distress, as well as opportunity costs, out-of-pocket costs, and other pecuniary losses." *See* R. Doc. 199, p. 116. Plaintiffs in the *Devassy* case seek damages including: "housing fees paid to Signal and other charges made by Signal, adverse terms and conditions of employment resulting from discrimination (including underpayment of wages), pain, suffering, medical costs and lost wages resulting from on-the-job physical injuries related to discriminatory working conditions, damages related to living and working conditions, and damages suffered due to mental and emotional distress, as well as opportunity costs, out-of-pocket costs, and other pecuniary damages." *See* R. Doc. 198, p. 72.

[28]For example, in the *Achari* case, Plaintiffs pray for "economic loss from recruitment and visa fees paid to Defendants." R. Doc. 200, p. 147. In the *Chakkiyatil* case, Plaintiffs pray for "compensatory and punitive damages ... including recruitment fees." R. Doc. 199, p. 114. In the *Devassy* case, Plaintiffs pray for "compensatory and punitive damages, including recruitment fees..." R. Doc. 198, p. 70.

Accordingly, for the above stated reasons, Signal's 12(b)(6) Motion to Partially Dismiss is **DENIED** as to the Plaintiffs' state law claims and **DENIED AS MOOT** as to claims for recruiting fees under Section 1981 and the Klu Klux Klan Act.

## B. Burnett's 12(b)(6) Motion[29]

Burnett moves to dismiss the entirety of Plaintiffs' complaints, arguing the complaints only allege "unsupported and unsupportable conclusions" as to all Defendants, and do not include factual material sufficient to survive a Rule 12(b)(6) motion. Burnett additionally asserts Plaintiffs have not pled the allegations of fraud with the specificity required under Rule 9. With respect to Plaintiffs' state law claims, Burnett argues the acts alleged to form the basis of those claims occurred in India and the United Arab Emirates and are thus implausible under Mississippi law. Finally, Burnett argues Plaintiffs' state law claims are barred by the passing of the statute of limitations.

### 1. Sufficiency of Factual Material Alleged

#### a. TVPA Claims

Burnett argues Plaintiffs' complaints lack factual allegations sufficient to state a claim under the TVPA. Burnett asserts Plaintiffs do not allege that Burnett ever forced Plaintiffs to work for Signal or ever threatened any Plaintiff with deportation if they refused to continue working for Signal. Burnett believes he provided legal and necessary immigration services to allow Plaintiffs to enter the United States.

Plaintiffs' complaints include two related claims under the TVPA: a claim for forced labor under 18 U.S.C. § 1589 ("Section 1589"), and a claim for trafficking under 18 U.S.C.

---

[29]R. Doc. 148.

§ 1590 ("Section 1590"). Under 18 U.S.C. § 1595 ("Section 1595"), an individual who is a victim of a violation under the TVPA may bring a civil action against anyone who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person know or should have known has engaged in an act in violation of [the TVPA]." 18 U.S.C. § 1595.

Plaintiffs seek relief under Section 1589, which prohibits anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint." 18 U.S.C. § 1589.

Plaintiffs allege Burnett placed advertisements and conducted seminars in Indian cities to recruit workers for Signal, promising "employment based green cards" and permanent residency in the United States.[30] Plaintiffs' claim Burnett promised them green cards in order to induce Plaintiffs to pay large fees to travel and work in the United States.[31] Plaintiffs allege Burnett never took any steps to apply for permanent residency for the Plaintiffs.[32] Based on their "need to repay the substantial debt and interest [they] incurred"

---

[30]*See, e.g.,* R. Doc. 200, pp. 21-22.

[31]*Id.* at p. 22.

[32]*Id.* at p. 23.

to pay Burnett's recruitment fees, Plaintiffs allege they felt "intimidated into acquiescence and compelled to continue working for Signal."[33] Plaintiffs allegations are sufficient to state a claim under Section 1589(a)(2) for using "serious harm" to provide or obtain Plaintiffs' labor.[34]

Under Section 1589(c)(2), "serious harm" includes financial harm "that is sufficiently serious ... to compel a reasonable person .. to perform or to continue performing labor services in order to avoid incurring that harm." Courts have found that threats of being in debt and being unable to repay those debts constitutes "serious harm" sufficient to survive a motion to dismiss. *See Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 790 F. Supp. 2d 1134 (C.D. Cal. 2011); *Panwar v. Access Therapies, Inc.*, 2013 WL 5486783 (S.D. Ind. Sept. 30, 2013). Because Plaintiffs have alleged Burnett induced them into incurring substantial debts and Plaintiffs felt compelled to continue working to repay those debts, Plaintiffs' complaints contain sufficient facts to state a claim under Section 1589(a)(2).

Plaintiffs also allege Burnett violated Section 1590 of the TVPA. Section 1590 provides a claim against any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter..." 18 U.S.C. § 1590. The violations of Section 1589 are included in the chapter for violations of Section 1590. Thus, because Plaintiffs have pled sufficient facts to state a claim under Section 1589, Plaintiffs have also pled sufficient facts to state a claim under Section 1590 against Burnett as a person who recruited Plaintiffs for labor in violation of Section 1589.

---

[33]*See, e.g.,* r. Doc. 200, p. 85.

[34]As Plaintiffs point out in their original opposition, their allegations are also likely sufficient to state a claim under Section 1589(a)(3) for using "abuse of the legal process" to provide Plaintiffs' labor.

*See Nunag-Tanedo*, 790 F. Supp. 2d at 1147 ("Plaintiffs have sufficiently alleged that Defendants are involved in a fraudulent scheme involving forced labor, and with the intentional nature of this matter Plaintiffs have also sufficiently alleged that Defendants recruited, transported, and provided Plaintiffs for that forced labor.").

In sum, Plaintiffs claims under the TVPA are sufficiently supported by factual allegations in each complaint. Burnett insists his actions were "consistent with what would happen in the ordinary course of events in representing non-immigrant workers recruited for work in the United States."[35] However, Burnett's disagreement over the version of the facts alleged in Plaintiffs' complaints is insufficient to support a motion to dismiss. The Court must accept all factual allegations in Plaintiffs' complaints as true, and Burnett has failed to show Plaintiffs' claims under the TVPA should be dismissed.

### b. State Law Claims

Burnett also argues Plaintiffs' complaint does not set forth sufficient factual allegations to support their state law claims for fraudulent misrepresentation, negligent misrepresentation, and breach of contract. Burnett asserts the facts alleged demonstrate a "fulfillment of Burnett's obligations to the Plaintiffs."

As explained above, the questions of which state's choice of law rules apply and which state's substantive laws apply have not yet been decided. As a result, Burnett is not entitled to dismissal of the Plaintiffs' state law claims because he has not established that the facts as alleged, accepted as true, fail to state a claim to relief that is plausible on its face. The Court does find that Plaintiffs have satisfied Rule 9(b)'s requirement of pleading fraud

---

[35]R. Doc. 148, p. 6.

with particularity. Accordingly, Burnett's motion to dismiss the Plaintiffs' state law claims is denied. Burnett may refile his motion to dismiss the state law claims, to the extent that it is not based on Rule 9(b), once choice of law issues have been decided.

### 2. Extraterritoriality

Burnett moves to dismiss Plaintiffs' state law claims by briefly putting forth the same argument as Signal. That is, because a portion of the facts giving rise to Plaintiffs' state law claims occurred abroad, Burnett argues those claims should be brought under the laws of India or the UAE. Burnett asserts Plaintiffs' complaint does not show a remedy exists under Indian law, thus Plaintiffs' state law claims should be dismissed.

As explained above, the questions of which state's choice of law rules apply and which state's substantive laws apply have not yet been decided. As a result, Burnett is not entitled to dismissal of the Plaintiffs' state law claims because he has not established that the facts as alleged, accepted as true, fail to state a claim to relief that is plausible on its face. Accordingly, Burnett's motion to dismiss the Plaintiffs' state law claims is denied. Burnett may refile his motion to dismiss the state law claims once choice of law issues have been decided.

### 3. Statute of Limitations

Lastly, Burnett seeks dismissal of Plaintiffs' state law claims for fraud, negligent misrepresentation and breach of contract asserting the statute of limitations under Mississippi law ran by March 8, 2011.[36]

As explained above, the questions of which state's choice of law rules apply and

---

[36]R. Doc. 148-1, p. 7.

14

which state's substantive laws apply have not yet been decided. As a result, Burnett is not entitled to dismissal of the Plaintiffs' state law claims because he has not established that the facts as alleged, accepted as true, fail to state a claim to relief that is plausible on its face. Accordingly, Burnett's motion to dismiss the Plaintiffs' state law claims is denied. Burnett may refile his motion to dismiss the state law claims once choice of law issues have been decided.

## C. Burnett's 12(c) Motion[37]

Burnett filed a Rule 12(c) Motion for Judgment on the Pleadings in *Achari v. Signal* (13-6218) seeking to dismiss Plaintiffs' claims based on the same grounds as his Rule 12(b)(6) Motion to Dismiss. For the reasons discussed above, Burnett has not carried his burden of showing dismissal is warranted. Accordingly, Burnett's 12(c) Motion for Judgment on the Pleadings is **DENIED**.

## CONCLUSION

For the above-stated reasons, **IT IS ORDERED** that Signal's 12(b)(6) Motion for Partial Dismissal be and hereby is **DENIED** as to the Plaintiffs' state law claims and **DENIED AS MOOT** as to claims for recruiting fees under Section 1981 and the Klu Klux Klan Act.

**IT IS FURTHER ORDERED** that Burnett's Rule 12(b)(6) Motion for Partial Dismissal be and hereby is **DENIED.**

**IT IS FURTHER ORDERED** that Burnett's Rule 12(c) Motion for Partial Judgment on the Pleadings be and hereby is **DENIED.**

---

[37]R. Doc. 228.

New Orleans, Louisiana, this 13th day of August, 2014.

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**