UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.** | **CIVIL ACTION** |
|     **Plaintiffs** | No. 08-1220 |
| | SECTION "E" |
| **VERSUS** | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     **Defendants** | |

*Related Cases:*

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | **CIVIL ACTION** |
| **COMMISSION,** | No. 12-557 |
|     **Plaintiff** | SECTION "E |
| **VERSUS** | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     **Defendants** | |

| | |
|---|---|
| **LAKSHMANAN PONNAYAN ACHARI, et al.,** | **CIVIL ACTION** |
|     **Plaintiffs** | No. 13-6218 (c/w 13-6219, |
| **VERSUS** | 13-6220, & 13-6221 & 14-732) |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | SECTION "E" |
|     **Defendants** | |

**Applies To:** *David v. Signal* **(08-1220);**
               *Achari v. Signal* **(13-6218 c/w 13-6219, 13-6220, 13-6221, 14-732)**

### REPLY MEMORANDUM SUPPORTING MOTION OF SIGNAL FOR PARTIAL SUMMARY JUDGMENT CONCERNING CHOICE-OF-LAW

**MAY IT PLEASE THE COURT:**

**I.     INTRODUCTION**

    In accordance with LR 7.7, and with the consent of opposing counsel, Signal submits this Reply Brief relative to Doc. #1762. Doc. #1762 is Signal's motion for partial summary judgment concerning choice of law.

In the interest of brevity and because the Court would want it, Signal files one Reply Brief to rebut three oppositions to Doc. #1762: (1) Doc. #347, the Opposition of the *Achari* consolidation; (2) Doc. #348, the supplemental opposition of the *Krishnakutty* plaintiffs; and (3) Doc. #1773, the cross-motion for partial summary judgment relative to choice of law of the *David* plaintiffs and hence their opposition to Doc. #1762, one resurrected by Court Order bearing Doc. #1779.

## I.    *ACHARI* CONSOLIDATION NOT RIPE FOR CHOICE OF LAW

The opposition briefs submitted by the consolidation, #347 and #348, make it abundantly clear that they invoke Mississippi law for their common law claims. They do this in spite of the fact that aside from contract, the *David* plaintiffs expressly invoke Indian law for the same theories of recovery, theories based, as this Court noted in its class certification decision, on "some common characteristics." ***David v. Signal Int'l, L.L.C.***, 2012 U.S. Dist. LEXIS 114247, *77 (E.D.La. Jan. 12, 2012).[1]

Since the consolidated plaintiffs petition the Court to adopt Mississippi law right now, rebuttal from Signal is justified. In Doc. #1762, on ripeness grounds, Signal said it objected to what the *Achari* consolidation ask this Court to do. This document expands on Doc. #1762 on this issue.

First, as Doc. #1762 mentioned, it is anomalous for individuals who worked next to each other to prosecute identical theories of recovery based on common facts to the same venire on the basis of divergent legal regimes. ***See*** footnote 1, ***supra***. ***See also Kerotest***, ***infra***, at 183-184

---

[1] *See also*, *e.g.*, *id*., at *89-*90 ("***Plaintiffs contend*** that a jury could validly infer ***from the identical contracts that they signed and the exorbitant fees that they paid*** that the plaintiff class relied on Defendants' fraudulent representations regarding green cards. Without the promise of a green card no plaintiff would have paid the exorbitant fees that they paid to participate in the program and work at Signal.") (emphasis added).

2

(question of importance to conduct of multiple litigation in federal judicial system evokes desire for "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," matters that "do[] not counsel rigid mechanical solution of such problems. The factors relevant to wise administration . . . are equitable in nature."); *West Gulf Maritime Assn. v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast District of the ILA: AFL-CIO*, 751 F.2d 721, 729 (5th Cir. 1985) (noting that first-filed rule is rule that "manifestly" exists partly to avoid "piecemeal resolution of issues that call for a uniform result.").

The thrust of the opposition of the Plaintiffs is that they invite this unflattering and difficult to explain anomaly. Instead, the Court should shun it. *Id*. It should shun such an outcome on the ground that the resulting picture is inconsistent with "wise judicial administration." *Id*.

Second, Signal's original memorandum quotes *Catrett's* reference to the principle that summary judgment is not in order prior to adequate time for discovery.[2] Doc. #208, the Court's consolidation Scheduling Order, demonstrates that the time to complete discovery in the consolidation has not expired. In this instance, the way to construe *Catrett's* "adequate time for discovery" test is to construe it by reference to Doc. #208. From this conjunction, the apt inference is that the consolidation is not ripe for the choice of law decision.

Third, as evidenced by Signal's pending motion to certify the recent protective order in the *Achari* consolidation for interlocutory appeal, Signal is hoping to definitively resolve the permissible scope of discovery question within the schedule of Doc. #208 for reasons Rule 1

---

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (summary judgment authorized "after adequate time for discovery . . .").

3

endorses, namely, justice, speed, and economy.[3] This feature underscores the reasons for concluding that the consolidation is not ripe for the choice of law determination.

Fourth, it is undisputed that there has been no deposition discovery in the consolidation. Pragmatism thus supports Signal's perspective on the ripeness question, for as the Supreme Court quipped in ***Buckley v. Valeo***, "' . . . ripeness is peculiarly a question of timing' . . ." ***Buckley v. Valeo***, 424 U.S. 1, 114, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976) ("In *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974), we stated that 'ripeness is peculiarly a question of timing,' . . ."). Pragmatically, the better course is to let the discovery in the consolidation run its course before deciding the governing law question because that will mean that the Court has more access to the facts relevant to the governing law selection when the selection is eventually made.

Fifth, for related reasons, Signal urges the Court not to reach the choice of law question precipitously in the consolidation. The reason not to is because such a decision will likely have a more advisory quality. This is true because of the likelihood that the Court will feel free, in the summer of 2015, to make a current decision concerning governing law if the Court is convinced in retrospect, on further reflection, that an earlier decision on governing law was clearly wrong.

In summary, in the consolidation, the choice of law decision is unnecessary. As a rule, federal courts are uncomfortable with unnecessary decisions. ***See Buckley***, *supra*. The issue will be more ripe in the consolidation in a few months. ***See Blab T.V., Inc. v. Comcast Cable Communs., Inc.***, 182 F.3d 851, 859 (11th Cir. 1999) (" To this end, we also have taken great care to avoid legal questions and arguments raised by the parties that are unnecessary . . .").

---

[3] *Cf*. *Cazorla v. Koch Foods of Miss, LLC*, No. 10-135, Doc. #483, p. 13 (S.D.Miss. Sept. 22, 2014) (Jordan, J.) ("In sum, the [U visa] information Koch Foods seeks in discovery is directly relevant to Plaintiffs' motives in this case.").

## II.     SIGNAL IS RIGHT ABOUT *FERENS*

In *West Gulf*, *supra*, at 729, the Fifth Circuit observed, citing cases:[4] "To avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." (Citations and footnote omitted). This, of course, the first-filed rule, which authorizes transfer from one court to another under appropriate, "substantial overlap" circumstances. *See id*., at 729 n. 1 ("In addition to outright dismissal, it sometimes may be appropriate [when the rule applies] to transfer the action . . ."); *id*., at 730 ("'Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the court in Texas to resolve the question of whether both should be allowed to proceed. By virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving the subject matter in Texas, the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York.'") (citation omitted)..

Incredibly, the *Achari* consolidation's opposition to Doc. #1762 contends that this Court must treat the transfer of the *Achari* consolidation effected by Judge Guirola as one that occurred, *as a matter of law*, under § 1404(a), even though Judge Guirola invoked the first-filed

---

[4] *See also Achari v. Signal Int'l, LLC*, 2013 U.S. Dist. LEXIS 150233, *17 (S.D.Miss. Oct. 18, 2013) ("[T]he first-to-file rule 'not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.' *Street v. Smith*, 456 F. Supp. 2d 761, 768 (S.D. Miss. 2006) For these reasons, the Court finds that transfer to the United States District Court for the Eastern District of Louisiana is appropriate."); ***Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*** 342 U.S. 180, 183-84, 72 S. Ct. 219, 96 L. Ed. 200 (1952) ("Inasmuch as a question of importance to the conduct of multiple litigation in the federal judicial system was involved, we granted certiorari. . . . Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of [multiple litigation in the federal judicial system] problems. The factors relevant to wise administration . . . are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.") (footnotes omitted); *Int'l Fidelity Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671 (5th Cir. 2011); ***The Cadle Co. v. Whataburger of Alice, Inc.***, 174 F.3d 599 (5th Cir. 1999); ***Sutter Corp. v. P & P Industries, Inc.***, 125 F.3d 914, 920 (5th Cir. 1997).

rule alone to transfer the litigation to this Court. *See* footnote 4, *supra*; *Achari* Opposition (Doc. #347), at 5 ("As shown below, the only statutory basis for transfer was under 28 U.S.C. § 1404(a)."); *id*., at 9 ("As a matter of law, the transfer in this case was pursuant to § 1404(a).").

Signal will not trouble the Court with an extended discussion of so frivolous, and transparent, an argument.[5] The transparency of this aspect of the opposition reason concerns the intent to persuade this Court that *Ferens* applies because the transfer was accomplished on the basis of § 1404(a) notwithstanding the explicit language of the *Achari* decision -- or the copious literature in this Circuit concerning the contours and the effect of the first-filed rule. *See* footnote 4, *supra*.

Signal believes that this Court will see through this transparent argument and conclude, ultimately, that Signal's interpretation of *Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas*, -- U.S. --, 134 S. Ct. 568, 582-83, 187 L. Ed. 2d 487 (2013), relative to the first-filed rule, was appropriate. And since *Ferens* does not apply, Doc. #347 is reasoned incorrectly, and can therefore be disregarded.

### III.      AGAIN, KRISHNAKUTTY IS NOT RIPE FOR CHOICE OF LAW

Signal returns to the one action in the *Achari* consolidation that draws attention to itself as an outlier with regard to claims that the *Krishnakutty* plaintiffs state are equitable in character: money had and received and breach of special/confidential relationship. *See* Doc. #348, pp. 2-3

---

[5] *Cf*. *Veryfine Prods., Inc. v. Phlo Corp*., 124 F. Supp. 2d 16, 21 (D. Mass. 2000) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."). A computer-based examination of the corresponding database fails to reveal evidence that the Fifth Circuit has ever, in its first-filed literature, used the phrase, "a choice-of-venue decision." Section 1404(a), moreover, by virtue of its explicit terminology, famously only applies to transferee courts that could also have been proper initially as to venue. In contrast, it is settled that the first-filed rule applies regardless of the transferee court's status as a valid, initial, venue choice. The first-filed rule transcends venue, unless venue is, for some unusual reason, mandatory, which in this case, it is not. *See Sutter Corp. v. P & P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). The point is that these are distinct doctrines, notwithstanding the *Achari* consolidation's contrary argument.

(noting that under Mississippi law claims sound "in equity" except that breach of fiduciary duty theory sounds in tort).

Claims sounding in equity are especially poor candidates, contends Signal, for a precipitous governing law determination. Furthermore, since Signal's analysis of the status of *Ferens* is correct, the *Krishnakutty* opposition (Doc. #348) is based on an erroneous, choice of law analysis. Doc. #348 is based on the Restatement, as a Mississippi-based argument would tend to be. *See* Doc. #348, at p. 3 n. 2 and corresponding text. Therefore, Doc. #348 can be disregarded.

Doc. #348 ridicules Signal for mentioning the fact that the relationship between Signal and the *Krishnakutty* plaintiffs "germinated" in India, insisting that this fact is of little consequence. Whether it is or is not under the Restatement interests Signal little, considering the inapplicability of *Ferens*.

The fact that all of these claims were born in India is demonstrably significant under article 3515 of the Louisiana Civil Code, which is the rule of decision in this case for the two claims sounding in equity. No article in Book IV of the Civil Code addresses equitable claims specifically. Therefore, the article applicable to equitable claims is article 3515, which reads:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*See* La. C.C. art. 3515 (West Pamph. 2013).

Official Comment (a) explains, "This Article applies only to cases that fall within the scope of this Book and that are not 'otherwise provided [for] in this Book.' Thus, this is the residual article. If any other article in this Book is found to be applicable to a particular case or issue, that article prevails." *See id*., at Official Comment (a). *See also Bartels de Nunez v. Bartels*, 97-1384 (La.App. 1st Cir. 9/9/98), 727 So. 2d 463 (emphasizing that La. Civ. Code art. 3515 sets forth overarching principle that courts should apply law of state whose policies would be most seriously impaired if its law were not applied to that issue and serves as residual rule when more specific rules are not provided).

The applicability of article 3515 is deeply significant relative to Signal's "germination" point. This is so because the requisite analysis is staggeringly case-specific. Official Comment (c) explains:

> The second paragraph of this Article prescribes the process or method for achieving the objective enunciated in the first paragraph. The process will begin by identifying, through the resources of statutory interpretation, the various state policies that might be implicated in the conflict. This should include not only the policies embodied in the particular rules of law claimed to be applicable, but also the more general policies, domestic *as well as multistate*, of each involved state that might be pertinent to the particular issue. The 'involved states' include *ex hypothesi* the forum state, *as well as any other state having pertinent contacts with the parties or the dispute*. The *next* step of the process is to evaluate the 'strength and pertinence' of these policies in light of 'the relationship of each state to the parties and the dispute,' and in light of 'the policies and needs of the interstate and international systems.' What is to be evaluated is not the wisdom or goodness of a state policy, either in the abstract or vis-a-vis the policy of another state, but rather the 'strength and pertinence' of this policy in space. . . . The evaluation of state policies is to be conducted in light of 'the relationship of each state to the parties and the dispute.' The relationship with the parties may consist of anything from the formal bond of citizenship or domicile, past or present, to habitual or mere residence. The relationship to the dispute may consist of *any* factual or legal connection to the events or the

8

> transaction giving rise to the dispute or to its subject matter. Finally, the evaluation of state policies is also to be conducted 'in the light of . . . the . . . needs of the interstate and international systems.' . . . .. . . '[U]pholding the justified expectations of parties' is a self-explanatory policy that is imbedded in the internal law of all states, but it is also an important multistate policy. It is in this latter sense that it is invoked here. . . .

*See id*., at Official Comment (c) (emphasis added).

It would therefore be unfair – precipitous -- to resolve the choice of law question concerning the equitable claims of the plaintiffs, governed by article 3515, before the depositions of the *Krishnakutty* claimants and related discovery. Only such mechanisms fully enable Signal to investigate the questions highlighted by the comments to Article 3515.

Therefore, the Court should put off deciding the law applicable to the equitable claims of the *Krishnakutty* plaintiffs – or any of the claims – until the issues are more ripe. It is undisputed that as of the date of this brief, no plaintiff in the *Achari* consolidation has been deposed. And Signal can table discussion of the tort claim because the prematurity of the equitable claims is so patent.

### IV.    *DAVID*

Signal has provided a lengthy response to the cross-motion for partial summary judgment of the *David* plaintiffs concerning choice of law. *See* Doc. #1768. There is no need to belabor that response. Here, the only thing Signal wants to note is that Doc. #1768 contains a fairly significant discussion of the reasons why Professor Symeonides' commentary is persuasive on behalf of the Louisiana State Law Institute regarding Book IV of the Louisiana Civil Code. *See*, *e.g*., Doc. #1768, p. 2 n. 2 and accompanying text. This Court implicitly indicated its agreement with this opinion in ***Babin***, ***supra***. ***Id***.

Respectfully submitted this 24th day of September, 2014.

                       */s/ Erin Casey Hangartner*
                       Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com

          and

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA 70185
Telephone: (504) 218-5887
Facsimile: (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

***Counsel for Signal International, L.L.C.,***
***Signal International, Inc.,***
***Signal International Texas, G.P.***
***Signal International Texas, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*
ERIN CASEY HANGARTNER