UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KURIAN DAVID, et al.** | **CIVIL ACTION** |
|     Plaintiffs | No. 08-1220 |
| | SECTION "E" |
| VERSUS | |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     Defendants | |

*Related Cases:*

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | **CIVIL ACTION** |
|     Plaintiff | No. 12-557 |
| VERSUS | SECTION "E |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | |
|     Defendants | |

| | |
|---|---|
| **LAKSHMANAN PONNAYAN ACHARI, et al.,** | **CIVIL ACTION** |
|     Plaintiffs | No. 13-6218 (c/w 13-6219, |
| VERSUS | 13-6220, 13-6221, 14-732, |
| **SIGNAL INTERNATIONAL, LLC, et al.,** | and 14-1818) |
|     Defendants | SECTION "E" |

**APPLIES TO:**    FULL *ACHARI* CONSOLIDATION
                   (No. 13-6218 (c/w 13-6219, 13-6220, 13-6221 & 14-732)

---

**SIGNAL'S SUPPLEMENTAL BRIEF
CONCERNING CHOICE-OF-LAW**

**MAY IT PLEASE THE COURT:**

**I.    INTRODUCTION**

The Court ordered Signal and the consolidated *Achari* plaintiffs to file supplemental memoranda concerning, with regard to pendent state law claims, choice of law.

## II. ARGUMENT

### a. The *Ferens* issue

Contrary to Plaintiffs' argument, these cases were transferred to this Court on the basis, and solely on the basis, of the first-filed rule.[1] Signal therefore revisits whether ***Ferens v. John Deere Co.***, 494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) applies to these transfers because the Court has not yet ruled on this issue and may yet find this discussion constructive.

It is indisputable that ***Ferens*** is the first principle.

To support their contention that ***Ferens*** mandates the application of Mississippi choice-of-law rules, Plaintiffs postulate that ***Ferens*** applies because notwithstanding Judge Guirola's opinions to the contrary, "[a]s a matter of law, the transfer in this case was pursuant to § 1404(a). It is the only provision of Title 28 of the United States Code that allows for transfer for reasons of judicial convenience and economy."[2]

Plaintiffs make this transparent argument to persuade this Court that these cases are precisely the sorts of cases governed by ***Ferens***, namely, cases transferred from one District to another on the basis of § 1404(a). ***Ferens*** concerned § 1404(a). This argument has not merit.[3]

---

[1] ***See Achari v. Signal Int'l, LLC***, 2013 U.S. Dist. LEXIS 150233, *12 (S.D.Miss. Oct. 18, 2013) (Guirola, Jr., J.) (transferring four (4) consolidated cases to this Court on basis of first-filed rule) ("The 'first to file' rule permits a district court to decline jurisdiction over an action when it involves the same parties and issues as a previously-filed action in another court. When related cases are pending before two federal courts, the court in which the case was last filed may dismiss ***or transfer*** the case if it involves substantially similar issues which can be resolved in the earlier-filed action. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) and *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).") (emphasis added); ***Singh v. Signal Int'l, LLC***, No. 14-357, Doc. No. 22 (S.D.Miss. Feb. 29, 2012) (transfer order on same basis).

[2] *See* Plaintiffs' Memorandum in Opposition to Signal's Motion for Partial Summary Judgment On the Issue of What Substantive Law Applies to Plaintiffs' Common Law Claims (Doc. #347), at pp. 9-10

[3] To support their extraordinary argument that this Court ***must*** deem the transfers from Mississippi, transfers executed under § 1404(a), Plaintiffs cite no Fifth Circuit case.

No Fifth Circuit case supports the argument. Plaintiffs do not pretend otherwise. Many Fifth Circuit cases contradict the argument, as Signal will momentarily show.

To prove that Judge Guirola's transfer was something other than what it appeared to be, Plaintiffs have to travel to the Third Circuit, to Delaware, and *Freedom Mortgage Co. v. Irwin Financial Corp*., C.A. No. 08-146 GMS, 2009 WL 763899, at **5-7, 2009 U.S. Dist. LEXIS 24208 (D. Del. Mar. 23, 2009), to prove it.

But unsurprisingly, *Freedom Mortgage* does not say what it is claimed to say. In their brief, Plaintiffs contend that *Freedom Mortgage* "*expressly* stated that transfer pursuant to the first-filed rule *is* pursuant to § 1404(a). *Freedom Mortgage Co. v. Irwin Financial Corp*., C.A. No. 08-146 GMS, 2009 WL 763899, at **5-7 (D. Del. Mar. 23, 2009)." *See* Plaintiffs' Brief (Doc. #347), dated 9/16/14, at p. 9 (emphasis Signal's). This statement is false and strangely so, for at a different point in Doc. #347, Plaintiffs quote Judge Sleet correctly. What the Court said was, "[t]his Court has held that transfer under 28 U.S.C. § 1404(a) is appropriate where the 'first-filed' rule applies." *See Freedom Mortgage*, *supra*, 2009 U.S. Dist. LEXIS 24208, at *14 (citation omitted). *See also* Doc. #347, at p. 9. This is very different from saying that every transfer under the first-filed rule is intrinsically one under § 1404(a).

### a.i    The First-Filed Rule Focuses on Comity Interests

The answer to the contention that Judge Guirola predicated his transfers on § 1404(a) whether he realized it or not because § 1404(a) is the only authority federal law provides for transferring cases between Districts "for reasons of judicial convenience and economy" has two parts.

The initial part has to do with the fact that the first-filed rule is grounded in equity, not § 1404(a). *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183-84, 72 S.

Ct. 219, 96 L. Ed. 200 (1952).[4] Second, for decades, Fifth Circuit cases have recognized that Judges in this Circuit have, under the first-filed rule, the power to transfer.

Plaintiffs contend that this transfer was effected "for reasons of judicial convenience and economy." That is a blatant and unforgivable misrepresentation of the record. The record reveals that Judge Guirola stated that he was transferring the cases for the reasons enunciated by the first-filed rule, which are not "reasons of judicial convenience and economy," but rather reasons rooted in principles of sound judicial administration, which focus on questions of substantial overlap between cases pending in different federal courts, implicating a need to concentrate on principles of comity.

In *Sutter Corp. v. P & P Indus., Inc*., 125 F.3d 914, 917 (5th Cir. 1997), the Fifth Circuit termed "the so-called 'first -to-file' rule . . . a by-product of the well-established axiom that: 'the federal courts have long recognized *that the principle of comity requires* federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs.'"[5] (Citation omitted). *See also The Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999) (no reference to § 1404(a) (emphasis added).[6]

---

[4] "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here *are equitable in nature*." (Emphasis added).

[5] *See also id*., at 920 ("'[T]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.' Therefore, the 'first to file rule' *not only determines* which court may decide the merits of substantially similar cases, *but also establishes which court may decide whether the second suit filed* must be dismissed, stayed *or transferred* and consolidated.") (Emphasis added).

[6] "**B. Transfer or Dismiss?** Cadle argues in the alternative that *the district court should have transferred the case back to the Laredo division rather than dismiss it entirely*. *We agree*. 'The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.' *Sutter Corp*., 125 F.3d at 920. As noted above, 'the Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.' *Save Power*, 121 F.3d at 948. Thus, once the district court found that the issues might substantially overlap, *the proper course of action was for the court to transfer the case* to the Laredo court to determine which

4


Thus, in *Achari*, after summarizing the interests, factors and standards that undergird the rule, including the core test, namely, whether the successive actions overlap substantially, Judge Guirola stated: "In regard to the question of substantial overlap of parties and issues, the Court finds that both exist here. . . . There is such substantial overlap that the Mississippi cases should be transferred to the Eastern District of Louisiana for consideration of the issues. . . . For these reasons, the Court finds that transfer to the United States District Court for the Eastern District of Louisiana is appropriate." *See Achari*, *supra*, at *14-*17.

It mischaracterizes what Judge Guirola said to portray these as transfers effected for reasons of judicial convenience and economy. His opinions provide no basis for such a representation. Those terms do not even appear in the portion of the *Achari* opinion touching the first-filed rule and transfer.

While virtually every case on the subject alludes to the fact, as *Achari* did, *see Achari*, *supra*, at *12, that the rule is "'concern[ed,] manifestly . . . to avoid the waste of duplication,'" which is concededly an "economy" interest," it is stressed as well that the rule is intended "to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.' *W. Gulf Mar. Ass'n*, 751 F.2d at 728." *Id*.

The first-filed rule is thus demonstrably not a rule driven by "convenience." The focus of the rule is comity, i.e., the desire to avoid "trench[ing] upon the authority of sister courts." *Id*. In short, it is disingenuous of the Plaintiffs to portray this as a transfer furtively accomplished under § 1404(a).

---

case should, in the interests of sound judicial administration and judicial economy, proceed. The district court erred by dismissing the suit." (Emphasis added).

### a.ii     *The First-Filed Rule Originates in Principles of Equity*

Furthermore, **Kerotest** famously stated that the first-filed rule power is equitable in nature. **Kerotest Mfg.**, *supra*, at 183-84. To the degree Plaintiffs contend only § 1404(a) authorizes transfer for reasons other than venue reasons, the contention is meritless. **Kerotest** emphasizes that the first-filed rule is concerned with "wise judicial administration." To implement that interest, federal courts in this Circuit have the power to exercise options, one of which is transfer.

### a.iii     *The Fifth Circuit Identifies Transfer as First-Filed Rule Remedy*

*West Gulf Maritime Assn. v. ILA Deep Sea Local 24, South Atlantic and Gulf Coast District of the ILA: AFL-CIO*, 751 F.2d 721, 729 n. 1 (5th Cir. 1985) said so: "In addition to outright dismissal," the Court said, "it sometimes may be appropriate *to transfer* the action or to stay it.") *Id*. (emphasis added). *West Gulf* did not refer to § 1404(a). In many subsequent opinions, the Fifth Circuit has observed that for a Court hearing a motion under the first-filed rule, transfer is an option. **Sutter**, *supra*, and **Cadle**, *supra*.

The Fifth Circuit has consistently located its authority to utilize the first-to-file rule, not in interests animating § 1404(a) textually but rather the powers of the federal courts as such -- without mentioning **Kerotest** explicitly.

As stated before, **Sutter Corp.**, *supra*, at 920, emphasizes: "'[T]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.' Therefore, the 'first to file rule' *not only determines* which court may decide the merits of substantially similar cases, *but also establishes which court may decide whether the*

*second suit filed* must be dismissed, stayed *or transferred* and consolidated.") (Emphasis added). *See also The Cadle Co.*, *supra*, at 606.[7]

Neither one of these opinions even cites § 1404(a). In short, the contention that § 1404(a) is the sole source of the transfer power is flatly contradicted by the Fifth Circuit's *jurisprudence constante* on the first-filed rule.

### a.iv    Atlantic Marine is Highly Instructive

Next, as Signal demonstrated in Doc. #1762-1, ***Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas***, -- U.S. --, 134 S. Ct. 568, 582-83, 187 L. Ed. 2d 487 (2013), which distinguished *Ferens*, is deeply instructive.

*Atlantic Marine* supports Signal's view that the first-filed rule is materially different from § 1404(a) and commands, therefore, a different outcome.[8] Signal concedes, of course, that *Atlantic Marine* did not consider the precise question that confronts this Court now, but it is nonetheless the case that *Atlantic Marine* reasoned in a manner that persuasively suggests that *Ferens* does not apply.

---

[7] "Cadle argues in the alternative that *the district court should have transferred the case back to the Laredo division rather than dismiss it entirely*. *We agree*. 'The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.' *Sutter Corp.*, 125 F.3d at 920. As noted above, 'the Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.' *Save Power*, 121 F.3d at 948. Thus, once the district court found that the issues might substantially overlap, *the proper course of action was for the court to transfer the case* to the Laredo court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed. The district court erred by dismissing the suit." (Emphasis added).

[8] *See also Republic Business Credit, LLC v. Greystone & Co., Inc.*, 2014 U.S. Dist. LEXIS 80190, * (E.D.La. June 12, 2014) (Berrigan, J.) (*quoting Atlantic Marine*) ("Finally, 'when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules,' which may 'affect *public-interest considerations*.'") (emphasis added).

7

It is important that a transfer under the first-filed rule is a product of concerns linked to the administration of justice in the federal courts rather than party interests. *See Kerotest*, *supra*; *West Gulf*, *supra*.

Indeed, the first-filed rule supposes, by definition, that the litigation in the second court rightly belonged in a first court because the first court acquired jurisdiction over the common subject-matter prior to the second one.[9] It is therefore sensible for the transferee court to take possession of the action and likewise apply the forum's choice-of-law rules. This is true because the first-filed rule presumes that the second action belonged in the first court as a matter of wise judicial administration, as *Kerotest* states explicitly. *See Kerotest, supra*, at 183-84.[10]

For these reasons, this Court should apply Book IV of the Louisiana Civil Code to the present controversy.

### b. *If Mississippi Choice-of-Law Rules Apply Under* Ferens

Should the Court conclude, however, that *Ferens* is applicable to the *Achari* consolidation and that Mississippi conflicts principles therefore apply to the analysis, there are three, theories of recovery to consider in the *Achari* consolidation relative to choice of law: negligence, fraud and breach of contract.

Signal urges the Court to conclude, as it did in *David*, that Indian law applies to the delictual theories of recovery, i.e., fraud and negligence; but that Mississippi law applies to what the Plaintiffs present as a contract issue with regard to Signal while admitting that it is, in fact, as to Signal, an agency issue.

---

[9] *Cf*. *Sutter Corp*., *supra*, at 920 ("'By virtue of its prior jurisdiction over the common subject matter … the determination of whether there actually was substantial overlap requiring consolidation of the two suits in [the first court] belonged to the United States District Court in [the first court].").

[10] "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here *are equitable in nature*." (Emphasis added).

8

This Court determined in *David*, though admittedly as a function of Book IV of the Louisiana Civil Code, that Mississippi law governs agency.

Signal urges the Court to do correct things. Obviously, the law applicable to the choice-of-law determination if ***Ferens*** applies is the Restatement (Second) of Conflict of Laws through Mississippi law.[11]

### i. Contract

Beginning with the contract question, the *Achari* Plaintiffs write, relative to contract: "as a threshold matter, plaintiffs' claims for breach of contract (***along with related issues of agency***) do not require a choice-of-law analysis because the Court found that there is no substantive difference between the laws of Mississippi and India." *See* Doc. #426, p. 1 (emphasis Signal's).

This is the language prompting Signal to contend that the *Achari* Plaintiffs concede a point Signal has concentrated on, seemingly, for months; namely, that the question of whether a contract, in India, between an alleged agent of Signal and one of the Plaintiffs is equivalent to a contract with Signal, is a question, not of contract law, but of agency law.

The Court has thus far applied Mississippi law to agency questions. *See* Doc. #2088. This is what Signal supports and wants the Court to do. The reasons for this are now stated.

First, the *Achari* Plaintiffs both accept this result and urge it on the Court, in their own names. *See* Brief of Plaintiffs (Doc. #426), at p. 4. This brings this inquiry to the false conflict question, the presumably threshold issue: "'false conflict' really means 'no conflict of laws.' If

---

[11] *See Ellis v. Liberty Mutual Ins. Co.*, 625 F.3d 222, 225-26 (5th Cir. 2010) (Mississippi law consults relevant sections of Restatement (Second) of Conflict of Laws to resolve choice-of-law issues).

the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.'"[12]

However, when one investigates whether Mississippi approaches such questions the way Louisiana does, one finds that the Mississippi Supreme Court says no.

### i.b      *Mississippi will Take a Stipulation*

In ***Caldwell Freight Lines, Inc. v. Lumbermens Mut. Cas. Co.***, 947 So. 2d 948, 952 n. 4 (Miss 2007), the Supreme Court of Mississippi wrote, "The parties agree that North Carolina law applies; therefore, we find it unnecessary to address this choice of law issue further." This should end the inquiry with regard to breach of contract viz. a viz. agency, inasmuch as the parties agree to the application of Mississippi law certainly as to agency. *See* Doc. #426, p. 4.

### i.c      *Same Result under More Traditional Analysis*

However, even if a more fulsome analysis is required, the same result obtains. Mississippi agency law and India agency law are not identical or virtually so. In *David*, Plaintiff counsel stated to the Court several times that their common law, breach of contract claim did not directly involve Signal. They said that their contract claim implicated Signal under principles of agency. Interestingly, the *Achari* Plaintiffs seem, via the above quoted language, to endorse this

---

[12] ***Phillips Petroleum Co. v. Shutts***, 472 U.S. 797, 838 n.20, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (class action suit seeking interest on overdue royalty payments from gas leases in various states; Supreme Court affirmed portion of the judgment upholding jurisdiction of Kansas courts over class but reversed judgment insofar as it held Kansas law applicable to all transactions; Kansas did not have significant contact with each class member) ("'[F]alse conflict' really means 'no conflict of laws.' If the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them." R. Leflar, *American Conflicts Law* § 93, p. 188 (3d ed. 1977). *See also* E. Scoles & P. Hay, *Conflict of Laws* § 2.6, p. 17 (1982) ("A 'false conflict' exists when the potentially applicable laws do not differ"). The absence of any direct conflicts here distinguishes this case from decisions such as *Home Ins. Co. v. Dick*, 281 U.S. 397 (1930), and *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178 (1936), where the interstate legal conflicts were clear, conceded, and dispositive."

view, doing so when they refer to "claims for breach of contract (*along with related issues of agency*) . . ." Doc. #426, p. 1 (emphasis added).

Signal recognizes that the Court has stated that agency law is the same "in both India and Mississippi," and that the parties agree to this view. Doc. #2088, at p. 4. But the Fifth Circuit stated in *Northrup Grumman Ship Systems, Inc. v. The Ministry of Defense of the Republic of Venezuela*, 575 F.3d 491, 500 5th Cir. 2009) that "Mississippi courts also look to the Restatement (Third) of Agency." It is clear beyond peradventure that the degree to which the courts of India adhere to the Restatement of Agency is a mystery, attested to by the fact that Signal can find a sum total of one case in which the Supreme Court of India has referred to the Restatement of Agency clearly, *Steel Authority of India Ltd. & ORS v. National Unionwater Front Workers & ORS*, [2002] 2 LRI 77, [29] (Sup. Ct), and this opinion did not actually present a question of agency law. *Cf*. RESTATEMENT (THIRD) OF AGENCY, § 6.05 (2006), comment (b) ("Ordinarily, a principal is not a party to a contract when the agent who enters into the contract on the principal's behalf [allegedly] acts without actual or apparent authority.").

It is also well known, and this should be equally true of the law of India, that *Erie* directs federal courts to search for statements from Supreme Courts, rather than inferior courts, where possible. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).[13]

While one can speculate that the Indian Supreme Court could refer to any part of the Restatement striking its fancy, the question is one of reliability and predictability. About this, Mississippi is advanced, compared to India, as *Northrup Grumman Ship Systems* indicates, with the support of the Fifth Circuit, through its opinion in *McGee*, which reminds all and sundry

---

[13] "And whether the law of the State shall be declared by its Legislature in a statute *or by its highest court in a decision* is not a matter of federal concern. There is no federal general common law." (Emphasis added).

that Plaintiffs bear the burden as to foreign law. *See **McGee v. Arkel Int'l, LLC***, 671 F.3d 539, 546 (5th Cir. 2012) (plaintiffs bear burden of proving foreign law).[14]

Since the question of whether the agents in question contracted on Signal's alleged behalf with actual or apparent authority is a question in factual dispute; and since the law in Mississippi is crystal clear on the location of the burden of persuasion on these issues,[15] Signal has a prepossessing interest in the application of Mississippi law to issues of agency for reasons of clarity, certainty, predictability and uniformity of result.

Furthermore, the indisputable ambiguity surrounding the law of agency in India compared to Mississippi, given Mississippi's devotion to the Restatement, is, between the two legal regimes, a significant difference. In this calculus, it is one that justifies the choice of Mississippi law to govern questions, here, of agency.

---

[14] In this Fifth Circuit opinion, the salient paragraph reads: "The plaintiffs have the burden of proving foreign law. (Citation omitted). These plaintiffs were 'obligated to present to the district court clear proof of the relevant . . . legal principles.' (Citation omitted). To determine foreign law, Rule 44.1 states that 'the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.' Fed. R. Civ. P. 44.1. Accordingly, a district court's foreign-law determination is reviewed *de novo*. (Citation omitted). Though proof of a foreign country's law is a plaintiff's burden, the court may 'engage in its own research on an issue of foreign law,' and such research does not require formal notice to the parties. Fed. R. Civ. P. 44.1 cmt. '[T]he rule provides flexible procedures for presenting and utilizing material on issues of foreign law by which a sound result can be achieved with fairness to the parties.'" *Id*.

[15] ***Thorp Finance Corp. v. Tindle***, 249 Miss. 368, 162 So.2d 497, 500 (1964) ("In regard to the . . . proposition urged by the appellant, namely that the appellee has failed to carry the burden of proof necessary to establish the actual authority of Agent Deininger to enter into the agreement with and release of the appellee, we find the following to be true. The burden of proving the authority rests upon the person asserting the agency and relying upon said authority."); ***Cape County Savings Bank v. Gwin Lewis Grocery Co.***, 123 Miss. 443, 86 So. 275, 276 (1920) ("The authority of an agent to bind his principal rests upon the powers conferred upon him by the principal, and the burden of proof to show that this real or apparent authority is with the complainant . . .") (emphasis added); RESTATEMENT (THIRD) OF AGENCY, § 4.06 (2006), comment (b) ("The burden of establishing that a ratification was made with knowledge is on the party attempting to establish that ratification occurred."); *see also id*., at § 1.02, comment d ("The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence.").

### *i.d*      *The Analysis of Choice of Agency Law under Mississippi Authority*

Mississippi conflicts law rests on the Restatement (Second) of Conflicts of Law.[16] Relative to the kind of contract/agency dispute these Plaintiffs evoke relative to Signal, the relevant black-letter principle is § 292 of the Restatement. Titled, "Contractual Liability of Principal to Third Person," it reads: "Whether a principal is bound by action taken on his behalf by an agent in dealing with a third person is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties and the transaction under the principles stated in § 6. (2) The principal will be held bound by the agent's action if he would so be bound under the local law of the state where the agent dealt with the third person, provided at least that the principal had authorized the agent to act on his behalf in that state or had led the third person reasonably to believe that the agent had such authority." RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 292 (1971).

Section 6 provides: "§ 6 Choice-Of-Law Principles. (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) *certainty, predictability and uniformity of result*, and (g) ease in the determination and application of the law to be applied." *See id*., at § 6.

Signal does not suggest that "certainty, predictability and uniformity of result" are the only relevant considerations but these considerations favor the application of Mississippi law.

---

[16] *See Ellis*, *supra*, 625 F.3d at 225-26.

13

Mississippi law imports the sophistication and breadth of the Restatement (Third) of Agency, something India cannot rival.

Even if one assumes *arguendo*, as Doc. #2088 indicates, that the two legal regimes are otherwise roughly equivalent; if **Ferens** applies, and hence the Restatement, deciding whether the conflict is false discloses that the conflict is not false because Mississippi agency law supplies a level of certainty, predictability and uniformity of result that India cannot match. This should be considered determinative.

    c.    <u>The Tort Analysis</u>

To tort claims, Mississippi applies an interest analysis.[17] The "contacts" to be "taken into account" include "the place where the injury occurred, the place where the conduct causing the injury occurred, [and] the domicil[e] [and] residence, [and] nationality . . . of the parties . . ." *Id*.

Section 148 of the Restatement addresses fraud and misrepresentation:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

---

[17] *Cf*. **Ellis v. Liberty Mutual Ins. Co.**, *supra*, at 225-26.

> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 148 (1971).

It is incontrovertible that the pendent state law claims in this case originated in Indian conduct and produced there, Plaintiffs allege, reliance -- in the state where the false representations were made. *See*, *e.g*., *Krisnakutty*, First Amended Complaint (Doc. #201, Fraud, ¶¶ 304-314):

> "**304**. As set forth in the preceding paragraphs, Defendants, individually and through their agents, employees, and/or representatives, acting on a common plan, knowingly made materially false statements and representations to Plaintiffs regarding the nature and terms and conditions of applications and opportunities for immigration status and employment in the United States. . . . **306**. Defendants intended that the false statements made by Defendants and/or their agents, employees, and/or representatives would induce Plaintiffs to pay the exorbitant fees requested by Dewan, Dewan Consultants, Indo-Amerisoft, Rao, Global, and/or the Burnett Defendants. . . . **309**. Relying on Defendants' false representations regarding green cards and employment opportunities, Plaintiffs paid large sums of money to Indo-Amerisoft, Rao and/or the Agents. **310**. Relying on Defendants' false representations regarding green cards and employment opportunities, Plaintiffs incurred substantial interest-bearing debts in order to pay recruitment, immigration-related, and travel fees charged by Defendants and their agents, employees and/or representatives. **311**. Relying on Defendants' false representations regarding green cards and employment opportunities, Plaintiffs sold personal and real property and surrendered employment opportunities in India. **312**. Relying on Defendants' false representations regarding green cards and

15

> employment opportunities, Plaintiffs left their homes and jobs in India and traveled to the United States to work for Defendant Signal. . . . **314**. As a direct and proximate result of Defendants' knowing, willing, and intentional actions, statements and omissions, Plaintiffs lost the benefit of their bargain and have suffered injury to their property and/or persons, including but not limited to lost and unpaid wages, lost opportunities, pain and suffering (including emotional distress and humiliation), out-of-pocket expenses, and other pecuniary losses including loss of property and/or business.[18]

From the foregoing and the insights it provides as to overall context, the statements to which these delictual claims refer satisfy § 148(1), *supra*. The preponderance of pecuniary harm occurred abroad, on account of reliance on false representations abroad. *Id*. It is also apparent from the allegations supporting the fraud and negligence claims, in all of the actions, that the claim is that the reliance took place in the state where the false representations were made. *Id*. Therefore, Indian law applies to these claims. *Id*.

Even of the Court concludes that the applicable subparagraph of § 148 is (2), the result is the same. This is so because the components of the analysis are the same. The claims prove facially that the locus of conduct and injury was overwhelmingly foreign.

On balance, the Restatement factors thus favor the application of Indian law to the delictual claims. Though Signal is domiciled in Mississippi, on balance, Indian law makes

---

[18] *See also Achari* Second Amended Complaint (Doc. #200, at ¶ 676): "As a direct and proximate result of Defendants' knowing, willing, and intentional actions, each Plaintiff has been injured, and is entitled to recover damages for the period up to and including the time that Plaintiffs were employed by Signal. Those damages include compensatory damages (including, without limitation, loss of wages, loss of opportunity, pain and suffering, mental and emotional distress, prejudgment interest, and additional economic loss from (1) recruitment and visa fees paid to Defendants; (2) expenses that Plaintiffs incurred to pay such fees, including but not limited to interest from loans; (3) medical expenses; (4) damages related to living and working conditions; and (5) mandatory housing and other fees paid to Signal), punitive damages, and attorneys' fees in an amount to be proven at trial."

considerably more sense in this context than other law. The Court seemingly felt this to be so when it ruled on this issue in *David*.

    *c.i*.    ***Krishnakutty*__**

Relative to Signal, there are claims in *Krishnakutty* that are unique to it, namely, the claims for money had and received and breach of special/confidential relationship. *See* Doc. #201, ¶¶ 343-352 and 363-372. The first claim is governed by the law of India. However, the manner in which the latter claim is pled explains Plaintiffs' assertion that they rest the claim on Mississippi law. *See* Doc. #201, ¶ 365. Signal will not contest the applicability of Mississippi law to the claim for breach of special/confidential relationship.

There is, though, little law on this theory in Mississippi. *See Irving v. Phillips (In re Estate of Smith)*, 827 So.2d 673, 678 (Miss. 2002).[19] At the ends of the day, this proves principally to be an argument concerning whether an employer is, under Mississippi law, a fiduciary.

Returning to the first claim, this is a claim for unjust enrichment. *See Willis v. Rehab Solutions, PLLC*, 82 So.3d 583, 588 (Miss. 2012). The Restatement (Second) of Conflict of Laws provides that the rule applicable to such a claim is § 221, which provides:

> (1) In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

---

[19] "'[T]he Law watches with the greatest jealousy transactions and dealings between persons occupying a fiduciary relationship in which the person in a position of influence receives some substantial benefit. The law will not permit them to stand unless the circumstances demonstrate the fullest deliberation on the part of the dependant party, and the most abundant good faith on the part of the dominant party.'" (Citation omitted).

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 221 (1971), & comment a.

In light of this information, ¶¶ 346-347 of the Complaint are pivotal:

> 346. As set forth in the preceding paragraphs, Defendants, individually and through their agents, employees and/or representatives, promised to assist Plaintiffs in applying for and obtaining permanent residence and immigration status for Plaintiffs in the United States, and promised Plaintiffs steady and ongoing work opportunities in the United States with Defendant Signal.
> 347. These promises were made in exchange for Plaintiffs' payment of fees (including recruitment, immigration application, and travel fees) to Defendants and their employees,
> agents and/or representatives, and in exchange for Plaintiffs' agreement to work for Signal, Indo-Amerisoft and/or Rao.

*See* Doc. #201, ¶¶ 346-347.

With regard to unjust enrichment, it is therefore apparent, especially in light of ¶ 347, that India is the jurisdiction where, for the purposes of this analysis, a relationship between the parties was initially centered and where the enrichment -- "payment of fees (including recruitment, immigration application, and travel fees)" -- occurred.

Since § 221 provides explicitly that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue," and since ultimately, the question

18

is which jurisdiction "has the most significant relationship to the occurrence and the parties under the principles stated in § 6," through the medium of the gloss § 221 places on § 6, this Court should conclude that the unjust enrichment claim is governed by Indian law, India being the locus of conduct and enrichmenti *See* RESTATEMENT, *supra*, at § 221. ***See also*** Doc. #201, ¶ 348 ("Plaintiffs paid [in India] the agreed upon fees . . .").

### III.    CONCLUSION

In summary, for the foregoing reasons, the consolidation is governed by Indian law relative to delictual liability. Agency (contract) is controlled by the law of Mississippi. The claim for unjust enrichment in *Krishnakutty* is an Indian claim, but the breach of special relationship claim is governed by Mississippi law.

Respectfully submitted this 29th day of January, 2015.

> */s/ Erin Casey Hangartner*_____
> Erin Casey Hangartner, La. Bar No. 24768
> Alan Dean Weinberger, La. Bar No. 13331
> Hal D. Ungar, La. Bar No. 31344
> Elham R. Rabbani, La. Bar No. 33322
> Brian C. Roux, La. Bar No. 35298
> Lance R. Rydberg, La. Bar No. 02089
> Mitchell P. Hasenkampf, La. Bar No. 32870
> Robert L. Keller III, La. Bar No. 35188
> Kevin P. Maney, La. Bar No. 33956
> Lauren Masur Davis, La. Bar No. 34669
> HANGARTNER RYDBERG & TERRELL, LLC
> 701 Poydras Street, Suite 310
> New Orleans, LA 70139
> Telephone: (504) 522-5690
> Facsimile:  (504) 522-5689
> ehangartner@hanrylaw.com
> aweinberger@hanrylaw.com
> hungar@hanrylaw.com
> erabbani@hanrylaw.com
> broux@hanrylaw.com
> lrydberg@hanrylaw.com
> mhasenkampf@hanrylaw.com

rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com

And

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt, (Pro Hac Vice)
Patricia A. Bollman,
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA 70185
Telephone: (504) 218-5887
Facsimile: (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

*Counsel for Signal International, L.L.C.*
*Signal International, Inc.,*
*Signal International Texas, G.P., and*
*Signal International Texas, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*_____