UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KURIAN DAVID, et al.                             CIVIL ACTION No. 08-1220
                        Plaintiffs
VERSUS

SIGNAL INTERNATIONAL, LLC, et al.,               SECTION "E"
                        Defendants

Related Cases:

EQUAL EMPLOYMENT OPPORTUNITY                     CIVIL ACTION NO. 12-557
COMMISSION,
                        Plaintiff

VERSUS

SIGNAL INTERNATIONAL, LLC, et al.,               SECTION "E"
                        Defendants

LAKSHMANAN PONNAYAN ACHARI, et al.,              CIVIL ACTION NO. 13-6218 (c/w 13-
                                                 6219, 13-6220, 13- 6221, 14-1818)
VERSUS

SIGNAL INTERNATIONAL, LLC, et al.,               SECTION "E"
                        Defendants

RELATED CASE:

REJI SAMUEL, et al.,                             CIVIL ACTION No.14-2811
                        Plaintiffs

VERSUS                                           SECTION "E

SIGNAL INTERNATIONAL, LLC, et al.,
                        Defendants

RELATED CASES:

| | |
|---|---|
| BIJU MAKRUKKATTU JOSEPH, et al.,<br>                    Plaintiffs | CIVIL ACTION No. 14-2826 |
| VERSUS | SECTION "E" |
| SIGNAL INTERNATIONAL, LLC, et al.,<br>                    Defendants | |
| REJI SAMUEL, et al,<br>                    Plaintiffs | CIVIL ACTION No. 14-2811 |
| VERSUS | SECTION "E" |
| SIGNAL INTERNATIONAL, LLC, et al.,<br>                    Defendants | |
| SATHEESH KANNAN MARIMUTHU, et al<br>                    Plaintiffs | CIVIL ACTION No. 15-2295 |
| VERSUS | SECTION "E" |
| SIGNAL INTERNATIONAL, LLC, et al.,<br>                    Defendants | |
| RAJU MEGANATHAN, et al<br>                    Plaintiffs | CIVIL ACTION No. 15-2296 |
| VERSUS | SECTION "E" |
| SIGNAL INTERNATIONAL, LLC, et al.,<br>                    Defendants | |
| SRINIVASA RAO KAMBALA, et al | CIVIL ACTION No. 15-2297 |
| VERSUS | SECTION "E" |
| SIGNAL INTERNATIONAL, LLC, et al.,<br>                    Defendants | |

**Applies To:** _Acahri_ 13-6218; Chakkiyattil 13-6219; Krishnakutty 13-6220; Devassy 13-6221; Singh 14-732; Thomas 14-1818; Joseph 14-2826; Samuel -14-2811; Marimuthu 15-2295; Meganathan 15-2296; Kambala 15-2297

CROSS CLAIM OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C.

BURNETT, AND THE GULF COAST IMMIGRATION LAW CENTER, LLC
AGAINST SIGNAL INTERNATIONAL, LLC AND SIGNAL INTERNATIONAL, INC.

Now through undersigned counsel, comes Malvern C. Burnett, the Law Offices of

Malvern C. Burnett, APLC, and The Gulf Coast Immigration Law Center, LLC, defendants and

cross-defendants in the above captioned matter, who herewith bring this Cross Claim against

Signal International, LLC, and Signal International, Inc., as follows:

1.    Cross Plaintiffs herein are:
      a) Malvern C. Burnett, a person of the full age of majority and a resident of and
      domiciled in the State of Louisiana,

      b) The Law Offices of Malvern C. Burnett, A Professional Law Corporation,
      organized under the laws of the state of Louisiana, and

      c) The Gulf Coast Immigration Law Center, LLC, a limited liability company
      organized under the laws of the state of Louisiana,
collectively referred to herein as "Burnett".

2.    Made Cross Defendants herein are Signal International, LLC and Signal International,

      Inc., entities organized under the laws of Delaware, with facilities in the Gulf Coast

      region, including Pascagoula, Mississippi, collectively referred to herein as "Signal".

3.    Burnett asserts claims for damages against Signal for intentional and negligent

      misrepresentation, tortuous interference with contractual rights, breach of the implied

      covenant of good faith and fair dealing, libel, and non-contractual indemnity under

      Mississippi law.

4.    Signal is in the business of marine fabrication and repair, the building, refurbishing, and

repairing of various marine facilities and installations, including, vessels, offshore mobile drilling units, including self elevating drill platforms, semi-submersible drilling rigs, fixed offshore platforms, and other similar marine and oil industry facilities.

5. As a result of Hurricanes Katrina and Rita, the vast amount of work created by those storms and the resultant loss of a local skilled labor workforce, Signal was in dire need of skilled workers so as to properly service existing contracts, obtain new contracts, and maintain and expand its operations in Mississippi and Texas.

6. On or about April 18, 2006, Signal entered into a Skilled Worker Recruitment Agreement with Global Resources for the recruitment of skilled foreign workers from India, whereby it agreed to hire skilled laborers from India needed in its operations in Pascagoula, Mississippi and Orange, Texas by sponsoring them for permanent residency work visas, or, if possible, initially employing such workers as temporary workers under United States immigration laws and regulations, and then at the termination of such process sponsoring them for permanent residency work visas.

7. Signal understood the problems and down sides to these two options for hiring foreign skilled workers, but agreed nonetheless with Global Resources to go first attempt going forward with a recruiting and hiring program whereby skilled foreign workers would be initially hired under temporary work visas, and at the termination of such program, to sponsor the workers for permanent residency, understanding that if the temporary visas were denied at any time, or at the denial of any temporary work visa extension

application, to then sponsor the workers for permanent residency.

8.     As  per the Signal/Global Resources Skilled Worker Recruitment Agreement, Burnett was tendered as the immigration attorney to prepare and file the necessary documents to allow the workers to lawfully enter the United States and advise and process the requirements and obligations of Signal to migrate these workers to the United States, which tender Signal accepted and so utilized, knowing and requiring, though, that all fees of Burnett were to be paid by the workers by way of a separate agreement between the workers and Burnett.

9.     Signal represented to Burnett that it would first attempt going forward with a recruiting and hiring program whereby skilled foreign workers would be initially hired under temporary work visas, and at the termination of such program, to sponsor the workers for permanent residency, understanding that if the temporary visas were denied at any time, or at the denial of any temporary work visa extension application, that it would sponsor the workers for permanent residency.

10.    Based on this representation by Signal, and in full reliance on those representations, Burnett went forward with preparing the documents necessary to allow the workers Signal recruited and hired to legally enter the United States as temporary workers, met with workers whom Signal had offered employment, and, as per Signal's requirement, entered into separate contracts with the workers to assist in their migration to the United States, prepare them for Consulate Interviews, review and assist with their non-

immigrant visa applications, as well as prepare temporary labor certifications, and H-2B visa applications on behalf of Signal.

11. On or about December 6, 2006, Signal entered into a contract directly with Burnett to continue its efforts and work as it was performing on behalf of Signal under the Signal/Global Resources Skilled Worker Recruitment Agreement.

12. Signal reaffirmed its previous representations that at the conclusion of the temporary work visas, or the first denial of any subsequent H-2B extension application, that it would sponsor any temporary worker it had hired for a permanent resident work visa.

13. Unbeknownst to Burnett, until exhibits and evidence were introduced at the trial of the matter of David, et al vs. Signal International, et al,  no. 12-cv-1220 of the Eastern District of Louisiana, which commenced on January 12, 2015, Signal had by at least May of 2006, if not sooner, decided that it would not to sponsor the workers for permanent residency at the end of the H-2B process, provided false and inaccurate information to the skilled workers as to why it could not sponsor them for permanent residency by wrongly placing the blame on Burnett, all the while continuing its relationship with Burnett and continuing to tell and/or lead Burnett to believe that it would sponsor the workers for permanent resident work visas.

14. Signal undertook a course of action in the employment and housing and treatment of the skilled workers that alienated and angered the workers, causing many to abandon their jobs with Signal, all the while continuing lay blame on, and spread disparaging remarks

and misinformation about Burnett.

15. Despite repeated assurances and representations to Burnett by Signal that it would sponsor workers for permanent residency at the termination of the H-2B process, Signal made contrary representations to the workers, continuing to incorrectly attribute all problems to Burnett.

16. Signal made it known to the workers and Burnett that it would not apply for extensions of the temporary work visas for many of the employees, intending on simply terminating their employment when their visas expired, which would require them, if not hired by another qualified employer, to return to their country of origin.

17. Burnett made numerous requests to Signal to provide him the opportunity to find for any worker whom Signal was going to terminate, other qualified employers to whom the temporary work visas could be transferred, and to allow him to provide information to the workers as to their rights and ways for them to remain legally in the United States, which requests Signal ignored and in fact intentionally hampered all attempts by Burnett to do so.

18. On or about December 3, 2007 Signal terminated its contract with Burnett because Burnett had taken steps to protect priority dates on previous labor certifications of many of these skilled workers, although, such steps at the time, had no deleterious effect on Signal's continued employment of these individuals.

19. In March of 2008 Signal, in a willful attempt to cover up its own conduct and

misrepresentations, issued numerous press release making unfounded, false and slanderous statements against Burnett, falsely accusing Burnett of fraud, deceit, and intentional misrepresentations, and unscrupulous conduct.

20. Signal's intentional and negligent misrepresentations to Burnett as to its intention to sponsor skilled workers it hired for permanent resident visas at the conclusion of the temporary work visa process has caused, and will continue to cause, Burnett significant financial, monetary and emotional damages, including without limitation the need to defend against lawsuits caused by Signal's conduct, damage awards against Burnett, and other similar damages, as set forth in greater detail below.

21. Signal's conduct and actions tortiously interfered with Burnett's contracts with many of the foreign skilled workers, which contracts it knew and required be entered separately with each worker it recruited and hired, thereby causing damages to Burnett, including without limitation, the need to defend against lawsuits caused by Signal's conduct, damage awards against Burnett, and other similar damages, as set forth in greater detail below.

22. Signal's breach of its implied covenant of good faith and fair dealing, has caused significant and substantial damages to Burnett, including without limitation, the need to defend against lawsuits caused by Signal's conduct, damage awards against Burnett, and other similar damages, as set forth in greater detail below.

23. As a result of the slanderous and libelous statements and press releases made by Signal

Burnett has been caused significant and substantial damages, including without limitation, loss of revenue, mental anguish, the need to defend against lawsuits caused by Signal's conduct, damage awards against Burnett, and other similar damages, as set forth in greater detail below.

24.     As a result of Signal's conduct and actions Burnett has been made to pay substantial and significant amounts of money and suffered damages which in all fairness, under Mississippi law, should be paid by Signal, its conduct entitling Burnett to non-contractual indemnification of all money and damages to which Burnett has been subjected, Burnett not conducting himself in a wrongful manner, as Burnett did not actively or affirmatively participate in the wrong committed by Signal.

25.     As a result of Signal's conduct and actions Burnett has been made to suffer significant and substantial damages, economic and emotional damages, including without limitation,

   a.     On or about May 18, 2015 a verdict was entered against the Law Offices of Malvern C. Burnett, A PLC in an amount in excess of Nine Hundred Thousand ($900,000.00) dollars, including pre and post Judgment interest, in the matter of <u>David, et al vs. Signal International, et al</u>, no. 08-cv-1220, EDLa., all as a result of Signal's conduct and actions.

   b.     On or about May 21, 2013, an action was commenced against Burnett in the matter of <u>Samuels, et al vs, Signal International, et al </u>no., 13-cv-323, EDTx., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

   c.     On or about May 21, 2013, an action was commenced against Burnett in the matter of <u>Joseph, et al vs, Signal International, et al </u>no., 13-cv-324, EDTx., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

d.      On or about August 7, 2013, an action was commenced against Burnett in the matter of <u>Marimuthu, et al vs, Signal International, et al</u> no., 13-cv-499, EDTx., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

e.      On or about August 7, 2013, an action was commenced against Burnett in the matter of <u>Meganathan, et al vs, Signal International, et al</u> no., 13-cv-324, EDTx., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

f.      On or about October 3, 2013, an action was commenced against Burnett in the matter of <u>Kambala vs, Signal International, et al</u> no., 13-cv-498, EDTx., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

g.      On or about May 21, 2013, an action was commenced against Burnett in the matter of <u>Achari, et al vs, Signal International, et al</u> no., 13-cv-222, SDMs., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

h.      On or about August 7, 2013, an action was commenced against Burnett in the matter of <u>Chakkiyattil, et al vs, Signal International, et al</u> no., 13-cv-318, SDMs., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

I.      On or about August 17, 2013, an action was commenced against Burnett in the matter of <u>Kristnakutty, et al vs, Signal International, et al</u> no., 13-cv-319, SDMs., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

j.      On or about August 14, 2013, an action was commenced against Burnett in the matter of <u>Devassy, et al vs, Signal International, et al</u> no., 13-cv-327, SDMs., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

k.      On or about October 15, 2013, an action was commenced against Burnett in the matter of <u>Singh, et al vs, Signal International, et al</u> no., 13-cv-393, SDMs., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

l.      On or about August 14, 2014, an action was commenced against Burnett in the matter of <u>Thomas, et al vs, Signal International, et al</u> no., 14-cv-1818, EDLa., resulting in extensive and substantial attorney fees and costs, and the specter of damages, all as a result of Signal's conduct and actions.

m.      Such other damages suffered and incurred by Burnett as will be shown at trial as the result of the Signal's actions and conduct.

26.     Signal's conduct was attended by intentional wrong, insult, abuse, and/or such gross negligence that it amounts to an independent tort, acting with malice and/or gross negligence or reckless disregard for the rights of others, such that Burnett is entitled to punitive damages under Mississippi law.

27.     Burnett is entitled to and prays for a trial by jury.

Wherefore, Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APLC, and The Gulf Coast Immigration Law Center, LLC, cross-plaintiffs in the above captioned matter, pray that Signal International, LLC and Signal International, Inc., be served with this Complaint and citation in accordance with law, and that after due proceedings had, that there be judgment in favor of Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APLC, and The Gulf Coast Immigration Law Center, LLC, and against cross-defendants, Signal International, LLC and Signal International, Inc., for damages, including punitive damages, along with the costs of these proceedings.

Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APLC, and The Gulf Coast Immigration Law Center, LLC, cross-plaintiffs, further pray for all just and equitable relief to which they are entitled, and for trial by jury.

Respectfully submitted,

 s/ Timothy W.  Cerniglia

-11-

Timothy  W.  Cerniglia,  (La.  Bar  #  03964)

1521 St. Charles Avenue

New Orleans, Louisiana 70130

Telephone: 504-586-0555

Facsimile:  504-586-0550

Counsel for Malvern Burnett,  Gulf Coast
Immigration Law  Center, LLC and the Law
Offices of  Malvern C. Burnett, A.P.L.C.

<u>CERTIFICATE OF SERVICE</u>

I  hereby  certify  that  a  copy  of  the  foregoing  was  served  on  counsel  of  record

electronically through this Court's EM/ECF system, this 3rd day of July, 2015.

<u>s/Timothy W.  Cerniglia</u>

Respectfully submitted,

<u>s/ Timothy W.  Cerniglia</u>

Timothy W. Cerniglia, (La. Bar # 03964)
1521 St. Charles Avenue  New Orleans,
Louisiana 70130  Telephone: 504-586-0555
Facsimile:  504-586-0550

Counsel for Malvern Burnett,  Gulf Coast
Immigration Law  Center, LLC and the
Law Offices of  Malvern C. Burnett,

A.P.L.C.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel of record

electronically through this Court's EM/ECF system, this 4th day of May, 2015.

s/Timothy W.  Cerniglia